# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
STACEY K. SHARPE                                    )
)
        Plaintiff,                                )
)      Civil Action No. 06-1743 (RBW)
)
SHEILA C. BAIR, Chairman                           )
Federal Deposit Insurance                          )
  Corporation                                     )
)
        Defendant.                                )
)
_____)

## DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, by undersigned counsel, respectfully moves the Court, pursuant to Rules 12(b)(1), 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, for an order dismissing plaintiff's claims in this action on the grounds that the Court lacks subject matter jurisdiction over plaintiff's claims and that plaintiff has failed to state a claim upon which relief can be granted. In the alternative, defendant asks for an order granting summary judgment on the grounds that there are no genuine issues in dispute and defendant is entitled to judgment as a matter of law. In support of this Motion, this Court is respectfully referred to the accompanying Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute and Exhibits. A proposed Order is also attached.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


__/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
Michael S. Cosgrove
Associate Counsel to the Inspector General
Federal Deposit Insurance Corporation

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| STACEY K. SHARPE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-1743 (RBW) |
| | ) | |
| SHEILA C. BAIR, Chairman | ) | |
| Federal Deposit Insurance | ) | |
|   Corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

_____

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, Sheila C. Bair, Chairman, Federal Deposit Insurance Corporation, by her

undersigned attorneys, submits this Memorandum of Points and Authorities in Support of

Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment.

### INTRODUCTION

Plaintiff Stacey K. Sharpe filed this civil action and alleged that she was discriminated

against on the basis of race (African-American) when her managers at the Federal Deposit

Insurance Corporation (FDIC) "forced her from her paralegal position in the FDIC's Office of

Inspector General Legal Counsel's by claiming that there was insufficient work for her and then

replacing her with a higher paid white employee". Complaint, ¶ 1. Plaintiff also contended

that less than two weeks after her involuntary reassignment, Fred Gibson, the Legal Counsel to

the FDIC's Inspector General, selected Adriana Vosburg, a white female, for a permanent GS-13

Attorney position "doing virtually the same work that Ms. Sharpe was doing as a paralegal at the

GS - 11 level". Complaint, ¶13. Plaintiff claims that she was discriminated against on the basis of her race by shifting plaintiff's duties to a white employee who was paid more than plaintiff. Complaint, ¶ 15. Plaintiff asserted that she suffered a loss of pay and severe curtailment of career opportunities because of unlawful race discrimination. Complaint, ¶ 16.

Defendant moves to dismiss this action, or, in the alternative, for summary judgment. As defendant's Memorandum sets forth below, plaintiff was transferred from a grade 11 Paralegal position in the FDIC's Office of the Inspector General Legal Counsel's Office with no promotion potential to a grade 11  Human Resources specialist (Benefits) position in the Office of the Inspector General(OIG) Human Resources Branch on October 1, 2004. Plaintiff did not suffer a change in grade, a change in any benefits or a loss of any pay as a result of the transfer. On December 11, 2005, plaintiff was promoted to a grade 12 Human Resources Specialist due to accretion of duties.

Prior to October 1, 2004, plaintiff had expressed an interest in personnel work and had taken training in personnel law. Plaintiff had also expressed an interest in transferring to the OIG Human Resources Branch if she could be assigned to work in the area of employee relations. There was no opening for employee relations and plaintiff was transferred to employee benefits. Three months following plaintiff's transfer to the OIG Human Resources specialist position, in January 2005, until plaintiff's departure from the agency in April, 2007, the agency paid $12, 735.26 for plaintiff to pursue and receive a Masters Degree in Management, with a concentration in Human Resources. Defendant submits that plaintiff cannot establish a prima facie case of discrimination. Plaintiff cannot establish the requisite adverse action for the involuntary transfer

that she received. Even if the plaintiff could establish a prima facie case, the defendant has

articulated legitimate non-discriminatory reasons for its action, which established that there was

insufficient paralegal work for plaintiff to perform in the Office of Counsel after the FOIA

backlog had been reduced, that plaintiff's effort to compare her duties to those of an Agency

Attorney must fail and that plaintiff cannot show that defendant's actions were pretexual.

> **1.** **Defendant's Statement of Material Facts Not in Dispute Is Incorporated Herein.**

> **A.** **Standards for Dismissal Pursuant to Fed.R.Civ.p.12(b)(1) and 12(b)(6)**

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.

Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to

determine the existence of jurisdiction, a court may look beyond the allegations of the complaint,

consider affidavits and other extrinsic information, and ultimately weigh the conflicting

evidence.  Id.

A motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief

may be granted tests the legal sufficiency of the complaint.  Browning v. Clinton, 292 F.3d 235,

242 (D.C. Cir. 2002).  And, while the complaint need only set forth a short and plain statement of

the claim sufficient to give the Defendant fair notice of its contours and the grounds upon which

it rests (Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C, Cir. 2003)),

dismissal is appropriate in any case in which the Defendant demonstrates that the Plaintiff can

prove no set of facts in support of her claim that would entitle her to relief.  Id.;  Warren v.

District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004).   Moreover, in testing the complaint, the

court is not required to accept as true "inferences unsupported by the facts set out in the complaint or legal conclusions cast as factual allegations." Kingman, 348 F.3d at 1040.

    **B.**    **Legal Standard for Motion for Summary Judgment.**

    Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. Id. at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Id. at 247-48. There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the party opposing summary judgment. Id. at 248. That is, if the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is appropriate. Id. at 251.

    Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Rather, when the

movant files a properly-supported summary judgment motion, the burden shifts to the

nonmoving party to show "specific facts showing that there is a genuine issue for trial."  Fed. R.

Civ. P. 56(e).  The non-movant cannot manufacture genuine issues of material fact with "some

metaphysical doubt as to the material facts,"  Matsushita Elec. Indus. Co., 475 U.S. at 586, or

with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence."

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  See also Brown v. Small, 2006

WL 1888562 at *4 (D.D.C. July 7, 2006) (RBW) (same).

### C.    Legal Standards Applicable to Claims of Employment Discrimination.

The ultimate issue in an employment discrimination case is whether the Plaintiff has met

his or her burden of demonstrating that the adverse employment action, if discrimination, or

materially adverse consequences, if retaliation, complained of was motivated, at least in part, by

intentional discrimination or retaliation.  Where, as here, a Plaintiff offers no direct evidence of

discrimination, plaintiff may create a triable issue of discrimination or retaliation by relying on

the familiar framework first enunciated by the United States Supreme Court in McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973).  See also Cones v. Shalala, 199 F.3d

512, 516 (D.C. Cir. 2000).

It should be remembered, however, that at all times the burden of proof remains with the

Plaintiff even when the Plaintiff's case is built on inferential evidence under the McDonnell

Douglas analysis.  In the summary judgment context, the central inquiry remains the evidence, or

lack thereof, of discrimination or retaliation in a particular case.  The Court should weigh

whether the Plaintiff has proof that would permit a reasonable jury to conclude that

discrimination was a motivating factor for the challenged action, looking to Defendant's

5

legitimate, non-discriminatory or non-retaliatory reasons for the challenged decision and the evidence as a whole, in order to determine whether there is a need for trial.  See, e.g., Holcomb, 2006 WL 45853 at *5 (quoting Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  See also Brown v. Small, 2006 WL 1888562 at *5 (D.D.C. July 7, 2006) (RBW) (Plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment action was made for a discriminatory reason).

Under the McDonnell Douglas test, Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the Plaintiff is able to establish a prima facie case, then the Court should weigh Defendant's legitimate, nondiscriminatory reason or reasons with any evidence Plaintiff presents that Defendant's stated reason merely was a pretext for discrimination.  Id.  At all times, Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination.  Burdine, 450 U.S. at 252-53.

A plaintiff must present substantial and credible evidence of discrimination in order to survive a motion for summary judgment.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.");  Hastie v. Henderson, 121 F.Supp.2d, 72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001)("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'");

6

Woodruff v. DiMario, 164 F.Supp. 2d 1, 5 (D.D.C. 2001).  Additionally, there will be "instances

where, although the plaintiff has established a prima facie case and set forth sufficient evidence

to reject the defendant's explanation, no rational factfinder could conclude that the action was

discriminatory." Weigert v. Georgetown University, 120 F.Supp. 2d 1, 22 (D.D.C. 2000), quoting

Reeves v. Sanderson Plumbing Co., 530 U.S. 133 (2000).

## 2.    Discrimination Claims–Adverse Personnel Action

In discrimination claims against federal employers a required element is some form of

legally cognizable adverse personnel action by the employer.  Brown v. Brody, 199 F.3d 446,

453 (D.C.Cir. 1999); Weigert v. Georgetown University, 120 F.Supp.2d 1, 17-18 (D.D.C. 2000 ).

To establish an "adverse personnel action" there must be a significant change in the plaintiff's

employment status--such as failing to hire, firing, failing to promote, or a decision causing a

significant change in benefits.  Id.

 To guard against "judicial micromanagement of business practices," courts do not

recognize "interlocutory or mediate decisions having no **immediate** effect upon employment" as

adverse personnel actions.  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001)(the ultimate

result of a performance evaluation is often speculative and should not be considered an adverse

action if it does not affect an employee's grade or salary)(emphasis added) *citing to* Mungin v.

Katten, Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997).  In short, to be considered

adverse a personnel action must have a "direct, measurable, and immediate effect," upon the

complainant.  Principi, at 819.

Finally, though Plaintiff might wish it otherwise, the employment discrimination statutes

did not transform federal courts into review boards for local employment decisions.  "Title VII, it

bears repeating, does not authorize a federal court to become 'a super-personnel department that

reexamines an entity's business decisions.'" Barbour v. Browner 181 F.3d 1342, 1346 (D.C. Cir.

1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). To the

contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably

discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180,

1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)). See

also Barnette v. Chertoff, 453 F.3d 513 (D.C. Cir. 2006).

### 3.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination

Plaintiff alleges that she was discriminated against because of her race when she was

involuntarily transferred from her CG-950-11 paralegal position to a grade CG-201-11 HR

specialist position. To establish a prima facie case of discrimination in these circumstances, the

plaintiff must show that she was a member of a protected class alleged, that she suffered

an adverse employment action and that the adverse employment action in question occurred

under circumstances that create an inference of discrimination. Stella v. Mineta, 284 F.3d 135

(D.C. Cir. 2002).

There is no dispute that the Plaintiff is an African American; a member of the protected

group alleged. The Plaintiff is not, however, able to demonstrate that she has either suffered an

adverse employment action when she was involuntarily reassigned or that the circumstances of

her reassignment create an inference of discrimination.

### 4.    Adverse Employment Action

In late summer/early fall of 2004, Deputy Inspector General Patricia Black spoke with

each of her subordinate office heads and requested that they determine which positions in their

organizations were surplus to future needs as the agency would be required to downsize.

Exhibit 10, Deputy IG Patricia Black's Affidavit at 2; Exhibit 2, OIG Counsel Fred Gibson's

Affidavit, at 5.

      The Counsel to the Inspector General determined that the position of a  full-time

Paralegal was no longer required as there was not enough work to justify the work in his office.

Plaintiff's ongoing assignments could be absorbed by the office's Legal Technician and the

Associate Counsel responsible for information law issues, Christian Gieseler.  Exhibit 2, OIG

Counsel Fred Gibson's Affidavit,  at 5; Exhibit 14, Legal Assistant Theresa Fewell's Affidavit, at

3.

      At the same time, the OIG Human Resources Branch had been seeking a Human

Resources specialist to perform the employee benefits duties. The OIG's former benefits

specialist had transferred, and, despite advertisement, the OIG had been unable to find an

acceptable candidate to fill this position. Exhibit 15, Assistant Inspector General for Management

and Congressional Relations, Rex Simmons' Affidavit, at 1-2; Exhibit 16, Director of Human

Resources Trina Petty's Affidavit, at 3.

       Plaintiff had previously expressed an interest in doing personnel work, had taken

government training in personnel law and was soon to be enrolled in a graduate degree program

concentrating on human resources management. Exhibit 1, Plaintiff's Affidavit, at 2-3;

Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 2; Exhibit 17,  Plaintiff's Rebuttal Affidavit,

at 4.

      During the summer of 2004, the Counsel to the Inspector General had a number of

conversations with plaintiff with regard to plaintiff's transfer to the OIG Human Resources

Branch to work in benefits. Exhibit 1, Plaintiff's Affidavit, at 2; Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 4.   In these conversations, plaintiff indicated that she would be interested in transferring to the OIG Human Resources Branch if she could be assigned to work on employee relations matters.  Exhibit 1, Plaintiff's Affidavit at 3, Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 4; Exhibit 17, Plaintiff's Rebuttal Affidavit, at 4.   Plaintiff reiterated her interest in transferring to the OIG Human Resources Branch if she could be assigned to work on employee relations matters in an e-mail message to the Counsel to the Inspector General and OIG Human Resources Director on August 24, 2004. Exhibit 18, Plaintiff's August 24, 2004 e-mail message to Mr. Gibson.

Deputy IG Patricia Black spoke with the OIG Human Resources Director with regard to an involuntary transfer of plaintiff from a Paralegal position to the HR position in the  OIG Human Resources Branch. Exhibit 10, Deputy IG Patricia Black's Affidavit, at 2 ;  Exhibit 16, OIG Director of Human Resources Trina Petty's Affidavit, at 2.  After a review of the United States Office of Personnel internal placement provisions, the Deputy IG prepared a letter to plaintiff transferring plaintiff from her grade 11 paralegal position to her grade 11 Human Resources specialist position in the OIG Human Resources Branch . Exhibit 19, Appendix III, FDIC Merit Promotion Plan's Inservice Placement Provisions; Exhibit 11, September 23, 2004 Letter from Deputy IG Black, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Position.

The letter was delivered to the Plaintiff on September 23, 2004. Plaintiff accepted the involuntary transfer on October 1, 2004.  Exhibit 11, September 23, 2004 Letter from Deputy IG Black, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Position.

10

On December 11, 2005, plaintiff was promoted to a grade 12 Human Resources Specialist due to accretion of duties. Exhibit 25, SF-50 Reflecting Plaintiff's Promotion to Grade 12, Human Resources Specialist. These facts clearly show, consistent with the case law below, that plaintiff has not suffered an adverse personnel action and she cannot establish a prima facie case of discrimination based on race.

In Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999),  the Court addressed  similar  claims as those raised by plaintiff here. In Brown, the employee,  a GS 14 Senior Loan Officer at  the Export - Import bank, alleged that she was discriminated against when she was involuntarily reassigned, without a reduction in grade, pay or benefits, from a position in the Bank's Africa/Middle East Division to a position in Contracts Administration, which the Plaintiff, Ms. Brown, believed to be less-prestigious.  In addition, Ms. Brown alleged discrimination when she was denied  a requested reassignment from a position in Contracts Administration to a position in the Bank's Project Finance Division.  Subsequently, Ms. Brown left the Bank to accept a political appointment as the Deputy Assistant Secretary of State for African Affairs.  In addressing Ms. Brown's allegations of discrimination, the Court, at 457, announced its rule that:

> ...a plaintiff who is made to undertake or who is denied a lateral transfer -- that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.  Mere idiosyncracies of personal preference are not sufficient to state an injury.

Applying this rule to Ms. Brown's claims, the Court noted that Ms. Brown was not discharged, but left for a more prestigious, better paying position.  Moreover, Ms. Brown's reassignment was not a demotion as she retained the same salary and rank.  Consequently, while

11

Ms. Brown was reassigned to a position she did not like, and later refused reassignment to a position she did like, she was not materially or objectively harmed and could not establish a prima facie case of discrimination.

The rule announced in Brody has been consistently applied to the discrimination complaints of employee plaintiffs who were reassigned, or denied reassignment, or otherwise similarly treated. For example, in Broderick v. Donaldson, 437 F.3d 1226 (D.C. Cir. 2006) the Court ruled that a Federal employee plaintiff did not suffer materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities when her Agency refused to allow her to submit her legal briefs to higher level supervisors for review rather than to her normal supervisor. The Court observed that the Plaintiff's demand was more akin to demanding her supervisor's reassignment than it was to demanding her own reassignment.

Conversely, in Czekalski v. Peters, 475 F.3d 360 (D.C. Cir. 2007), the plaintiff was the Senior Executive Service Director of the Office of Communication, Navigation and Surveillance Systems. She was responsible for several hundred employees, multiple Agency programs and a budget of about $400 million and was directly supervised by the FAA's Associate Administrator. The Court determined that she suffered a materially adverse employment action when she was laterally transferred to the position of Program Manager of the Y2K project because she now reported to a former peer, managed a single program with fewer than 10 employees and without a separate budget.

Similarly, in Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006), the Court found that the Plaintiff, a grade 11 Program Specialist in the Agency's EEO Office, did suffer materially adverse

consequences affecting the terms, conditions, or privileges of her employment or her future

employment opportunities, i.e., an adverse employment action, when she was reassigned without

loss of grade, pay or benefits to a position requiring her to perform duties normally assigned to

much lower graded employees.

In Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir. 2003), a Justice Department Senior

Executive Service litigation attorney, who was denied reassignment to a lateral position carrying

supervisory responsibilities, did suffer materially adverse consequences affecting the terms,

conditions, or privileges of his employment or his future employment opportunities.  See Also,

Forkkio v. Powell, 306 F.3d 1127 (D.C. Cir, 2002)(An employee who lost prestige, but nothing

more, as a result of losing his title of "Section Chief" in an Agency reorganization did not suffer

materially adverse consequences affecting the terms, conditions, or privileges of his employment

or his future employment opportunities); Freedman v. MCI Telecommunications Corp., 255 F.3d

2001 (D.C. Cir. 2001)(A lateral transfer is not actionable unless accompanied by some materially

adverse consequences affecting the terms, conditions or privileges of employment.)

Here, plaintiff was reassigned from her position as a grade 11 Paralegal to a grade 11

position as a Human Resources Specialist.  Although the reassignment involved a change in

duties, plaintiff did not suffer materially adverse consequences affecting the terms, conditions, or

privileges of her employment or her future employment opportunities. Plaintiff's reassignment

did not constitute a demotion, as plaintiff did not suffer any reduction in grade, pay or benefits.

Plaintiff was assigned grade appropriate duties.  Plaintiff did not gain or lose supervisory

responsibilities.  The change in plaintiff's job title did not imply any decrease in the significance,

prestige or prominence of her position.

Indeed, plaintiff did not object to the idea of being transferred to work in the field of

Human Resources Management.   Plaintiff pursued, at Agency expense, a graduate degree in the

field and told both the Counsel to the IG and the Human Resources Director that she would like

to transfer to Human Resources to work in the Employee Relations sub-specialty rather than the

Employee Benefits sub-speciality.

Moreover, the lateral transfer did not effect plaintiff's prospects for promotion.  To the

contrary, as a Paralegal, Plaintiff occupied a position without promotion potential but with

diminishing workload and consequence.  Plaintiff proved to be an effective Human Resources

Specialist, and, within 14 months of her reassignment, was promoted to grade 12.

Thus, plaintiff's circumstances are substantially similar to the plaintiff in Brown.

Plaintiff cannot identify any materially adverse consequence of her reassignment.  At most,

plaintiff's  personal preferences for work in the employee relations sub-specialty was not

honored and she was reassigned to do employee benefits work. Plaintiff's personal preference

does not serve to meet her burden of proof on this element of her prima facie case.

**5.    The Identified Comparative Employee**

To establish the third element of her prima facie case of racial discrimination, i.e.,

identifying the circumstances of her reassignment that create an inference of discrimination,

plaintiff has asserted that the treatment accorded her, a grade 11 Paralegal, should be compared

to the treatment accorded to Adriana Rojas Vosburg, then a grade 12 attorney. Exhibit 22 at 2;

Exhibit 1 at 3; Exhibit 17 at 2.  Plaintiff asserts that such comparison establishes discriminatory

intent.

Ms. Vosburg, a grade 12 Attorney at the time of plaintiff's reassignment,  is a Hispanic

14

female. Plaintiff, a grade 11 Paralegal, is not similarly situated to a grade 12 Attorney.

Accordingly, the invited comparison does not serve as indirect evidence of discrimination.

In order for the comparison of one employee to another to be probative of discrimination,

all relevant aspects of plaintiff's employment situation must be nearly identical to those of the

comparative employee. Barbour v. Browner, 181 F.3d 1342 (D.C. Cir. 1999). See also,

Holbrook v. Reno, 196 F.3d 255 (D.C. Cir. 1999)(The relevant aspects of the employment

situation of a female FBI Special Agent trainee who was removed from FBI Academy after

exercising poor judgment by maintaining a personal relationship with an instructor, lying to her

superiors and disobeying an order were not comparable with those of male trainees who was a

class clown or one who exercised poor judgment by drinking and driving or with those of the

15-year Special Agent instructor who was disciplined for maintaining a relationship with

Holbrook and lying about it); Mungin v. Katten, Muchin and Zavis, 116 F.3d 1549 (D.C. Cir.

1997)(The relevant aspects of the employment situation of an African American associate

laterally hired into a firm are not comparable with those of white "homegrown" associate

attorneys); Neurren v. Adduci, Mastriani, Meeks and Shill, 43 F.3d 1507 (D.C. Cir. 1995)(The

relevant aspects of the employment situation of a female senior associate attorney fired because

of her difficult interpersonal relationship with others in the firm are not comparable to those of a

less senior male associate who was retained despite criticisms of his writing and his tendency to

stretch out assignments.)  Even the difference of a single grade in the same job series is sufficient

to render the comparison between two employees inappropriate. Barbour, supra, at 1345.

Here, plaintiff was a grade 11, Paralegal.  Plaintiff described her duties as consisting

primarily of conducting legal research, drafting memoranda, processing Freedom of Information

Act and Privacy Act requests, preparing case briefs on EEO related cases and commenting on policies. Plaintiff's position did not contain an education requirement. The duties more formally described in plaintiff's paralegal position description encompass all of those tasks that one normally associates with assisting attorneys in completing their assignments. Indeed, the last duty specifically described in plaintiff's paralegal position description provides a succinct  description of the duties of a paralegal as : "Provides Assistance, as necessary, to members of the legal staff in handling OIG legal matters." Exhibit 6.

By contrast, the Attorney to whom plaintiff compares herself, a grade 12 Attorney, occupied a higher graded position in a different job series. Exhibit 9.  The Attorney position has an educational requirement, requires graduation from an accredited law school and requires successful completion of a state bar examination.   The position description for a grade 12 Attorney consistently explains the duties to be performed by the incumbent using words that describe the essence of practicing law: providing advice and representation.  In short, the duties described in the grade 12 Attorney position description make it clear that the incumbent is one of the members of the legal staff that plaintiff would be called upon to assist.  These are not identical positions and in many ways describe a support relationship.  Consequently, Attorneys and Paralegals, even when employed in the same legal office and supervised by the same individuals, are not considered comparable employees.

Inasmuch as plaintiff is unable  to identify a comparable employee outside of her protected group who was treated more favorably than she, and has not identified any other indirect evidence to create an inference of discrimination in her reassignment, plaintiff cannot meet her burden of establishing a prima facie case of discrimination.

16

**6.    Plaintiff Has Not Shown That the Defendant's Legitimate, Nondiscriminatory Reason for its Non-selection of Plaintiff Was a Pretext for Unlawful Discrimination.**

Once defendant articulates the reasons for its actions, he prevails unless the plaintiff "succeeds in discrediting the employer's explanation." See Samii v. Billington, 195 F.3d 1, 3 (D.C. Cir. 1999) (citing Aka v. Washington Hospital Center, 156 F.3d 1284, 1289 (D.C. Cir. 1998)). "Since the ultimate burden of persuasion in proving race discrimination remains with the plaintiff, summary judgment is appropriate where the employee is unable to satisfy this burden." Samii, 195 F.3d at 3. Moreover, simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment. See Aka, 156 F.3d at 1290-91. Rather, the plaintiff must proffer evidence beyond mere speculations and allegations when refuting the defendant's legitimate, non-discriminatory reasons for its decisions. See Brown v. Brody, 199 F.3d 466, 458 (D.C. Cir. 1999). "As courts are not free to second guess an employer's business judgment, a plaintiff's mere speculations are 'insufficient to create a genuine issue of fact regarding [an employer's articulated reasons for [its decisions] and avoid summary judgment.'" Id. at 459 (quoting Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)); see also Fischbach v. District of Columbia Dept. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

In 1998, there was a significant amount of work for a Paralegal in the OIG Office of Counsel because the office was processing a large backlog of FOIA and discovery work remaining from the banking crisis of the early 1990's. Exhibit 10 at 2, Exhibit 11, Exhibits 12a - 12h. In the first year of plaintiff's employment as a paralegal, April 1998 to March 1999, OIG Counsel's Office responded to 48 FOIA Requests and/or appeals. Exhibit 12a, Extract from the

OIG's Semi-annual Report to the Congress, at 1 to 4. In the second year of Plaintiff's

employment, April 1999 through March 2000, OIG Counsel's Office responded to 39 FOIA

Requests and/or appeals.Exhibit 12b, Extract from the OIG's Semi-annual Report to the

Congress, at 5 to 9. In the third year of Plaintiff's employment, April 2000 through March 2001,

the number of FOIA requests and/or appeals declined to 31. Exhibit 12c, Extract from the OIG's

Semi-annual Report to the Congress, at 11 to 17. Between April 2001 and March 2002, the

number of FOIA matters processed by the OIG Counsel's Office dropped to 11. Exhibit 12d,

Extract from the OIG's Semi-annual Report to the Congress, at 19 to 24. The next year of

Plaintiff's employment, April 2002 to March 2003, saw a slight increase, to 15, in the number of

FOIA matters processed by the OIG Counsel's Office. Exhibit 12e, Extract from the OIG's Semi-

annual Report to the Congress, at 25 to 28. The OIG Counsel's Office disposed of 10 FOIA

matters in the year from April 2003 through March 2004. Exhibit 12f, Extract from the OIG's

Semi-annual Reports to the Congress, at 29 to 32. Between April and September 2004, 7 FOIA

matters were processed by the OIG Counsel's Office. Exhibit 12g, Extract from the OIG's Semi-

annual Report to the Congress, at 29 to 30. Thus, the backlog of FOIA requests that existed at

the time of Plaintiff's hiring had been resolved and the FOIA and litigation discovery requests

had decreased. Exhibit 10 at 2.

As a consequence of these decreases, Plaintiff was significantly underemployed. Exhibit

10 at 2, Exhibit 2 at 5; Exhibits 12a - 12h. There was not enough work to justify a full-time

paralegal position in the Counsel's office. Plaintiff's ongoing assignments could easily be

absorbed by the office's Legal Technician and Attorney responsible for information law issues,

Christian Gieseler. Exhibit 2 at 5 and Exhibit 14 at 3.

During the 12 month period after plaintiff's transfer to Human Resources, OIG Counsel's Office responded to 14 FOIA matters, compared to 48 matters during plaintiff's first year of employment as a paralegal in the OIG Counsel's Office. Exhibit 12h, Extract from the OIG's Semi-annual Reports to the Congress.

At the same time that plaintiff's workload was decreasing, the OIG HRB needed  a Human Resources Specialist for the benefits position.  The OIG's former Human Resources Specialist responsible for benefits had transferred out of OIG some months earlier but, despite advertisement, the OIG had been unable  to find an acceptable candidate to fill this position. Exhibit 15 at 1-2 and Exhibit 16 at 3. Plaintiff had previously expressed an interest in personnel work, albeit in a different specialty area, had taken government training in personnel law and pursued a graduate degree program concentrating on human resources management. Exhibit 1  at 2-3, Exhibit 2 at 2 and Exhibit 17 at 4.  Consequently, the Deputy IG prepared a letter to the Plaintiff transferring her from her grade 11 paralegal position to the grade 11 HR specialist position in OIG HRB. Exhibit 11.

Plaintiff asserts that a personnel ceiling applicable to the OIG Counsel's office in the fall of 2004, required that she be transferred to Human Resources Branch so that her authorized position could be used to provide a permanent position for Ms. Vosburg. Exhibit 17 at 3.  Plaintiff further asserts that the OIG had hired "new" Auditors and Investigators and that this would someday lead to an increase in FOIA work for the Office of Counsel to the IG. Exhibit 17, at 1.  Neither assertion has a basis in fact.

19

7.    **Authorized Staff Levels**

The Affidavit of Trina Petty, the OIG's Director of Human Resources, Exhibit 30, makes it clear that plaintiff's assertion that she had to be transferred out of the Counsel's Office to make room for an attorney to be converted from a term to a regular excepted service appointment is completely without foundation.  In July 2004, when Ms. Vosburg, the Attorney in question, was converted from a term to a regular excepted service appointment, the authorized staffing level of the OIG Counsel's Office was large enough to provide positions for both Ms. Vosburg and plaintiff.  Exhibit 30 at 3.  Indeed, Ms. Vosburg had been occupying an authorized staff position for approximately three years when her appointment was converted from a term to a regular excepted service appointment in July 2004. Id.  Similarly, the Plaintiff had been occupying an authorized staff position for approximately six years, since April 1998. Id.  The last change in the number of authorized staff positions in the OIG Office of Counsel occurred in 2003 when the then Counsel, Ms. Black was made Deputy IG and the Deputy Counsel to the IG, Fred Gibson, was promoted to Counsel.  Rather than selecting a new Deputy Counsel to replace Mr. Gibson, the Deputy Counsel position was eliminated and the total authorized staff level reduced by one, to a total of six authorized positions. Id. at 1-2.  Thus, in 2004,  there was an authorized staff position for each employee of the OIG Counsel's Office and each employee of the OIG Counsel's Office occupied an authorized staff position. Id. at 2-3.  In short, no evidence exists to corroborate plaintiff's speculation about the effect of authorized staff levels on her transfer to HR.

8.    **New Auditors and Investigators**

Plaintiff also asserts that at about the time she was reassigned, the OIG had hired new auditors and investigators which would, in turn, increase the amount of work available for a

paralegal in OIG Counsel's office.  Therefore, plaintiff claims, the decision to transfer her from

an underutilized  paralegal position to a  HR Specialist position can only have been motivated by

discriminatory animus.  This assertion too,  flies in the face of all the available evidence.

    In September 2004, the OIG was shrinking.  Exhibits 13, 21, 23, 24, 27.  Since the Spring

of 2002, the authorized staff of the OIG had decreased by about 60 positions from approximately

190 to 130.  Some employees might have transferred from the OIG Office of Audits to the Office

of Investigations. Some vacant auditor or investigator positions might have been filled.  The

overall employment trend in OIG was, however, downward.

    In addition to declining numbers of employees, it is clear that the kind of work performed

by plaintiff has declined over the years.  Exhibit 31, an  Extract from OIG Counsel's Workflow

Tracking System, is a compilation of the assignments performed by plaintiff from 2000 through

her transfer in 2004.  This compilation is consistent with plaintiff's own description of her duties

as a paralegal in which she identified the processing  of the FOIA matters as her primary

responsibility.

    In the first year of plaintiff's employment as a paralegal, April 1998 to March 1999, OIG

Counsel responded to 48 FOIA Requests and/or appeals.  In the second year of her employment it

dropped to 39.  In the third year the number of FOIA's declined to 31.  Between April 2001 and

March 2002 the number of FOIA matters processed dropped to 11.  Although the next year saw a

slight increase to 15, the overall downward trend continued the following year when ten FOIA

matters were disposed of in the year from April 2003 through March 2004.   Between April and

September 2004, seven FOIA matters were concluded. Exhibit 5, Exhibits 12a - 12g.  This trend

continued beyond plaintiff's transfer to HRB. During the 12 month period after her departure OIG

Counsel responded to 14 FOIA matters, compared to 48 during her first year of employment. Exhibit 12h.

The same general decline affected other areas of work such as Reviews of Statutes, Regulations and Polices and Reviews/Issuance of Subpoenas.  In general, only work in the areas of Advice and Counseling and Litigation increased.  In other words, no evidence exists to suggest that new employees were being added to the OIG workforce and that these alleged additions resulted in an increase in the kinds of work that occupied plaintiff's attention as a Paralegal. Accordingly, plaintiff has not offered any proof of a discriminatory motive for the defendant's decision or any evidence to challenge the credibility of defendant's  explanation for its decision. All plaintiff can offer is unsupported assertion and speculation. These are not sufficient to meet Plaintiff's burden.

<u>**CONCLUSION**</u>

Plaintiff, an African American, CG-950-11, Paralegal, has not established a prima facie case of racial discrimination as she is unable to demonstrate that she suffered materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities as a result of her being laterally reassigned, or that her reassignment occurred under such circumstances as to create an inference of discrimination.

Defendant  transferred plaintiff because the kind of work she was assigned declined over the course of her employment to such an extent that it was not sufficient to keep plaintiff fully employed.  At the same time, defendant  needed a capable employee to work in Human Resources or Personnel in the Benefits sub-specialty.  Plaintiff had expressed an interest in working in Human Resources or Personnel, albeit in a different specialty area.  Accordingly,

plaintiff was involuntarily transferred from her grade 11 Paralegal position to a grade 11 HR

Specialist position.  Within 14 months in her new position, plaintiff was promoted to a grade 12.

Plaintiff has failed to present any evidence to support her assertion that defendant's

explanation is a pretext for racial discrimination.  Plaintiff possesses no evidence to prove that

her transfer was motivated by discrimination.  Contrary to plaintiff's assertion, no evidence exists

to suggest, let alone prove, that plaintiff had to be transferred from her grade 11 paralegal

position in September 2004, to provide an authorized staff position to allow the conversion of a

grade 12 Attorney from a term excepted service position to a regular excepted service position in

July 2004. Contrary to plaintiff's assertion, no evidence exists to suggest, let alone prove, that the

OIG was adding new auditors and investigators to its workforce in and around September 2004

leading to an increase in the type of work that plaintiff performed as a Paralegal.  To the contrary,

the OIG workforce was shrinking, substantially, during the last two years of plaintiff's

employment as a paralegal. The type of work that plaintiff performed for the OIG Counsel

declined, substantially, during the course of plaintiff's years of employment as a Paralegal, and

continued to decline after plaintiff's transfer to HR. Accordingly, plaintiff has not established a

prima facie case of  discrimination. Alternatively,  even if she has, defendant has articulated

legitimate non-discriminatory reasons and plaintiff cannot establish pretext.

23

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

___/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

___/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
Michael S. Cosgrove
Associate Counsel to the Inspector General
Federal Deposit Insurance Corporation

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| STACEY K. SHARPE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-1743 (RBW) |
| | ) | |
| SHEILA C. BAIR, Chairman | ) | |
| Federal Deposit Insurance | ) | |
|   Corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

_____)

**<u>DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>**

Pursuant to Local Rule 7.(h), defendant respectfully submits the following Statement of Material Facts Not in Dispute.

1.   Plaintiff, an African American, was hired as a GG-950-7 Paralegal Specialist in the Office of Counsel to the Inspector General, by Patricia Black, then Counsel to the Inspector General, in March, 1998.  Complaint ¶¶ 4 and 7; Exhibit (Ex.) 1, Affidavit of Plaintiff Stacey K. Sharpe, April 23, 2005, at 1; Ex. 2, Affidavit of Counsel to the Inspector General, Frederick W. Gibson, Jr., May 13, 2005, at 2 and Ex. 3, March, 1, 1998, Reassignment of  Plaintiff to Office of Inspector General Counsel's Office.

2.   Plaintiff was subsequently promoted to a grade 9 in March 1999 and to the full performance level of her position, grade 11, in April, 2000. There was no further promotion potential in this position. Complaint at 7; Ex. 1, Affidavit of Plaintiff Stacey K. Sharpe, April 23, 2005, at 1; Ex. 2, Affidavit of Counsel to the Inspector General, Frederick W.  Gibson, Jr., May 13, 2005, at 2; Ex. 4, SF-50, March 28, 1999, Promotion of Plaintiff to Grade 9 Paralegal and Ex.

5, SF-50, April 9, 2000, Promotion of Plaintiff to Grade 11 Paralegal.

3.   As a Paralegal,  Plaintiff conducted legal research, drafted memoranda, processed

Freedom of Information Act and Privacy Act requests, prepared briefs on EEO related cases and

commented on policies. Ex. 6, Position Description, Paralegal Specialist, Grade 11; Ex. 1,

Affidavit of Plaintiff Stacey K. Sharpe, April 23, 2005, at 1.

4.   There is no specific educational requirement for the position of Paralegal. Ex. 6,

Position Description, Paralegal Specialist, Grade 11.

5.   In May 2000, approximately six weeks after promoting  Plaintiff to a grade 11,

Counsel to the Inspector General Patricia M. Black hired Adriana Rojas Vosburg, a Hispanic law

student, as a law clerk.  Ex. 7, Affidavit of Adriana Vosburg, Associate Counsel, May 9, 2005, at

1.

6.   Ms. Vosburg continued her part-time employment as a law clerk in the Office of

Counsel to the Inspector General during her final year of law school and during her studies for

the bar examination. Upon being admitted to the practice of law, Ms. Vosburg was, in November

2001, appointed, on term basis, as a CG-905-9/11 Law Clerk/Attorney in the Office of Counsel

to the Inspector General.   Ex. 7, Affidavit of Adriana Vosburg, Associate Counsel, May 9, 2005,

at 1; Ex. 8a, SF-50, November 4, 2001,  Appointment of Ms. Vosburg as a Student Intern Law

Clerk.

7.   On November 3, 2002, the not-to-exceed date of Ms. Vosburg's term, excepted

service, CG-905-11 Attorney appointment, was extended  to November 3, 2005. Ex. 8b,

November 3, 2002, SF-50, Extension of the Not-to-Exceed Date of Ms. Vosburg's Appointment.

8.   Ms. Vosburg was promoted from a CG-905-11 Attorney to CG-905-12 Attorney on

2

February 23, 2003. Ex. 8c, SF-50, February 23, 2003, Promotion of Ms. Vosburg from Grade 11 to Grade 12 Attorney.

9.   Ms. Vosburg was converted from a term excepted service employee to a permanent excepted service employee in July 2004, and has been promoted through to grade 14 as an FDIC lawyer. Ex. 1, Affidavit of Plaintiff Stacey K. Sharpe, April 23, 2005, at 3; Ex. 7, Affidavit of Adriana Vosburg, Associate Counsel, May 9, 2005, at 1; Ex. 9, Position Description, CG 13, Attorney; Ex. 8d, SF-50, February 23, 2003, Conversion to Excepted Service; EX. 8e, SF-50, November 28, 2004, Promotion of Ms. Vosburg to a Grade 13, Attorney.

10.   As a lawyer, Ms. Vosburg provides legal advice and counsel to various components of the OIG; writes legal opinions for the OIG; represents the OIG in meetings regarding audits, investigations, and management issues;  and represents the OIG in EEO and MSPB proceedings. Ex. 7, Affidavit of Adriana Vosburg, Associate Counsel, May 9, 2005; Ex. 9, Position Description, Grade 13 Attorney.

11.   The position of  Attorney in the Office of Counsel required that Ms. Vosburg be a graduate of an accredited Law School and a successful applicant of a state bar examination. Ex. 9, Position Description, Grade 13 Attorney.

12.   Plaintiff was hired by the Office of Counsel in 1998. At that time,  the Office of Inspector General was comprised of approximately 230 employees. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General, May 19, 2005, at 2.

13.   In 1998, there was a significant amount of Paralegal work  because the Office of Counsel was processing a large backlog of FOIA and discovery work remaining  from the banking crisis of the early 1990's. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General,

May 19, 2005, at 2; Ex. 11, Letter from Deputy Inspector General Patricia Black to Plaintiff,

Subject: Reassignment of Plaintiff to Grade 11 Human Resources Specialist Position.

14.   In the first year of Plaintiff's employment as a Paralegal, April 1998 to March 1999,

OIG Counsel's Office responded to 48 FOIA Requests and/or appeals. Ex. 12a, Extract from the

Office of Inspector General Semi-Annual Reports to Congress, April 1998 to March 1999.

15.   In the second year of Plaintiff's employment, April 1999 through March 2000, OIG

Counsel's Office responded to 39 FOIA Requests and/or appeals. Ex. 12b, Extract from the

Office of Inspector General Semi-Annual Reports to Congress, April 1999 to March 2000.

16.   In the third year of Plaintiff's employment, April 2000 through March 2001, the

number of FOIA requests and/or appeals declined to 31.  Ex. 12c, Extract from the Office of

Inspector General Semi-Annual Reports to Congress, April 2000 to March 2001.

17.   Between April 2001 and March 2002,  the number of FOIA matters processed by the

OIG Counsel's Office dropped to 11. Ex. 12d, Extract from the Office of Inspector General

Semi-Annual Reports to Congress, April 2001 to March 2002.

18.   The next year of Plaintiff's employment, April 2002 through March 2003, saw a

slight increase, to 15, in the number of FOIA matters processed by the OIG Counsel's Office .

Ex. 12e, Extract from the Office of Inspector General Semi-Annual Reports to Congress, April

2002 to March 2003.

19.   The OIG Counsel's Office processed 10 FOIA matters in the year from April 2003

through March 2004. Ex. 12f, Extract from the Office of Inspector General Semi-Annual Reports

to Congress, April 2003  to March 2004.

20.   Between April and September 2004, 7 FOIA matters were processed by the OIG

4

Counsel's Office.  Ex. 12g, Extract from the Office of Inspector General Semi-Annual Report to Congress, April 2004 to September 2004.

21.  During the 12 month period following Plaintiff's transfer to Human Resources, OIG Counsel's Office responded to 14 FOIA matters, compared to the 48 FOIA matters responded to during Plaintiff's first year of employment as a Paralegal in the OIG Counsel's Office. Ex. 12h, Extract from the Office of Inspector General Semi-Annual Reports to Congress, October 2004 to September 2005.

22.  By the fall of 2004, the OIG workforce had declined to approximately 168 employees due both to attrition and Agency downsizing efforts. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General, May 19, 2005, at 2; Ex. 13, Letter, March 1, 2002. Office of Inspector General on Downsizing.

23.  The backlog of FOIA requests that existed at the time of Plaintiff's hiring in 1998 had been resolved and current FOIA and litigation discovery requests had decreased. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General, May 19, 2005, at 2.

24.  After the elimination of the FOIA backlog and reduction in  FOIA and litigation discovery requests,  Plaintiff was significantly underemployed as a Paralegal in the OIG Counsel's Office. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General, May 19, 2005, at 2; Ex. 2, Affidavit of Counsel to the Inspector General, Frederick W.  Gibson, Jr., May 13, 2005, at 5; Exs, 12a - 12g, Extracts of OIG Semi-Annual Reports to Congress from April 1998 through September 30, 2004 showing the number of FOIA Responses in each Six Month Period.

25.  In late summer/early fall of 2004, Patricia M. Black, now Deputy Inspector General, spoke with each of her subordinate office heads and requested that they determine which

5

positions in their organizations were surplus to future needs as the agency would be required to downsize. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General, May 19, 2005, at 2; Ex. 2, Affidavit of Counsel to the Inspector General, Frederick W. Gibson, Jr., May 13, 2005, at 5.

26. The Counsel to the Inspector General determined that the position of a full-time Paralegal was no longer required as there was not enough work to justify the position in his Office and that Plaintiff's ongoing assignments could be absorbed by the Office's Legal Technician and the Associate Counsel responsible for information law issues, Christian Gieseler. Ex. 2, Affidavit of Counsel to the Inspector General, Frederick W. Gibson, Jr., May 13, 2005, at 5; Ex. 14, Affidavit of Theresa Fewell, Office of Inspector General, Legal Assistant, May 19, 2005, at 3.

27. At the same time, the OIG Human Resources Branch (HRB) had been seeking a HR specialist to perform the employee benefits duties because the OIG's former benefits specialist had transferred and despite advertisement, the OIG had been unable to find an acceptable candidate to fill this position. Ex. 15, Affidavit of Rex Simmons, Assistant Inspector General for Management and Congressional Relations, at 1-2; Ex 16, Affidavit of Trina F. Petty, Director of Human Resources, May 19, 2005, at 3.

28. Plaintiff had previously expressed an interest in personnel work, had taken government training in personnel law and was soon to be enrolled in a graduate degree program concentrating on human resources management. Ex. 1, Affidavit of Plaintiff, Stacey K. Sharpe, April 23, 2005, at 2-3; Ex. 2, Affidavit of Frederick W. Gibson, Jr., Counsel to the Inspector General, May 13, 2005, at 2; Ex. 17, Affidavit of Plaintiff, Stacey K. Sharpe, May 31, 2005, at 4.

29.  During the summer of 2004, the Counsel to the Inspector General had a number of

conversations with Plaintiff with regard to Plaintiff's transfer to the HRB to work in employee

benefits. Ex. 1, Affidavit of Plaintiff, Stacey K. Sharpe, April 23, 2005, at 2; Ex. 2, Affidavit of

Frederick W. Gibson, Jr., Counsel to the Inspector General, May 13, 2005, at 4.

30.  In these conversations,  Plaintiff indicated that she would be interested in transferring

to HRB if she could be assigned to work on employee relations matters.  Ex. 1, Affidavit of

Plaintiff, Stacey K. Sharpe, April 23, 2005, at 3; Ex. 2, Affidavit of Frederick W. Gibson, Jr.,

Counsel to the Inspector General, May 13, 2005, at 4; Ex. 17, Affidavit of Plaintiff, Stacey K.

Sharpe, May 31, 2005, at 4.

31.  Plaintiff indicated her interest in transferring to HRB if she could be assigned to

work on employee relations matters in an e-mail message to the Counsel to the Inspector General

and OIG HR Director on August 24, 2004. Ex. 18, August 24, 2004 e-mail message from the

Plaintiff to Frederick W. Gibson.

32.  Deputy IG Patricia Black spoke with the OIG HR Director with regard to an

 involuntary transfer of Plaintiff from her Paralegal position to the HRB employee benefits

position. Ex. 10, Affidavit of Patricia Black, Deputy Inspector General, May 19, 2005, at 2 ; Ex.

16, Affidavit of Trina F Petty, Director of Human Resources, Office of Inspector General, May

19, 2005, at 2.

33.  After a review of the United States Office of Personnel Management's internal

placement provisions, the Deputy IG prepared a letter to the Plaintiff transferring Plaintiff from

her grade 11 Paralegal position to her grade 11 HR Specialist position in HRB. Ex. 19, Appendix

III, FDIC Merit Promotion Plan, Inservice Placement Provisions; Ex. 11, September 23, 2004

Letter from Deputy Inspector General Patricia Black to the Plaintiff, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Specialist Position.

34.  The letter was delivered to Plaintiff on September 23, 2004.  Ex. 11, September 23, 2004 Letter from Deputy Inspector General Patricia Black to the Plaintiff, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Specialist Position.

35.  Plaintiff accepted the involuntary transfer on October 1, 2004. Ex. 11, September 23, 2004 Letter from Deputy Inspector General Patricia Black to the Plaintiff, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Specialist Position.

36.  Between May 2000 and April 2007, the Office of Inspector General paid for Plaintiff to attend approximately 19 short courses on personnel related topics. Ex. 20, Affidavit of Trina F. Petty, Deputy Assistant Inspector General for Management, Office of Inspector General, August 15, 2007.

37.  Three months after Plaintiff's October, 2004 transfer to the HR specialist position, beginning in January 2005, and through to May 2007, the Office of Inspector General paid the University of Maryland $12,735.26 for tuition and textbooks for Plaintiff to pursue and receive a Master of Science of Management degree, with a concentration in Human Resources. Plaintiff transferred to the U.S. Office of Personnel Management on April 28, 2007. Ex. 20, Affidavit of Trina F. Petty, Deputy Assistant Inspector General for Management, Office of Inspector General, August 15, 2007.

38.  On October 26, 2004, the FDIC announced that it would offer buyouts to a substantial number of employees and conduct a Reduction in Force to eliminate 500 to 600 positions by the end of 2006. Ex. 21, Memorandun of October 26, 2004, FDIC 2004 Buyout

8

Program and Reductions-in-Force.

39.  Plaintiff initially contacted an Agency EEO Counselor on October 27, 2004. Ex. 22, EEO Counselor's Report.

40.  On October 28, 2004, the Deputy IG sent an e-mail message to OIG staff and informed  them of the OIG's initial reaction to the FDIC's announced buyouts and reduction in force. Ex. 23, October 28, 2004 , Global E-Mail Message on Office of Inspector General Workforce Planning.

41.  On December 17, 2004, the Deputy IG announced the OIG's buyout plan.  The plan offered employees in surplus or incumbent–only positions, and up to 10 Office of Audit employees, opportunities to retire or leave OIG employment with an incentive payment of 50% of the yearly salary of the departing employee. Ex. 24,December 17, 2004 Global E-Mail Message: Announcement of the Office of Inspector General Limited Buyout Plan.

42.  The Plaintiff filed her Formal Complaint on February 11, 2005. Ex. 25, Formal Complaint of Discrimination.

43. On February 22, 2005, the Agency accepted the following issue for investigation:

Whether Complainant [Plaintiff] was discriminated against on the basis of race when: Effective October 17, 2004, she was subjected to an involuntary directed reassignment from the position of Paralegal Specialist, CG-0950-11, in the Office of Counsel to the Inspector General to the position of Human Resources Specialist, CG-0201-11, in the Office of Management and Congressional Relations, Human Resources Branch Office of Inspector General. Ex. 26, Acceptance Letter.


44.  On June 8, 2005, Acting IG, Patricia M. Black, announced that the OIG was shrinking from its authorized size of 160 employees to 133 employees and was closing Office of

Audit Field Offices in Atlanta and Chicago. Ex. 27, Global E-Mail Message , Office of Inspector General, Proposal for Downsizing.

45.  On December 11, 2005, Plaintiff was promoted to a grade 12 HR Specialist due to accretion of duties. Ex. 28, SF-50, December 11, 2005, Promotion of Plaintiff to Grade 12, Human Resources Specialist.

46.  On February 1, 2006,  Plaintiff testified in her deposition that the only evidence that she possessed to show that her involuntary transfer from a grade 11 Paralegal position to a grade 11 HR Specialist position was motivated by discriminatory animus was the fact that she was involuntarily transferred.   Ex. 29, Extract from Plaintiff's February 1, 2006 Deposition, at  49.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Assistant United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224


OF COUNSEL:
Michael S. Cosgrove
Associate Counsel to the Inspector General
Federal Deposit Insurance Corporation

11

**INDEX OF EXHIBITS**

**Exhibit 1**

      Affidavit of Plaintiff Stacey K. Sharpe
      April 23, 2005

**Exhibit 2**

      Affidavit of Frederick W. Gibson, Counsel to the
      Office of Inspector General
      May 13, 2005

**Exhibit 3**

      SF 50, March 1, 1998
      Reassignment of Plaintiff to Office of Inspector General

**Exhibit 4**

      SF 50, March 28, 1999
      Promotion of Plaintiff to Grade 9 - Paralegal

**Exhibit 5**

      SF 50, April 9, 2000
      Promotion of Plaintiff to Grade 11 - Paralegal

**Exhibit 6**

      Position Description
      Paralegal Specialist, Grade 11

**Exhibit 7**

      Affidavit of Adriana Vosburg
      Associate Counsel, Office of Inspector General
      May 9, 2005

**Exhibit 8a**

      SF 50, November 4, 2001
      Appointment of Ms. Vosburg as Student Intern Law Clerk

**Exhibit 8b**

      SF 50, November 3, 2002
      Extension of the Not-to-Exceed Date of Ms. Vosburg's Appointment

**Exhibit 8c**

      SF 50, February 23, 2003
      Promotion of Ms. Vosburg from Grade 11 to Grade 12 Attorney

**Exhibit 8d**

      SF 50, July 25, 2004
      Conversion to an Excepted Appointment

**Exhibit 8e**

      Sf 50, November 28, 2004
      Promotion of Ms. Vosburg to Grade 13 Attorney

**Exhibit 9**

      Position Description for GS-13 Attorney

**Exhibit 10**

      Affidavit of Patricia Black
      Deputy Inspector General
      Office of Inspector General
      May 19, 2005

**Exhibit 11**

      Letter from Deputy Inspector General Patricia Black to Plaintiff
      Subject: Reassignment of Plaintiff to Grade 11 Human Resources Specialist Position
      September 23, 2004

**Exhibit 12a**

      Extract, Office of Inspector, General Semi-Annual Report to Congress
      April 1998 - March 1999

**Exhibit 12b**

Extract Office of Inspector General, Semi-Annual Report to Congress
April 1999 - March 2000

**Exhibit 12c**

Extract from Office of Inspector General, Semi-Annual Report to Congress
April 2000 - March 2001

**Exhibit 12d**

Extract Office of Inspector General, Semi-Annual Report to Congress
April 2001- March 2002

**Exhibit 12e**

Extract Office of Inspector General, Semi-Annual Report to Congress          April
2002 - March 2003

**Exhibit 12f**

Extract Office of Inspector General, Semi-Annual Report to Congress
April 2003 - March 2004

**Exhibit 12g**

Extract Office of Inspector General, Semi-Annual Report to Congress
April 2004 - September 2004

**Exhibit 12h**

Extract Office of Inspector General, Semi-Annual Report to Congress
October 2004 - September 2005

**Exhibit 13**

Letter- March 1, 2002
Office of Inspector General
Subject: Downsizing

**Exhibit 14**

Affidavit of Theresa Fewell

3

Office of Inspector General
Legal Assistant
May 19, 2005

**Exhibit 15**

Affidavit of Rex Simmons
Assistant Inspector General for Management and Congressional Relations
Office of Inspector General
May 13, 2005

**Exhibit 16**

Affidavit of Trina F. Petty
Director of Human Resources
Office of Inspector General
May 19, 2005

**Exhibit 17**

Affidavit of Plaintiff Stacey Sharpe
May 31, 2005

**Exhibit 18**

August 24, 2004
E-Mail message from Plaintiff to Mr. Frederick Gibson

**Exhibit 19**

Appendix I I I, F.D.I.C. Merit Promotion Plan's Inservice Placement Provisions

**Exhibit 20**

Affidavit of Trina F. Petty
Deputy Assistant Inspector General
Office of Inspector General
August 15, 2007

**Exhibit 21**

Memorandum, October 26, 2004
F.D.I.C. 2004 Buyout Program and Reductions-in-Force

**Exhibit 22**

EEO Counselor's Report
October 27, 2004

**Exhibit 23**

October 28, 2004
Global E-Mail message on Office of Inspector General Workforce Planning

**Exhibit 24**

December 17, 2004
Global E-Mail message: Announcement of Office of Inspector General Buyout Plan

**Exhibit 25**

Plaintiff's Formal EEO Complaint
February 11, 2005

**Exhibit 26**

Agency Acceptance Letter
February 22, 2005

**Exhibit 27**

June 8, 2005
Global E-Mail message, Office of Inspector General, Proposal for Downsizing

**Exhibit 28**

SF 50, December 11, 2005
Promotion of Plaintiff to Grade 12, Human Resources Specialist

**Exhibit 29**

    Plaintiff's Deposition Testimony
    February 1, 2006

**Exhibit 30**

    Affidavit of Trina F. Petty, Director of Human Resources, F.D.I.C.
    Office of Inspector General, March 28, 2004

**Exhibit 31**

    Office of Inspector General, Counsel Work Flow Summary Report
    January 1, 1990 to January 30, 2006 for Stacey K. Sharpe

# Exhibit 1

Affidavit of Plaintiff Stacey K. Sharpe
April 23, 2005

# A F F I D A V I T

District of Columbia                              }

I Stacey K. Sharpe hereby affirm under the penalty of perjury and make this statement.

My name is Stacey K. Sharpe; I am an African-American woman, employed as a Human Resources Specialist (Benefits), CG-201-11, in the Human Resources Branch, Office of Management and Congressional Relations (OMCR), Office of Inspector General (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C. I have been working in my current position since October 18, 2004, and have been employed by the FDIC, OIG since April 1998.

Currently, my first-line supervisor is Trina Petty, Human Resources Director, and my second-line line supervisor is Rex Simons, Assistant Inspector General, OMCR, OIG, FDIC. I began working for both of my current supervisors on October 18, 2004.

When my claim at issue in this discrimination complaint arose, Fred Gibson, Counsel to the Inspector General, was my first line supervisor, and Patricia Black, Deputy Inspector General, was my second-line supervisor. Ms. Black was initially involved in my hiring within OIG. I was placed in the position of Paralegal Specialist, CG-0950-7, by Ms. Black and Lawrence Froehlich (my then first line supervisor) in April 1998. The two of them also approved my promotion to a grade CG-9 the following year. In 2000, Ms. Black and Mr. Gibson approved my promotion to CG-11, which is the full performance level for this position.

As a Paralegal Specialist, CG-0950-11, I conducted legal research, drafted memoranda, processed Freedom of Information Act and Privacy Act requests; prepared briefs on EEO related cases; and commented on policies. I have a B.S. in Paralegal Studies and previously worked as a Legal Technician, where I assisted Paralegals in research and drafting legal memoranda. I am knowledgeable of some case law and court proceedings. I am able to interpret and summarize the law, work as a team member, and assist more than one attorney with different projects.

Page 1 of 4                                      Affiant's Initials  _____

As a Human Resources Specialist (Benefits), CG-201-11, I function at the full performance level of this job. I assess Human Resources reports, research issues related to federal and FDIC benefits and respond to FDIC OIG employees in writing and orally regarding their benefits. To perform these functions I am knowledgeable of U.S. Office of Personnel Management regulations and policies as they relate to federal benefits, and FDIC personnel policies and regulations related to unique FDIC benefits. Because I provide customer service, I possess customer service skills. I had to become familiar with some general Human Resources functions and certain laws pertaining to benefits. I am still working on a career development plan, with a list of Human Resources development courses that need to be completed in order to perform my current job duties. I must also learn different Human Resources systems. My current position has only a slight relationship to my educational training. I am, however, enrolled in a grade program at UMUC with a major in management and with a concentration in human resources management.

I did not want to leave the paralegal field, but was forced to do so. This is how it happened. Sometime in late September 2004, Ms. Black called me into her office and gave me a copy of a memorandum addressed to me, which directed that I be reassigned to the Human Resources Branch. The memo stated there was a decrease in the paralegal work load that I was doing, so there was no need for a Paralegal in OIG. When Ms. Black gave me the memo reassigning me, I asked her what would happen if I declined the offer. Ms. Black responded that I would not have a job and would be terminated from federal service if I did not take the directed reassignment out of the paralegal field.

Prior to my directed reassignment, Mr. Gibson approached me three or four times to discuss a voluntary reassignment and offer me a position in the Human Resources Branch, as a Human Resources Specialist (Benefits) -- the job I was later forced to take. As a result, in August 2004, about a month before receiving my directed reassignment, I sent a memo to Ms. Petty and Mr.

Affiant's Initials

Gibson stating I did not feel qualified for that position, that it did not match my skill set, and declining to take the position involuntarily.

When I sent the memo to Ms. Petty and Mr. Gibson in August 2004, I was aware that a position of Employee Relations Specialist was vacant in OIG, and I stated in that same memo to them that I wanted to be placed in that position, because it more closely matched my skill set. Mr. Gibson rejected that suggestion. He came to my office and asked me to reconsider my rejection of the benefits job offer. The Employee Relations position was posted one or two months before I was asked if I wanted to work in Human Resources. To date, the Employee Relations position has not been filled because a staffing and recruiting position is still being occupied. I do not know if the employees relations position will ever get filled.

Also, prior to my directed reassignment, I met with Ms. Petty, and we talked about the offer made to me, and based on that conversation she stated that she did not feel I was qualified for the position of Human Resources Specialist (Benefits). She told me that I would require a lot of educational training, which resulted in my now developing a career development plan.

I do not know what the FDIC policy on directed reassignment was at the time of my being reassigned to the benefits job. In fact, that was the first time I had seen a directed reassignment given to anyone.

At the time of my suffering the directed reassignment, I was the only Paralegal in the Office of Counsel to the Inspector General. Since that time, I believe a newly hired Attorney, Adriana Vosburg, a White woman, and maybe the Legal Assistant, Theresa Fewell, an African-American are performing the duties of the Paralegal Specialist job I had encumbered. Ms. Vosburg, was a temporary Law Clerk with FDIC OIG for a few years who was just hired by the OIG in July 2004 as an attorney after passing the Bar examination. Ms. Fewell is an incumbent, and is not skilled as a Paralegal. At one point I had been a Legal Technician before becoming a Paralegal. The full-time

Affiant's Initials _____

equivalency ("FTE") position I occupied as a Paralegal was used to place Ms. Vosburg into a permanent position in the OIG.

Mr. Gibson told me the paralegal work would be split between Ms. Fewell and Ms. Vosburg. I have now learned that Ms. Fewell has started Paralegal training. At one point, a temp was hired to assist the Office of Counsel, but I do not know in what capacity, though I believe this person is also assisting in the Paralegal duties I once performed (and which I was told were no longer in existence).

I have been humiliated personally and professionally by the directed reassignment and have had to attend a lot of training just to get up to speed on the different laws and regulations affecting federal benefits. I am out of my career field, and I did not want to be in benefits. I would have accepted a position in employee relations or staffing, which is more related to my skill set as a paralegal and is of interests to me. My current job is not something that interests me. I believe I was reassigned because FDIC OIG wanted to make room — get an FTE — for Ms. Vosburg, a white woman.

I have read the forgoing statement consisting of __4__ page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.

_Stacey L. Sharpe_

Subscribed and sworn before me at ___Upper Marlboro, MD___

on this __23rd__ day of __April__ , __2005__

**FDIC**

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.  To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.  To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.  To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.  To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.  To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _Stacey K. Sharpe_ DATE: _4/11/05_

## PRIVACY ACT NOTICE TO COMPLAINANT
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_____
Signature of Interviewer

_____
Signature of Complainant

Date: __4/11/05_____

Place: __Washington, D.C.__

# PRIVACY ACT NOTICE TO [illegible] COMPLAINANT
# FOR [illegible] INTERVIEW

[illegible]

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. The information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

Signature of Complainant

[illegible] Date

[illegible] Date

Signature of Interviewer

# Exhibit 2

Affidavit of Frederick W. Gibson, Counsel to the
Office of Inspector General
May 13, 2005

## A F F I D A V I T

**District of Columbia**                                    }

**I, Frederick W. Gibson, Jr., hereby affirm under the penalty of perjury and make this statement.**

My name is Frederick W. Gibson, Jr., I am a Caucasian, and currently employed as Counsel to the Inspector General, EM-905, in the Office of Inspector General (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C. I formally became the Counsel to the Inspector General in the fall of 2002, and prior to that I was the Deputy Counsel to the Inspector General. I began working for the FDIC, OIG, on January 1, 1996, when the Resolution Trust Corporation merged with the FDIC, OIG.

Patricia M. Black, Deputy Inspector General, FDIC, OIG is my current first line supervisor. At present, I have no second line supervisor, as that would be the Inspector General, which position is currently vacant. My second line supervisor was Gaston L. Gianni, Jr., who was the Inspector General until his retirement on December 31, 2004.

The Complainant worked for me and had done so for a number of years while I was her first line supervisor as Counsel to the Inspector General. Through this working relationship, I surmised the Complainant was African-American.

I had no involvement in the decision to reassign the Complainant. The reassignment was directed by Ms. Black, the Deputy Inspector General. My understanding is that Ms. Black concluded that the Paralegal Specialist position did not and could not occupy the Complainant on a full-time basis, because there was not enough work, and the Human Resources specialist position, which was also a grade 11, would keep her employed full-time.

Page 1 of 1                                    Affiant's Initials _FWG_

As a Paralegal Specialist in the Office of Counsel to the Inspector General, the Complainant performed a number of duties, including: maintaining an opinions log; handling the intake and initial processing and review of Freedom of Information Act (FOIA) and Privacy Act requests; performing occasional research; and managing, to the extent we had document-heavy litigation, the identity and flow of documentary materials in connection with cases; and other duties as assigned, but I cannot remember any other duties that were assigned. To my knowledge the full performance level of this position is a grade 11, without further promotion potential.

When I became Counsel to the Inspector General, the Complainant was incumbent in the position of Paralegal Specialist, so I did not interview her, nor did I review her applications, so my understanding of her experience is based on what I believe I have been told, and therefore it may not be complete. My understanding is that the Complainant came from a Paralegal position in the FDIC Legal Division. I knew the Complainant had specialized training and an undergraduate degree and perhaps first year law school, so that education and training clearly was relevant to doing paralegal type work. While the Complainant was here, she took some FOIA and Human Resources training. The Complainant expressed an interest in doing more work in the employee relations area, and she took training in that area, as well as in EEO and dispute resolution. The Complainant also completed a research course.

I do not know the duties and responsibilities of the Human Resources Specialist (Benefits) position. My understanding is that the full performance level of this position is CG-11, but I do not know for certain. I understand the Human Resources Specialist (Benefits) position in question is equivalent in terms of grade and promotion potential to

Affiant's Initials FWC

the Complainant's former Paralegal Specialist position. However, I do not know what the Complainant's specific duties in the Human Resources Specialist (Benefits) position are.

My understanding of the way the Human Resources office works is that because it is a small office, people there are expected to be able to pitch in on a variety of matters in addition to their own principal area of responsibility. My hope and assumption is that whatever exposure and training the Complainant had in Human Relations related matters while in Counsel's office will be helpful to her. But I cannot really address how the Complainant's background ties into her current position description other than she took some Human Resources related training.

To my knowledge Ms. Black informed the Complainant of the directed reassignment verbally. I do not know specifically on what day this conversation would have taken place. I was not present when the Complainant was informed of the directed reassignment, so I do not know what she said at that time. I do not know what the Complainant was told as the reason for the reassignment at that time, because I was not there. My understanding from subsequent discussion is that Ms. Black told the Complainant there was work in Ms. Petty's office and not enough in the Counsel's office. I believe Ms. Black told the Complainant this in the discussion where she gave her the reassignment, but this is all something I heard second-hand, I was not there. Subsequent to the time of her reassignment, the Complainant said very little to me on this or any other subject.

I do not remember the Complainant telling me that she believed she was not qualified for the position of Human Resources Specialist (Benefits). The Complainant

Affiant's Initials _PWG_

and I had several conversations about a potential position in the Human Resources Branch (HRB), but I do not believe that she ever indicated she felt unqualified for the position. Equally though, it was clear she would have to take training to become familiar with the position and whatever the rules and requirements were governing the position. The Complainant never came out and said she was not qualified, but a tacit understanding that I had, and thought we both had, as part of our conversations was a need for training, and it was my understanding that training would be made available if she were to take the position.

The Complainant told me she believed there was another position in the HRB that more nearly matched her skill set. The Complainant's belief was that there was going to be a Benefits and a separate Employee Relations Specialist position. My recollection is that there was no Employee Relations position at that time. These discussions were part of a series of conversations that took place prior to the time of the directed reassignment, when the Complainant had been talking with Ms. Petty about a position in the HRB. However, there was no discussion about a possible directed reassignment. The reassignment was something that, from my perspective, just happened. Ms. Black made the decision and it happened.

Prior to the Complainant's reassignment there was a continuing discussion about potential ongoing downsizing in the OIG. We had gone through a period of buyouts in our business lines, particularly in the Office of Audits, and had downsized significantly. During late 2003 and into early 2004, however, it became clear there would be continued pressure to downsize even further. There began to be discussions about ways in which the FDIC, OIG could downsize further. Those discussions led to a conversation between

Affiant's Initials FWG

Ms. Black and myself as office head, about whether I would consider any position surplus in my office because of a lack of work. I believe Ms. Black had similar conversations with each of the other office heads in the FDIC, OIG, but because I did not participate in them, I do not know for certain. I told Ms. Black that I did not believe that there was sufficient work that could be performed by a Paralegal Specialist to justify a full-time position in our office. That was a management call based on daily supervision of the activities of the lawyers and the paralegal in my office. In any case that discussion, over time, I believe led to consideration as to whether there were other positions within the FDIC, OIG that either were surplus or would have to be filled because of changes in workload and office responsibilities. That was the background out of which discussions took place over the position in the HRB, that was discussed with the Complainant. It was clear Ms. Petty had needs in that office and that we did not have enough work to keep someone at the Complainant's grade level employed on a full-time basis.

At the time the Complainant was reassigned she had very little ongoing work. The opinion log was something Ms. Theresa Fewell, the Legal Assistant, could keep up, and I do not know if we have since even issued any opinions to be included in it. Chris Gieseler, an Attorney who does the vast majority of FOIA work, is keeping up the FOIA log. There is no need for an independent discrete paralegal function in my office.

My understanding is that a directed reassignment is always within the discretion of management, and I do not believe there are any specific policies and procedures in effect governing the exercise of that discretion. To my knowledge the Complainant was not reassigned because of her race.

I have no further testimony to provide.

Affiant's Initials _FWS_

I have read the forgoing statement consisting of _6_ page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.

_Frederick W. Gibson, Jr._

Subscribed and sworn before me at _Washington, D.C._
on this _13th_ day of _May, 2005_

_Craig A. Brieske, Investigator_
US Investigations Services

Affiant's Initials _FWG_



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
### IN
### EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.  To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.  To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.  To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.  To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.  To review your affidavit and make corrections or other changes _prior to_ signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____        DATE: 8/9/2005

## PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
### (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

Signature of Interviewer

Signature of Witness (person providing statement)

Date: May 9, 2005

Place: _____

**Exhibit 3**

SF 50, March 1, 1998
Reassignment of Plaintiff to Office of Inspector General

# NOTIFICATION OF PERSONNEL ACTION

Exception to SF 50-8
approved by GSA/IRMS 2-87

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| HARKINS, STACEY K | | | | 03/01/98 |

| FIRST ACTION | | | SECOND ACTION | |
|---|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | | 6-A. Code | 6-B. Nature of Action |
| .21 | REASSIGNMENT | | | |
| 5-C. Code | 5-D. Legal Authority | | 6-C. Code | 6-D. Legal Authority |
| N2M | REG 335.102 | | | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| INTERNAL REVIEW INFOR SYSTEM TECH. | PARALEGAL SPECIALIST |
| 00000001   H95D03 | 00000601   H00J50 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0303 | 00 | | | | CG | 0950 | 07 | 00 | | PA |
| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | | | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | | |
| .00 | | | .00 | | | | | | .00 | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | FEDERAL DEPOSIT INSURANCE CORPORATION |
| OFC OF INT CNTRL MGT | OFFICE OF INSPECTOR GENERAL |
| OFC OF THE DIR | OFFICE OF THE INSPECTOR GENERL |
| AUDIT FOLLOWUP & RES. SECT. | OFF OF THE INSP GEN |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| | 1-None    3-10 Point/Disability    5-10 Point/Other | | 1 | 0-None    2-Conditional | | YES    NO |
| | 2-5 Point    4-10 Point/Compensable    6-10 Point/Compensable/30% | | | 1-Permanent    3-Indefinite | | |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| | | 9 | NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|
| FERS AND FICA | 10/24/87 | F | FULL TIME | |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1-Competitive Service    3-SES General    2-Excepted Service    4-SES Career Reserved | N | E-Exempt    N-Nonexempt | 8888 |

| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON   DIST OF COLUMBIA   DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

### 45. Remarks

TO CALCULATE TOTAL COMPENSATION, MULTIPLY 4.9% REMAINING REGIONAL PAY
DIFFERENTIAL TIMES BASIC PAY (BLOCK 20A) AND ADD TO TOTAL SALARY (BLOCK 20)
SELECTED FROM MERIT PROMOTION PLAN ROSTER OF ELIGIBLES 98-B-507
DATED 02-13-1998.
FULL PERFORMANCE LEVEL OF EMPLOYEE'S POSITION IS:
CG-11

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | VANESSA A. SINGLETON |
| FD 68 | 1636 | 04/13/98 | PERSONNEL OFFICER |

E-39

**Exhibit 4**

SF 50, March 28, 1999
Promotion of Plaintiff to Grade 9 - Paralegal

Standard Form 50
Rev. 7/91
U.S.Office of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOTIFICATION OF PERSONNEL ACTION**

Exception to SF 50-B
approved by GSA/IRMS 2-87

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| HARKINS, STACEY K | | | 03/28/99 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 702 | PROMOTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| N6M | REG 335.102 CAR PROM | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| PARALEGAL SPECIALIST | PARALEGAL SPECIALIST |
| 00000601  H00J50 | 00000601  J02J50 |

| 8. Pay Plan | 9. Occ Code | 10.Grade/Level | 11.Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18.Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 07 | 00 | | PA | CG | 0950 | 09 | 00 | | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | .00 | | | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION |
| | OFFICE OF INSPECTOR GENERAL |
| | OFF OF THE INSP GEN |
| | COUNSEL TO THE INSP GEN |

**EMPLOYEE DATA**

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1-None  3-10 Point/Disability  5-10 Point/Other  2-5 Point  4-10 Point/Compensable  6-10 Point/Compensable/30% | | 1  0-None  2-Conditional  1-Permanent  3-Indefinite | | YES  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS AND FICA | 10/24/87 | F  FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1-Competitive Service  3-SES General  2-Excepted Service  4-SES Career Reserved | N  E-Exempt  N-Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON    DIST OF COLUMBIA    DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

49. Remarks

TO CALCULATE TOTAL COMPENSATION, MULTIPLY 2.8% REMAINING REGIONAL PAY
DIFFERENTIAL TIMES BASIC PAY (BLOCK 20A) AND ADD TO TOTAL SALARY (BLOCK 20
FULL PERFORMANCE LEVEL OF EMPLOYEE'S POSITION IS CG-11.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | *Vanessa Singleton* E-40 |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | VANESSA SINGLETON |
|---|---|---|---|
| FD 68 | 1636 | 04/15/99 | PERSONNEL OFFICER |

5-Part   50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-623

2 — OPF Copy — Long-Term Record — DO NOT DESTROY

FD 684001000110100000    PP 07 1*1999*BATCH 16365583  000-00  201-06 AG/EO 68-1636

**Exhibit 5**

SF 50, April 9, 2000
Promotion of Plaintiff to Grade 11 - Paralegal

Standard Form 50-B
Rev. 7.91
U.S. Office of Personnel Management
FPM Supp. 296-33. Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

Approved Exception to the SF 50-B
July 199

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| HARKINS, STACEY K | | | | 04/09/00 |

| FIRST ACTION | | | SECOND ACTION | |
|---|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | | 6-A. Code | 6-B. Nature of Action |
| 702 | PROMOTION | | | |
| 5-C. Code | 5-D. Legal Authority | | 6-C. Code | 6-D. Legal Authority |
| N6M | REG 335.102 CAR PROM | | | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | PARALEGAL SPECIALIST |
| | 00000750   40I014 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 09 | 00 | | PA | CG | 0950 | 11 | 00 | | PA |
| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | | | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | | |
| | | | .00 | | | | | | .00 | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION |
| | OFFICE OF INSPECTOR GENERAL |
| | OFF OF THE INSP GEN |
| | COUNSEL TO THE INSP GEN |
| | FD 684001000110100000   PP 08 2000 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 - None   3 - 10 Point/Disability   5 - 10 Point/Other | 2 - 5 Point   4 - 10 Point/Compensable   6 - 10 Point/Compensable/30% | | 1 | | YES   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K   FERS AND FICA | 10/24/87 | F   FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 - Competitive Service   3 - SES General   2 - Excepted Service   4 - SES Career Reserved | N   E - Exempt   N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON   DIST OF COLUMBIA   DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

45. Remarks

SELECTED FROM MERIT PROMOTION PLAN ROSTER OF ELIGIBLES 98-B-507
DATED 02-13-1998.

~~POSITION IS AT THE FULL PERFORMANCE LEVEL.~~

| 47. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| 48. Agency Code   48. Personnel Office ID   49. Approval Date | *signature* |
| FD 68   1644   04/10/00 | TRINA F PETTY |
| | DEPUTY ASSISTANT IG, HUMAN RESOURCES |

E-41

TURN OVER FOR IMPORTANT INFORMATION
5-Part 50-316

2- OPF    Copy - Keep for Future Reference

Editions Prior to 7.91 Are Not Usable After 6.30.9
NSN 7540-01-333-6238

# Exhibit 6

Position Description
Paralegal Specialist, Grade 11

.

# FEDERAL DEPOSIT INSURANCE CORPORATION
## POSITION DESCRIPTION

40I014

| For Official Use Only | 1. Check one: Dept'l ☐  Field ☐ | 2. Official headquarters: WASHINGTON, DC | 4. Staffing Table No. L06J50 |
|---|---|---|---|
| **NON-EXEMPT FAIR LABOR STANDARDS ACT** | 3. Reason for submission: (a) If this position replaces another (i.e., a change of duties in an existing position), identify such position by title, allocation (service, series, grade), and position number. | | 5. O.P.M. Certification No. |
| | | | 6. Date of certification |
| Supv: 8    EUC: 8888    PSN: LN | (b) Other (specify) | | 7. Date received from O.P.M. |
| 8.            CLASSIFICATION ACTION | | | |

|  |  | CLASS | | | | |
|---|---|---|---|---|---|---|
| ALLOCATION | CLASS, TITLE OF POSITION | SERVICE | SERIES | GRADE | INITIALS | DA: |
| (a) F.D.I.C. | PARALEGAL SPECIALIST | CG | 0950 | 11 | WP | 10/3/9 |
| (b) U.S. Office of Personnel Management | | | | | | |
| (c) Recommended by initiating office | | | | | | |

| 9. Organizational title of position (if any) | 10. Name of employee (if vacancy, specify) |
|---|---|
| | |

| 11. Organizational location | (c) Third subdivision |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| (a) First subdivision | (d) Fourth subdivision |
| OFFICE OF INSPECTOR GENERAL | |
| (b) Second subdivision | (e) Fifth subdivision |
| COUNSEL TO THE IG | |

| 12. This is a complete and accurate description of the duties and responsibilities of my position | SIGNATURE OF EMPLOYEE | DATE |
|---|---|---|
| | | |

13.

I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of Corporation funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

Signature of Immediate Supervisor          Date  9/26/97
Title: PRINCIPAL DEPUTY INSPECTOR GENERAL

| 14. Signature of Division/Office Director or designated representative | 15. Signature of Director of Personnel or designated representative |
|---|---|
| (Signature)          (Date) 9/26/97 | (Signature)          (Date) 10/3/97 |
| Title: INSPECTOR GENERAL | Title: Sr. Pers. Mgt. Spec. |

16. Remarks                                                    FPL-GG-11

Position abolished as of 10/12/2004.
L. Petty

17. DESCRIPTION OF MAJOR DUTIES AND RESPONSIBILITIES (SEE ATTACHED)

FDIC 2000/10 (9-81)                                              F-4

FEDERAL DEPOSIT INSURANCE CORPORATION
POSITION DESCRIPTION

CLASSIFICATION:            Paralegal Specialist, GG-950-11
ORGANIZATIONAL TITLE:      Paralegal
LOCATION:                  Office of Inspector General, Washington,
                           D.C.

## Major Duties:

Performs legal research, writing and other related paralegal
duties in support of the Counsel to the Inspector General and
other attorneys on OIG's Legal Staff.  Specifically:

-   Researches information for the use of the OIG Legal Staff
    attorneys in drafting legal memoranda, opinions, briefs,
    motions, etc.  Duties vary widely and include the
    responsibility to:  analyze audit working papers and
    reports, and criminal investigative files and reports of
    investigation, and to summarize information; obtain and
    compile data and documents; research and interpret legal
    opinions; verify citations referenced in legal writing; and
    contact various jurisdictions to acquire copies of requested
    documents;

-   Processes, in accordance with OIG policies, requests
    received pursuant to the Freedom of Information Act or the
    Privacy Act, including the following steps:  searching for,
    reviewing, and proposing redactions to responsive documents;
    coordinating with the Office of Executive Secretary and
    other FDIC offices in responding to FOIA/PA requests;
    contacting the FOIA/PA correspondent (the requester) to
    clarify or modify request, when appropriate;  drafting
    transmittal memorandum or response to OES or the requester;
    researching applicable statutory or regulatory provisions
    and applicable case law;

-   Drafts legal memoranda and drafts correspondence for
    the signature of Legal Staff attorneys concerning
    interpretations of provisions of:  the Inspector General
    Act, as amended; the Federal Deposit Insurance Act; the
    FDIC's rules and regulations; the False Claims Act, Federal
    Rules of Civil Procedure, Criminal Procedures, and Evidence,
    etc.; FDIC's rights, duties and powers; and other
    substantive matters handled by the OIG Legal Staff;

E-5

2

- Assists in preparing subpoenas issued under the Inspector General Act and in preparing Right to Financial Privacy Act notices, and coordinates with assigned attorney or requester of subpoena regarding the reasonableness of substantive information on subpoena form, and any attachments and related documents;

- Assists, as necessary, with FOIA/PA administrative appeals;

- Obtains copies of, and researches, proposed and existing legislation, regulations, and FDIC directives that may affect the economy and efficiency and the fraud-prevention activities of the FDIC OIG; reviews and analyzes such legislation, regulations and directives, and drafts summaries of these items and requests comments from within OIG about them; drafts written comments for submission to appropriate party, whether OIG, FDIC, other agencies, or Congress (or congressional committees and subcommittees);

- Assists in the discovery process regarding litigation-- whether civil, criminal, or administrative--involving OIG, including organizing or indexing of files and pleadings; drafting privilege logs under supervision of an attorney; and other duties relating to all phases of litigation;

- Enters and updates information on computerized tracking systems;

- Provides assistance, as necessary, to members of the Legal Staff in handling OIG legal matters;

- Performs other duties as assigned.


I.   KNOWLEDGE REQUIRED BY THE POSITION:

- Knowledge of policies, practices, and regulations pertaining to the work of OIG and the FDIC sufficient to identify the factual and legal issues and the relevant evidence, and to draft summaries of cases.

- Knowledge of, and experience in working with, the Inspector General Act, FOIA, Privacy Act, Right to Financial Privacy Act, False Claims Act.

- Knowledge of, and experience in, legal research, and the ability to interpret facts.

E -6-

3

- Knowledge of and ability to use the law library, LEXIS, Westlaw and other legal research sources, including those found through the Internet.

- Ability to communicate effectively, both orally and in writing.

- Ability to analyze and develop statistical data.

- Ability to deal with people effectively and tactfully.

- Ability to edit and proofread lengthy documents accurately and thoroughly.

- Average knowledge of computer concepts.


II. <u>SUPERVISORY CONTROLS:</u>

- The incumbent is under the general supervision of the Deputy Counsel to the Inspector General, and the direct supervision of the member of the Legal Staff to whom projects requiring paralegal assistance have been assigned. The incumbent exercises independent judgment, initiative, and originality in carrying out duties and responsibilities but may consult with the appropriate supervisor or Legal Staff member when unusual problems are encountered. Completed work is reviewed for adequacy of format, soundness of judgment and for adherence to appropriate instructions.


III. <u>GUIDELINES:</u>

- Available to the incumbent are general guidelines, including OIG or Legal Staff procedures; FDIC or Division manuals and memoranda; and other standard general or legal resources. The incumbent must be able to exercise sound judgment in fulfilling assignments and, where necessary, in developing appropriate and efficient solutions to diverse problems.


IV. <u>COMPLEXITY:</u>

- The work involves independently planning and carrying out complex legal research; processing complex FOIA and Privacy Act requests and addressing FOIA-related issues; preparing subpoenas; conducting reviews of complex legislative or regulatory enactments or proposals; and assisting in discovery and other litigation-related matters. The incumbent uses initiative in carrying out recurring

E-7

4

assignments covered by established procedures and precedents.

**V.    SCOPE AND EFFECT:**

- The incumbent's work supports and facilitates the handling of the Legal Staff's caseload--particularly with respect to legal research, FOIA/PA requests, discovery matters, subpoenas, and legislation/regulation/directive review--and other matters.

**VI.   PERSONAL CONTACTS:**

- Contacts are with Legal Staff attorneys, other OIG employees, and officials in other offices and divisions within the FDIC (particularly, the Office of Executive Secretary and the Legal Division), Federal and state agencies, and the judiciary.

**VII.  PURPOSE OF CONTACTS:**

- Contacts are primarily for the purpose of research, gathering information and material, and relaying informing and instructions.

**VIII. PHYSICAL REQUIREMENTS:**

- The work is sedentary in nature, although moving boxes of files may be expected from time to time.

**IX.   WORK ENVIRONMENT:**

- The work is performed in an office or library setting. Some travel may be required.

E-8

**Exhibit 7**

Affidavit of Adriana Vosburg
Associate Counsel, Office of Inspector General
May 9, 2005

## A F F I D A V I T

**District of Columbia}**

**I, Adriana R. Vosburg, hereby affirm under the penalty of perjury and make this statement:**

My name is Adriana R. Vosburg, I am an Hispanic, employed as an Attorney Advisor, CG-0905-13, in the Office of Counsel to the Inspector General (OCIG), Office of Inspector General (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C. I have been employed in this position since December 19, 2001, and have worked for the OCIG, OIG, FDIC, since May 2000.

My first line supervisor is Fred Gibson, Counsel to the Inspector General, OIG; and my second line supervisor is Patricia Black, Acting Inspector General. I began working for both of my supervisors on May 22, 2000.

I knew of the Complainant because I worked with her in the OCIG, where she was a Paralegal Specialist. I first began working with the Complainant in May 2000, when I was a Law Clerk. Through my relationship with the Complainant, I knew of her race.

Currently in my job duties and responsibilities, I provide legal advice and counseling for various components of the OIG; write legal opinions for the OIG; represent the OIG in meetings regarding audits, investigations and management issues; and I represent the OIG in EEOC and MSPB proceedings. These duties are different from those when I first began working for the FDIC, because I was a Law Clerk at that time, and was not authorized to represent the agency as an attorney. While employed as a Laws Clerk, I provided legal assistance on audits, investigations and administrative

Page 1 of 2                                    Affiant's Initials ARV

proceedings; conducted legal research; and assisted attorneys in daily matters of the office. My duties changed when I became an attorney in December 2001.

I am including my position descriptions for the record; otherwise I have no other testimony to add.

I have read the forgoing statement consisting of 2 page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.

_____
Adriana R. Vosburg

Subscribed and sworn before me at _Washington, DC_____

on this __9th__ day of ___May 2005__, _____

_____
Craig A. Brieske, Investigator
US Investigations Services

Affiant's Initials _ARV_



**FDIC**
**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500          *Office of Diversity and Economic Opportunity*

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.   To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.   To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.   To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.   To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.   To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____    DATE: 5/6/05

# PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____
Signature of Interviewer

_____
Signature of Witness (person providing statement)

Date: 5/6/05

Place: 801 17th St NW Washington DC

# Exhibit 8a

SF 50, November 4, 2001
Appointment of Ms. Vosburg as Student Intern Law Clerk

Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

NOTIFICATION OF PERSONNEL ACTION

Approved Exception to the SF
July 1

| 1. Name (Last, First, Middle) | | 2. Social Security Number | | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|
| VOSBURG, ADRIANA R | | | | 02/11/75 | 11/04/01 |

**FIRST ACTION** | | **SECOND ACTION** | |

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 171 | EXC APPT NTE 11/05/02 | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| Y5K | SCH B213.3202(A)GRAD | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| STUDENT INTERN (LAW CLERK) 00014358 40I073 | Law Clerk 00014358 40I097 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 00 | | | | CG | 0904 | 09 | 00 | 44,817.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | 39,619.00 | 5,198.00 | 44,817.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION OFFICE OF INSPECTOR GENERAL OFF OF THE INSP GEN COUNSEL TO THE INSP GEN<br><br>FD 684001000110100000    PP 23 2001 |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 | 0 | | YES [X] NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0 BASIC | 9 NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| K FERS AND FICA | 06/26/00 | F FULL TIME | Biweekly Pay Period |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 2 | E  E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) | |
|---|---|---|
| 11-0010-001 | WASHINGTON    DIST OF COLUMBIA    DC | |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

POSITION FILLED UNDER VA# 2001-OIG-1559, DATED 10/11/01, BELOW
FULL PERFORMANCE LEVEL. PROMOTION THROUGH CG-11 MAY BE MADE WITHOUT
FURTHER COMPETITION PROVIDED ADMINISTRATIVE, QUALIFICATION, AND TIME-IN-
GRADE REQUIREMENTS ARE MET; THE ABILITY TO WORK AT THE HIGHER LEVEL HAS
BEEN DEMONSTRATED, THERE IS HIGHER LEVEL WORK PERFORMED AND UPON
ADMISSION TO THE BAR.
TERM APPOINTMENT NTE 11/05/02, WHICH MAY BE EXTENDED TO A MAXIMUM
OF FOUR YEARS BASED ON WORKLOAD REQUIREMENTS AND STAFFING
AUTHORIZATIONS.
APPOINTMENT AFFIDAVIT EXECUTED 11/05/01.
CREDITABLE MILITARY SERVICE: NONE.
PREVIOUS RETIREMENT COVERAGE: NEVER COVERED.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | TRINA F PETTY |
| FD 68 | 1644 | 11/07/01 | DEPUTY ASSISTANT IG, HUMAN RESOURCES |

3-Part  50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

FD 684001000110100000    PP 23 0*2001*BATCH 16446721 000-00 199-76 AG/EO 68-1644

**Exhibit 8b**

SF 50, November 3, 2002
Extension of the Not-to-Exceed Date of Ms. Vosburg's Appointment

U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOTIFICATION OF PERSONNEL ACTION**

Approved Exception to the SF July

| 1. Name (Last, First, Middle) | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|
| VOSBURG, ADRIANA R | | | | 02/11/75 | 11/03/02 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action | **SECOND ACTION** | |
|---|---|---|---|
| 571 | CONV TO EXC APPT NTE 11/03/05 | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code | 5-D. Legal Authority | | |
| Y5K | SCH B213.3202(A)GRAD | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | General Attorney 00015923   401096 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 00 | | | | CG | 0905 | 11 | 00 | 59,079.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | 52,204.00 | 6,875.00 | 59,079.00 | .01 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION OFFICE OF INSPECTOR GENERAL OFF OF THE INSP GEN COUNSEL TO THE INSP GEN  FD 684001000110100000   PP 23 2002 |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 | 1 - None  3 - 10 Point/Disability  5 - 10 Point/Other | 0 | 0 - None  2 - Conditional | | YES [X] NO |
| | 2 - 5 Point  4 - 10 Point/Compensable  6 - 10 Point/Compensable/30% | | 1 - Permanent  3 - Indefinite | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0   BASIC | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K   FERS AND FICA | 06/26/00 | F   FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | |
|---|---|---|---|
| 2 | 1 - Competitive Service  3 - SES General | E | E - Exempt  N - Nonexempt | | |
| | 2 - Excepted Service  4 - SES Career Reserved | | | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) | 37. Bargaining Unit Status |
|---|---|---|
| 11-0010-001 | WASHINGTON   DIST OF COLUMBIA   DC | 8888 |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

REASON FOR TEMPORARY APPOINTMENT: APPOINTMENT EXTENDED DUE TO WORKLOAD REQUIREMENTS.
EXT OF TERM APPOINTMENT NTE: 11/03/2005.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | TRINA F PETTY DEPUTY ASSISTANT IG, HUMAN RESOURCES |
| FD 68 | 1644 | 11/03/02 | |

3-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

FD 684001000110100000    2 - OFF Copy - Long-Term Record - DO NOT DESTROY
PP 23 2*2002*BATCH 16445584 000-00 497-26 AG/ED 68-1644

2

**Exhibit 8c**

SF 50, February 23, 2003
Promotion of Ms. Vosburg from Grade 11 to Grade 12 Attorney

Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33. Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

Approved Exception to the SF
July 1

| 1. Name (Last, First, Middle) | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|
| VOSBURG, ADRIANA R | | | | 02/11/75 | 02/23/03 |

**FIRST ACTION** | **SECOND ACTION**

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 702 | PROMOTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| N7M | REG 335.102 RECLASS | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| General Attorney 00015923  40I096 | Attorney Advisor (General) 00015923  40I120 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 11 | 00 | 61,679.00 | PA | CG | 0905 | 12 | 00 | 67,847.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 54,501.00 | 7,178.00 | 61,679.00 | .00 | 59,951.00 | 7,896.00 | 67,847.00 | .00 |

14. Name and Location of Position's Organization

| 22. Name and Location of Position's Organization |
|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION OFFICE OF INSPECTOR GENERAL OFF OF THE INSP GEN COUNSEL TO THE INSP GEN<br><br>FD 684001000110100000    PP 04 2003 |

**EMPLOYEE DATA**

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1 | 1 - None  2 - 5 Point  3 - 10 Point/Disability  4 - 10 Point/Compensable  5 - 10 Point/Other  6 - 10 Point/Compensable/30% | 0 | | YES [ ] NO [X] |

| 27. FEGLI | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|
| CO  BASIC | 9 | NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS AND FICA | 06/26/00 | F  FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 2 | 1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career Reserved | E  E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON   DIST OF COLUMBIA   DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

CONGRATULATIONS ON YOUR PROMOTION
RESULT OF ADDITIONAL DUTIES AND RESPONSIBILITIES.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | TRINA M PETTY DEPUTY ASSISTANT IN HUMAN RESOURCES |
| FD 68 | 1644 | 02/25/03 | |

3-Part  50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

3

**Exhibit 8d**

SF 50, July 25, 2004
Conversion to an Excepted Appointment

REV. GPDS
U.S. Office of Personnel Management
FPM Supp. 296-33. Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

Approved Exception to the
Ju

| 1. Name (*Last, First, Middle*) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| VOSBURG, ADRIANA R | | | 02/11/75 | 07/25/04 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 570 | CONV TO EXC APPT |
| 5-C. Code | 5-D. Legal Authority |
| WDM | SCH A 213.3102D |
| 5-E. Code | 5-F. Legal Authority |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| 6-C. Code | 6-D. Legal Authority |
| 6-E. Code | 6-F. Legal Authority |

7. FROM: Position Title and Number

15. TO: Position Title and Number

Attorney Advisor (General)
00015923        40I120

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | | 16. Pay Basis |
|---|---|---|---|---|---|---|
| | | 00 | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

14. Name and Location of Position's Organization

| 17. Pay Plan | 18. Occ Code | 19. Grade/Level | 20. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| CG | 0905 | 12 | 00 | 72,117.00 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| 63,668.00 | 8,449.00 | 72,117.00 | .00 |

22. Name and Location of Position's Organization

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF INSPECTOR GENERAL
OFF OF THE INSP GEN
COUNSEL TO THE INSP GEN

FD 684001000110100000        PP 17 2004

**EMPLOYEE DATA**

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 - None  2 - 5 Point  3 - 10 Point/Disability  4 - 10 Point/Compensable  5 - 10 Point/Other  6 - 10 Point/Compensable/30% | 1 | 0 - None  1 - Permanent  2 - Conditional  3 - Indefinite | | YES [X] NO |

| 27. FEGLI | | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|---|
| C0 | BASIC | 9    NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K    FERS AND FICA | 06/26/00 | F    FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 2 | 1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career Reserved | E    E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) | | |
|---|---|---|---|
| 11-0010-001 | WASHINGTON        DIST OF COLUMBIA        DC | | |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

| 5. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | |
| Agency Code | 48. Personnel Office ID | 49. Approval Date | |
| FD 68 | 1644 | 07/25/04 | TRINA Y. PETTY, DEPUTY ASSISTANT DIRECTOR, HUMAN RESOURCES |

Part  50-316

FD 684001000110100000        PP 17 1*2004*BATCH 16446722 000-00

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6882

5

**Exhibit 8e**

Sf 50, November 28, 2004
Promotion of Ms. Vosburg to Grade 13 Attorney

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33. Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

Approved Exception to the SF 50-B
July 1999

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| VOSBURG, ADRIANA R | | 02/11/75 | 11/28/04 |

### FIRST ACTION

### SECOND ACTION

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 570 | CONV TO EXC APPT | | |

| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
|---|---|---|---|
| WDM | SCH A 213.3102D | | |

| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
|---|---|---|---|
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| Attorney Advisor (General)<br>00015923  40I120 | General Attorney<br>00017413  40I156 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 12 | 00 | 72,117.00 | PA | CG | 0905 | 13 | 00 | 79,329.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 63,668.00 | 8,449.00 | 72,117.00 | .00 | 70,035.00 | 9,294.00 | 79,329.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION<br>OFFICE OF INSPECTOR GENERAL<br>OFF OF THE INSP GEN<br>COUNSEL TO THE INSP GEN<br><br>FD 684001000110100000   PP 24 2004 |

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1  1 - None  2 - 5 Point  3 - 10 Point/Disability  4 - 10 Point/Compensable  5 - 10 Point/Other  6 - 10 Point/Compensable/30% | 1  0 - None  1 - Permanent  2 - Conditional  3 - Indefinite | | YES [ ]  NO [X] |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| CO : BASIC | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K   FERS AND FICA | 06/26/00 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 2  1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career Reserved | E  E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON   DIST OF COLUMBIA   DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

CONGRATULATIONS ON YOUR PROMOTION
POSITION FILLED UNDER VA# 2004-OIG-2694 , DATED 11-15-04, BELOW
FULL PERFORMANCE LEVEL.  PROMOTION THROUGH CG-15  MAY BE MADE WITHOUT
FURTHER COMPETITION PROVIDED ADMINISTRATIVE, QUALIFICATION, AND TIME-IN-
GRADE REQUIRMENTS ARE MET; THE ABILITY TO WORK AT THE HIGHER LEVEL HAS
BEEN DEMONSTRATED, AND THERE IS HIGHER LEVEL WORK PERFORMED.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | TRINA X PETTY<br>DEPUTY ASSISTANT IN HUMAN RESOURCES |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| FD 6B | 1644 | 11/28/04 | |

3-Part  50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

FD 684001000110100000   PP 24 1*2004*BATCH 16446787 000-00 466-04 AG/EO 68-1644

6

**Exhibit 9**

Position Description for GS-13 Attorney

Federal Deposit Insurance Corporation

# POSITION DESCRIPTION

| FOR OFFICIAL USE ONLY | 1. Check one:<br>HQ ☒  Field ☐ | 2. Official Headquarters<br>Washington, DC | 3. Master Record Number<br>40I156 |
|---|---|---|---|

**4. Reason for submission**
(a) If this position replaces another (i.e., a change of duties in an existing position), identify such position by title, allocation (service, series, grade), and master record number.

(b) Other *(specify)*

### 5. CLASSIFICATION ACTION

| ALLOCATION | CLASS, TITLE OF POSITION | Pay Plan | Series | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| (a) FDIC | General Attorney | CG | 905 | 13 | | |
| (b) Recommended by initiating office | | | | | | 11/22/04 |

**6. Organizational title of position** *(if any)*
Attorney Advisor

**7. Name of Employee** *(if vacancy, specify)*

**8. Organizational Location**
Federal Deposit Insurance Corporation

**(a) First Subdivision**
Office of Inspector General

**(b) Second Subdivision**
Office of Counsel to the Inspector General

(c) Third Subdivision

(d) Fourth Subdivision

(e) Fifth Subdivision

**9. This is a complete and accurate description of the duties and responsibilities of my position**

Signature of Employee | Date

**10. Certification**

I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of Corporation funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| 11. Immediate Supervisor's Signature | Title Counsel to the Inspector General | Date 11/1/04 |
|---|---|---|
| 12. Division/Office Director's Signature *(or designee)* | Title Deputy Inspector General | Date 11-2-04 |
| 13. Classifier's Signature | Title Director of Human Resources | Date 11/22/04 |

**14. Remarks**

Full Performance Level = CG-905-15

This position is appropriately classified as a General Attorney based on the General Attorney Series, GS-0905 dtd Oct 1959, TS-24 Aug 1960.

**NOTE: ATTACH A DESCRIPTION OF MAJOR DUTIES AND RESPONSIBILITIES**

FDIC 2000/10 (5-03)

ARV 5/9/0

# FEDERAL DEPOSIT INSURANCE CORPORATION
## OFFICE OF INSPECTOR GENERAL
### POSITION DESCRIPTION

**CLASSIFICATION TITLE:**     General Attorney
                              CG-905-13

**ORGANIZATIONAL TITLE:**     Attorney Advisor

**LOCATION:**                 Office of Inspector General
                              Office of Counsel to the Inspector General

## INTRODUCTION

This position is located in the Office of Inspector General (OIG), Office of Counsel to the Inspector General. The OIG serves as a driving force in the reduction of financial risk to our nation through assisting in the successful accomplishment of the FDIC mission. The OIG conducts audits and investigations related to the programs and operations of the Federal Deposit Insurance Corporation (FDIC); prevents and detects fraud, waste, and abuse related to those programs and operations; makes recommendations concerning legislative and policy initiatives related to the FDIC; and keeps the Congress and the Chairman fully and promptly informed on problems and deficiencies in the programs and operations of the FDIC. The OIG conducts this work with the highest degree of independence, in accordance with the Inspector General Act of 1978, as amended.

The Office of Counsel to the Inspector General provides independent legal services for the OIG. Key activities include conducting legal research and writing opinions; providing supportive advice and counsel on audit, investigative, and management-related topics; preparing subpoenas; reviewing proposed legislation and regulations affecting the FDIC; conducting litigation; and processing requests and related appeals under the Freedom of Information and Privacy Acts. The incumbent serves as an Attorney Advisor and is responsible for providing independent legal services to the Inspector General, and to the managers and staff of the OIG.

## DUTIES AND RESPONSIBILITIES

The incumbent performs a combination of/or work comparable to the following technical activities:

Provides legal advice and opinions to the Counsel of the Inspector General on a wide range of legal issues including highly sensitive and controversial legal problems which affect the major, critical programs and operations of the FDIC.

Prepares legal opinions and interprets the Inspector General Act of 1978, the Freedom of Information Act, the Privacy Act, the Right to Financial Privacy Act of 1978, the Federal Deposit Insurance Act, and the statutes and regulations affecting the work of the Office of the Inspector General and the FDIC.

2

Reviews and analyzes proposed legislation, regulations, and other legal documents for their impact on the Office of Inspector General and on the programs and operations of FDIC.

Prepares memoranda, reports, legal documents, correspondence, and assists the Counsel to the Inspector General in preparing briefs, responses to motions, and other pleadings.

Assists the Counsel to the Inspector General or senior level office attorneys in reviewing audit and investigative reports for legal sufficiency.

Participates with the Counsel to the Inspector General in providing legal opinions, advice, support, etc., to OIG officials in support of the Inspector General's duties and responsibilities as legislated in the Inspector General Act of 1978.

Works with and assists the Counsel to the Inspector General in providing counsel and specialized training to Office of Inspector General staff in the legal aspects relating to their official responsibilities.

Represents the Office of Inspector General in administrative proceedings or courts of law.

Supports equal employment opportunity by promoting a work environment free of discrimination that utilizes a diverse workforce and shows respect and concern for others.

Performs such additional and related assignments as the needs of the office dictate.

All of these duties and responsibilities should be performed and will be evaluated in accordance with the following:

**Achieves Results**

Assumes responsibility and accountability for achieving results in support of the FDIC and OIG mission and goals.

Ensures that own work is accurate, thorough, and meets applicable standards, policies, and guidelines. Produces information, products, and services that are timely, objective, fact-based, and that meet the current needs of customers and stakeholders while adhering to OIG's mission and values. Effectively adjusts plans, goals, actions, and/or priorities to deal with changing situations and ensures timely completion of work responsibilities, anticipating and overcoming obstacles when necessary.

**Communicates Effectively**

Effectively communicates orally and in writing to promote mutual understanding, effective decision-making, and information gathering.

Actively listens and appropriately responds to the questions, ideas, and concerns of others. Conveys written and oral information in a clear, concise, well-organized, and timely manner. Reports relevant information to management and clients in an accurate and timely manner, so that others have information they need to accomplish their work.

3

**Demonstrates Teamwork**

Builds and maintains inclusive, responsive, and constructive working relationships based on mutual respect and a shared commitment to the OIG's mission, values, and goals.

Works cooperatively and professionally with others, demonstrating a positive attitude that serves to enhance the work environment. Anticipates and resolves conflicts in a positive and constructive manner. Develops and maintains effective working relationships with internal and external customers and other stakeholders. Contributes to institutional knowledge by sharing information and expertise with others.

**Exhibits Technical Competence**

Demonstrates the technical knowledge, skills, and abilities necessary to effectively carry out the duties and responsibilities of the Attorney Advisor position.

Meets all applicable professional, educational, and licensing requirements. Demonstrates up to date knowledge of the Corporation, and the OIG, including their respective missions, strategic goals, and objectives; trends in the law; and changes in relevant laws, regulations, standards, policies and procedures; and other factors that have an impact upon technical expertise. Collects information or data that is sufficient to address an issue, problem, or recommendation. Analyzes and integrates information to identify and evaluate alternative solutions to problems and issues. Makes well-supported and timely decisions, conclusions, or recommendations, balancing costs, risks, and benefits. Demonstrates effective use of available technology to ensure that work processes are efficient. Takes initiative to identify and understand emerging issues relevant to assignments.

**Demonstrates Responsibility and Self-Development**

Takes personal initiative to improve individual and organizational performance and promote the OIG's values and goals, while exemplifying high standards of professional and ethical behavior and integrity.

Strives to improve individual and organizational performance. Demonstrates initiative and a willingness to take on new work responsibilities. Sets challenging goals for own professional development that support the overall mission and values of OIG. Demonstrates a commitment to continuous learning and development and acquires new knowledge, skills, and expertise in response to the changing needs of the organization. Represents the OIG in a professional manner.

## FACTOR 1:  KNOWLEDGE REQUIRED BY THE POSITION

In performing the duties and responsibilities of this position, the incumbent is required to have:

Knowledge of concepts, principles, and practices of the legal profession, such as would be gained through extended graduate study in an accredited law school (JD or LLB), have passed the bar examination, and skill in applying this knowledge to difficult and complex work assignments.

*4*

3

Thorough knowledge of a wide range of substantive areas of law, rules and regulations, and administrative law and procedures such as: Federal and State bank regulation; Federal securities law; Federal criminal law pertaining to "white collar crimes;" Federal civil and criminal procedure and rules of evidence; FOIA and laws governing the area of "privacy;" Constitutional Law (particularly Fourth, Fifth, and Sixth Amendment issues); and the Inspector General Act of 1978, as amended.

Ability to perform legal and/or factual research utilizing specialized computer databases, general computerized databases, law libraries or other sources of information.

Ability to prepare and present statements of fact, law, and arguments, clearly and logically in writing and orally.

Knowledge of principles of legal research, effective legal writing and advocacy.

Ability to recognize legal issues, to weigh and evaluate factual information, and to utilize both facts and law in developing arguments and alternatives.

Ability to assist in the management and litigation of civil and administrative cases, including cases arising under Federal personnel and Equal Employment Opportunity laws, rules, and regulations.

Ability to deal effectively with Corporate officials, outside counsel, Department of Justice officials, and others as a representative of the OIG and the FDIC. Ability to work calmly and effectively in sensitive, stress-producing situations

A general understanding of the mission of the FDIC, and a detailed understanding of the mission of the OIG, including their respective strategic goals and objectives, and changes in relevant laws, regulations, standards, and policies and procedures.

## FACTOR 2: SUPERVISORY CONTROLS

Under the direction of the Counsel to the Inspector General, the incumbent is responsible for providing legal advice and assistance on audits, evaluations, and investigative cases involving complex situations. The incumbent, based on past work assignments, develops the deadlines, projects, and work to be done. The incumbent, having developed expertise in the line of work, is responsible for planning and carrying out assignments, resolving conflicts that arise, coordinating the work with others as necessary, and interpreting policy on own initiative in terms of established objectives. In some assignments, the incumbent also determines the approach to be taken and the methodology to be used. Work is produced independently, with minimal or no supervision, and is relied upon without additional work by the Office of Counsel or its clients. The incumbent keeps the supervisor informed of progress and potentially controversial matters. Completed work is accepted as technically correct and is reviewed only from an overall standpoint in terms of feasibility, compatibility with other work, or effectiveness in meeting requirements or expected results.

## FACTOR 3: GUIDELINES

Guidelines include: State and Federal laws, rules, and regulations; investigative standards as issued by the President's Council on Integrity and Efficiency; controlling precedent and relevant case law; generally accepted auditing standards; governmental investigative and auditing and

5

accounting guidelines. Guidelines are stated in general terms. The exercise of considerable judgment is required in the application of these extensive legal guidelines.

## FACTOR 4:  COMPLEXITY

The works is national in scope and encompass a broad range of Corporate and law enforcement activities. The work includes a number of different functions such as drafting, negotiating, research, analysis, and opinion writing and, requires considerable judgment, and unusual degree of accuracy and close attention to detail. In addition, the work will normally involve several multi-task phases designed to review, analyze and evaluate the activities. All of these activities are conducted in an environment of continuing changes in management, programs, and technical developments. The work requires an ability to communicate and work closely with staff attorneys, other OIG and Corporation employees, Corporation management and persons possibly outside the Corporation.

## FACTOR 5:  SCOPE AND EFFECT

The work involves researching and analyzing a variety of unusual legal questions. In representing the OIG, the legal interpretations and applications significantly affect overall characteristics and direction of various OIG and Corporation policies, procedures, and operational activities which are basic to the missions.

## FACTOR 6:  PERSONAL CONTACTS

The incumbent has frequent contact with Corporation officials, senior management, and employees in various divisions and offices. Contact with officials of other Federal agencies, financial institutions, and other commercial and industrial organization is also required.

## FACTOR 7:  PURPOSE OF CONTACTS

Personal contacts are for the purpose of giving and receiving information, discussing problems of mutual concern, negotiations, and rendering advice and opinions on legal questions. The incumbent is expected to have personal contact with those in higher grades/positions, and to give advice when asked. This function often requires the incumbent to persuade others to allow a course of actions which they would normally oppose. Changes in Corporation structure, laws and regulations must be understood in line with the changing investigations, evaluations, and audit environments.

## FACTOR 8:  PHYSICAL REQUIREMENTS

There are no special or unusual physical demands required to perform the work of this position. The work is sedentary in nature.

## FACTOR 9:  WORK ENVIRONMENT

Work is performed in an office setting. The incumbent of this position must be willing to travel according to the needs of the office. It is expected that the travel requirements for this position will be moderate.

5

**Exhibit 10**

Affidavit of Patricia Black
Deputy Inspector General
Office of Inspector General
May 19, 2005

<u>A F F I D A V I T</u>

District of Columbia                              }

I, Patricia M. Black, hereby affirm under the penalty of perjury and make this statement.

My name is Patricia M. Black; I am a Caucasian, and am employed as the Deputy Inspector General (IG) and am temporarily Acting IG of the Federal Deposit Insurance Corporation (FDIC), because the IG position is presently vacant. I became the Deputy IG on April 8, 2002, and Acting IG January 3, 2005. I began working for the Resolution Trust Corporation (RTC) in October 1989, and with the FDIC Office of Inspector General (OIG) when the RTC merged with FDIC, in January 1996.

As the Acting IG, my general supervisor is the Vice Chairman of the FDIC, John Rich, and I do not believe there is a second level supervisor, because the Chairman of the FDIC has delegated general supervision authority to Mr. Rich.

I first met the Complainant in early 1998, when I was Counsel to the IG, when she was interviewed for the position of Paralegal Specialist a few weeks before she came to work in my office in March 1998. From March 1998 through April 2002, I was the Complainant's second level supervisor and my deputy, initially Larry Froehlich and then Fred Gibson, was her first level supervisor. When I became the Deputy IG, I was still the Complainant's second level supervisor, because, when Mr. Gibson became Counsel to

Page 1 of 4                                        Affiant's Initials _____

the IG, he reported to me. I am aware that the Complainant is dark skinned and appears to be Black, but do not know how she self-identifies her race.

I was the individual who directed the Complainant's reassignment from the Paralegal Specialist to the Human Resources Specialist (Benefits) position. I had discussions with Mr. Gibson, Trina Petty, Director of the FDIC, OIG Human Resources Branch (HRB), Rex Simmons, Ms. Petty's supervisor, and Gaston Gianni, then the IG and my supervisor at that time. I also spoke to the Complainant.

A lack of paralegal work for the Complainant had developed over time. When the Complainant was hired as a Paralegal Specialist in 1998, the OIG was an organization with over 240 authorized positions, of which about 230 were actually encumbered. We were still cleaning up after the banking crisis, and there was a substantial amount of paralegal work. However, by the time I directed the Complainant's reassignment, that had changed. For example, the Freedom of Information Act (FOIA) backlog she helped handle was gone, and FOIA requests were down. We were an office of about 160 employees, and still declining. Discovery requests had also been declining. There was not enough paralegal work to keep the Complainant busy full time. I spoke to Mr. Gibson and Ms. Petty, and they agreed the Complainant was a good candidate to do the work in the HRB, where her skills could be used.

As the FDIC continues to downsize, so does the OIG. Therefore, sometime prior to making the decision to reassign the Complainant, I asked all of my office heads in the OIG to look at their offices to determine what surpluses or vacancies might exist. The FDIC had an ongoing buyout program, and we were looking at whether we had surplus

Affiant's Initials _MB_

positions to determine whether to participate in the buyout. The Complaint's position was identified as surplus.

I was not aware the Complainant said she was not qualified for the position of Human Resources Specialist (Benefits). However, as I stated in my letter to the Complainant regarding the directed reassignment: "Although you are not presently trained to fully handle the duties of the Human Resources Specialist position, through classroom and on-the-job training I am confident that you can obtain the skills to fully perform those duties within a reasonable amount of time." We in fact identified training to assist the Complainant in performing the work.

I was not aware the Complainant stated there was another position available in the HRB that more closely met her skill set, but I am familiar with all vacancies that existed in the OIG at that time. There was a position that was announced shortly before or after this time frame that was advertised, but it was a CG-14. A CG-11, which is the Complainant's grade level, cannot be directed into a CG-14 position. Had the Complainant believed she was qualified for that position, she could have competed for it. However, the position announcement was later cancelled because the incumbent employee, who had notified us that she was leaving the OIG HRB, did not actually leave. At no time was the Complainant's race a factor in the decision to give her a directed reassignment.

I have no further information to add.

**I have read the forgoing statement consisting of** 4 **page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.**

Affiant's Initials _____

_____
Patricia M. Black

Subscribed and sworn before me at Washington, D.C.

on this 19th day of May, 2005

_____
Craig A. Brieske, Investigator
US Investigations Services

Affiant's Initials



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500          Office of Diversity and Economic Opportunity

<div align="center">

NOTICE OF RIGHTS OF WITNESSES
IN
EEO INVESTIGATIONS

</div>

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____     DATE: 5-12-05

## PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____      _____
Signature of Interviewer             Signature of Witness (person providing statement)

Date: 5-17-05

Place: Washington DC

**Exhibit 11**

Letter from Deputy Inspector General Patricia Black to Plaintiff
Subject: Reassignment of Plaintiff to Grade 11 Human Resources
Specialist Position, September 23, 2004

**Federal Deposit Insurance Corporation**
801 17th Street NW, Washington, DC 20429-9990

Office of Inspector General

Date  9/23/04

Ms. Stacey Sharpe
11820 Capstan Drive
Upper Marlboro, MD 20772

Dear Ms. Sharpe,

When you were hired several years ago as a Paralegal Specialist in the Office of Inspector General (OIG), the organization was much larger and the need for that position was greater than it is today. At that time, there was a large volume of FOIA requests and discovery work related to our audits and investigations. Through no fault of your own, the work that you were hired to do has decreased to the point where it is substantially less than a full time position. With continuing pressures on our office to downsize, there is no expectation that this work will increase in the foreseeable future, and the paralegal position will therefore be eliminated. However, we value you as an employee and believe that there is another way for you to remain with this office in the same grade, although in a different type of job, if you chose to do so.

In order to do that, I am reassigning you from your current position of Paralegal Specialist, CG-950-11 in the Office of the Counsel to the Inspector General (Washington, DC) to the position of Human Resources Specialist, CG-201-11 in the Office of Management and Congressional Relations, Human Resources Branch (Washington, DC). This reassignment is necessary because of the shortage of paralegal work noted above and the need to fill a vacancy in our Human Resources Branch. Although you are presently not trained to fully handle the duties of the Human Resources Specialist position, through classroom and on-the-job training I am confident that you can obtain the skills necessary to fully perform those duties within a reasonable amount of time. I believe the OIG can more effectively utilize your skills in this position to meet mission critical work goals. Your reassignment will be effective October 17, 2004; accordingly, you are to report to Trina Petty, Director of Human Resources on Monday, October 18, 2004.

As part of this action, I am required by law to notify you that if you decline this directed reassignment, or if you accept the offer and subsequently fail to report, we will propose your separation under 5 CFR 752 for failure to accept a directed reassignment.

Enclosed for your response is a form to notify us of your decision regarding this directed reassignment. Please complete and sign the notification and return it to Ms. Petty, no later than fifteen (15) calendar days from the date of this letter. Failure to respond within the fifteen (15) days will be considered a declination.

E-50

Please let me know if you have any additional questions concerning this reassignment. In addition, if you need additional information regarding your rights or need other information on which to base your decision, please contact Trina Petty or Jan Welch in the OIG Human Resources Branch. I hope you will choose to accept this reassignment and will find your new assignment challenging and rewarding.

Sincerely,

Patricia M. Black
Deputy Inspector General

Enclosure

E-51

Stacey Sharpe
Paralegal Specialist, CG-950-11


Subject: Directed Reassignment

Please indicate your decision with respect to the position offered and return this form to Trina
Petty within fifteen (15) calendar days from the date of the directed reassignment letter.


(CHECK ONE)

____✓ I accept the reassignment from Paralegal Specialist, CG-950-11 in the Office of the
Counsel to the Inspector General (Washington, DC) to the position of Human Resources
Specialist, CG-201-11 in the Office of Management and Congressional Relations, Human
Resources Branch (Washington, DC).


_____ I decline the directed reassignment to the position of Human Resources Specialist,
CG-201-11 in the Office of Management and Congressional Relations, Human Resources
Branch (Washington, DC). I understand that my declination will serve as grounds for my
removal from the Federal Service.


_____ I elect to resign in lieu of the proposed reassignment. I agree to contact Trina Petty or
Jan Welch in the Human Resources Branch by _____ to seek counseling
concerning my resignation.


_____
Signature

_____
Date

E-52

**Exhibit 12a**

Extract, Office of Inspector, General Semi-Annual Report to Congress
April 1998 - March 1999

# Semiannual Report to the Congress

## ig

April 1
1998
through
September 30
1998

FDIC Office of Inspector General



internal coordination and external oversight of internal control activities under the Chief Financial Officers Act and the Federal Managers Financial Integrity Act, as well as coordinating the OIG's strategic planning process under the Government Performance and Results Act.

## OIG Success Through Partnership

As we celebrate the twentieth anniversary of the Inspector General Act, the OIG fully recognizes the need for building strong partnerships with other agencies' Offices of Inspector General, law enforcement agencies, and FDIC management, as well as between organizational components within the OIG. These partnerships are reflected in the OIG's mission and vision statements and in its planning for key activities and operational processes. The OIG believes this spirit of partnership is necessary to be a strong and effective force in the development of program and operational policies and procedures that help to protect the FDIC and the rest of the government from fraud, waste, and mismanagement and to create an efficient and effective organization.





April 1998 – September 1998

### Table 1
### Significant OIG Achievements

| | |
|---|---|
| Audit Reports Issued | 47 |
| Questioned Costs and Funds Put to Better Use | 11 |
| Investigations Opened | 5 |
| OIG Subpoenas Issued | 60 |
| Complaints | 26 |
| Fines, Restitution, and Monetary Recoveries | $195 |
| Evaluations Initiated | 5 |
| Evaluation Reports Issued | 5 |
| Judicial Actions Referred | |
| Allegations Substantiated | $42 |
| Allegations Closed | 102 |
| Proposed Regulations Reviewed | 35 |
| Proposed FDIC Policies Reviewed | 8 |
| Responses to FOIA Requests and Appeals Under the Freedom of Information and Privacy Acts | 28 |

The OIG relies on its strategic planning process to ensure that OIG activities are performed consistent with its values of independence, objectivity, integrity, quality, continuous improvement, respect, accountability, and communication. To maximize the value added to the Corporation from our core audit and investigative activities and to demonstrate our shared commitment to improving program and operational effectiveness, we partner our efforts

2



FDIC Office of Inspector General
**Semiannual Report
to the Congress**
October 1 1998 thru March 31 1999

strategic areas that closely parallel corporate operations:

- Supervision and Consumer Affairs;

- Asset Management and Liquidation;

- Award, Administration, and Oversight of Contracts and Agreements;

- Financial Accountability and Internal Controls;

- Financial and Management Information Systems;

- Deposit Insurance; and

- Corporate Activities and Administration.

In addition, OIG investigations have sought to uncover and investigate criminal conduct that could harm or threaten the operations and integrity of the FDIC and its programs.





Table 1
Significant OIG Achievements

The OIG has adopted a spirit of partnership in conducting its work. In this spirit, the office has worked diligently to build strong alliances with the FDIC's divisions and offices and the FDIC Audit Committee. In partnering with the FDIC to address current challenges, the OIG attempts to assist management in resolving issues and identify corporate vulnera-bilities that the OIG must address

4

# Exhibit 12b

Extract Office of Inspector General, Semi-Annual Report to Congress
April 1999 - March 2000

Preparing
for the 21st Century

FDIC OFFICE OF INSPECTOR GENERAL
Semiannual Report to the Congress
April 1, 1997 - September 30, 1997



5

39



The OIG reviewed the following regulations and legislation.

Part 327  Notice of Proposed Rule Making on Assessments

Part 308  Amendments — Rules of Practice and Procedure

Part 308  Subpart E — Program Fraud Civil Remedies Act Regulations

Part 340  Restrictions on the Purchase of Assets from the FDIC

Interim Final — McDade Amendment

Government Waste Corrections Act of 1999

Federal employee overtime provisions

The Right to Financial Privacy Act Amendments

Relating to concealed weapons

Financial Services Act of 1999

Dodd Amendment

Financial Institutions Insolvency Improvement Act

Draft proposed amendment to Paperwork Reduction Act

6

40

**Table 2**
**Significant OIG Achievement**

| | |
|---|---|
| $ millions | |
| Audit Reports Issued | 22 |
| Evaluation Reports Issued | 4 |
| Audit-Related Memorandums Issued | 10 |
| Evaluation-Related Memorandums Issued | 1 |
| Questioned Costs and Funds Put to Better Use from Audit and Evaluation Reports | $ 15.4 |
| Investigations Opened | 32 |
| Investigations Closed | 30 |
| OIG Subpoenas Issued | 14 |
| Convictions | 7 |
| Fines, Restitution and Monetary Recoveries | $ 12.6 |
| Hotline Allegations Referred | 22 |
| Allegations Substantiated | 3 |
| Allegations Closed | 21 |
| Proposed or Existing Regulations and Legislation Reviewed | 16 |
| Proposed FDIC Policies Reviewed | 123 |
| Responses to Requests & Appeals Under the Freedom of Information Act & Privacy Act | 21 |

These reported are related to investigations that began in the current fiscal year.

**Table 3**
**Nonmonetary Recommendations**

| | |
|---|---|
| April 1997 - September 1997 | 110 |
| October 1997 - March 1998 | 52 |
| April 1998 - September 1998 | 77 |
| October 1998 - March 1999 | 133 |
| April 1999 - September 1999 | 96 |

7



Federal Deposit Insurance Corporation
Office of Inspector General
**Semiannual**
**Report**
**to the Congress**
Including the
OIG's 1999
Performance Report
October 1, 1999 - March 31, 2000



**Table 1:**
Significant OIG Achievements
October 1999 – March 2000

| | |
|---|---|
| Audit Reports Issued | 19 |
| Audit-Related Memorandums Issued * | 11 |
| Evaluation Reports Issued | 4 |
| Evaluation-Related Correspondence Issued * | 4 |
| Questioned Costs and Funds Put to Better Use from Audit and Evaluation Reports | $3.5 million |
| Congressional Testimony Submitted for the Record | 2 |
| Investigations Opened | 37 |
| Investigations Closed | 32 |
| OIG Subpoenas Issued | 19 |
| Convictions | 9 |
| Fines, Restitution, and Monetary Recoveries | $16 million |
| Hotline Allegations Referred | 22 |
| Allegations Substantiated | 15 |
| Allegations Closed | 36 |
| Proposed or Existing Regulations and Legislation Reviewed | 9 |
| Proposed FDIC Policies Reviewed | 12 |
| Responses to Requests and Appeals Under the Freedom of Information Act and Privacy Act | 18 |

*These memorandums and other correspondence relate to OIG work that did not result in formally issued audit or evaluation reports.

**Table 1**

**Table 2:**
Nonmonetary Recommendations

| | |
|---|---|
| April 1997 – September 1997 | 110 |
| October 1997 – March 1998 | 52 |
| April 1998 – September 1998 | 77 |
| October 1998 – March 1999 | 133 |
| April 1999 – September 1999 | 66 |
| October 1999 – March 2000 | 68 |

**Table 2**

G

**Table 3:**
OIG Review of Proposed or Existing Legislation and Regulations
October 1, 1999 – March 31, 2000

OIG Counsel has monitored the progress of major banking legislation, specifically, the Gramm-Leach-Bliley Act, which was enacted November 12, 1999. This law has created the most sweeping changes in banking law since the 1930s. Specifically, the law allows affiliations between insured banks and any financial company, including securities and insurance firms, in new types of bank holding companies, known as "financial holding companies." In addition, the Act requires financial institutions to establish privacy policies to protect the confidentiality of customer information. Counsel's office convened a task group within the OIG to review the legislation and any regulatory initiatives associated with the Act. The Office of Counsel expects to review numerous regulatory changes as a result of this legislation.

OIG Counsel reviewed and commented on the following legislation and regulations:

**Legislation**

S. 1993 –  Government Information Security Act of 1999

H.R. 1827 – Government Waste Corrections Act of 1999

H.R. 436 –  Government Waste, Fraud, and Error Reduction Act of 1999

H.R. 3374 – Proposed; would strengthen the FDIC's ability to monitor and assess risk in financial institutions for which the FDIC is not the primary federal regulator.

Draft –  Common Passenger Carrier Use Efficiency Act of 2000

Draft –  Inspector General Law Enforcement Authorities

**Regulations**

Part 325 – Recourse and Direct Credit Substitutes

Part 332 – Privacy of Consumer Financial Information

**Note:**  OIG Counsel also reviewed a draft Statement of Policy on Applications for Deposit Insurance. The policy was later issued as a General Counsel's opinion.



Table 3



Figure 1: Products Issued and Investigations Closed

Legend
• Oct 97–Mar 98
• Apr 98–Sep 98
• Oct 98–Mar 99
• Apr 99–Sep 99*
• Oct 99–Mar 00*

* Includes audit- and evaluation-related correspondence.

Audits and Evaluations

Investigations

Figure 1

10

# Exhibit 12c

Extract from Office of Inspector General,
Semi-Annual Report to Congress
April 2000 - March 2001

Federal Deposit Insurance Corporation

# Office of
# Inspector General

## Semiannual
## Report
## to the
## Congress

//

Activity Reports and the Financial Crimes Enforcement Network, financial institution compliance with the Bank Secrecy Act, and the adequacy of Community Reinvestment Act performance evaluations. The OIGs may decide to conduct some of this work jointly to provide a more complete assessment of bank supervision activity among several agencies.

During this reporting period we also met with House Banking Committee staff to discuss Bank Secrecy Act and money laundering issues. The Committee was working to determine the need for possible changes to existing statutes or proposed legislation (H.R. 2896 and S.1663, Foreign Money Laundering Deterrence and Anticorruption Act).

We also presented sessions at GAO's annual Accounting and Auditing Update Conference regarding our multi-year FDIC financial statement audit project that began in 1996. The sessions described how the OIG and GAO formulated a strategic partnership to conduct the annual financial statement audits for their common client, the FDIC. This ongoing collective effort, whose success is derived from a strong cooperative working relationship, was presented as an example of a best practice. The OIG looks forward to repeating similar successes with the Corporation and others in the federal government.

## OIG Internal Activities

- Developed a new strategic audit and evaluation approach that provides a basis for future audit plans, workforce plans, staff rotations, and core staffing submissions.

- Issued the OIG's Annual Performance Plan for 2001, which contains 31 specific goals that directly link to the OIG's 4 strategic goals and related objectives. The goals focus on our core audit, evaluation, and

investigative activities; professional advisory services; and external communications with the Chairman, the Congress, and other stakeholders.

- Issued the OIG Internal Resource Management Performance Plan for 2001, which contains 16 specific goals related to the management of OIG resources in the areas of staffing, professional standards and internal controls, information technology, communications, legal advice, and administrative services.

- Issued the OIG's mid-year 2000 Performance Report for use as an interim assessment of progress towards our annual goals.

- Continued participation in interagency Government Performance and Results Act (Results Act) Interest Groups sponsored by the President's Council on Integrity and Efficiency (PCIE) and the U.S. Office of Personnel Management to share ideas and best practices on Results Act implementation.

- Attended Inspectors General Conference on Implementation of the Results Act regarding the appropriate role of the Inspectors General in the implementation of the Results Act.

- Initiated an internal quality assurance review of the Office of Management and Policy.

- OIG Counsel's office provided advice and counseling, including written opinions, on a number of issues, including computer security and intrusions into government computer systems; payroll and overtime matters; travel regulations; disclosure of information; union-related matters; contracting issues; employee and FDIC Web page privacy issues; and various ethics-related matters.

- Office of Management and Policy issued the final report on its 2000

*Customer Satisfaction Survey.*

- Initiated an external peer review of the Department of Justice OIG Office of Audit.

- Participated in the FDIC's Organizational Assessment Survey for the OIG as part of the corporate-wide survey.

- Formed an OIG Employee Advisory Group to communicate issues of concern to the Inspector General.

- Completed OIG Counsel's new work flow software program to provide its users with an integrated approach to scheduling and managing activities.

- Redesigned the OIG's Intranet site, OIGNet, to create a more visitor-friendly environment.

- Selected a group of employees to participate in leadership training sponsored by such organizations as the John F. Kennedy School of Government, the Aspen Institute, the Brookings Institution, and the Center for Creative Leadership.

- Briefed the corporate Operating Committee on results of OIG 2000 Client Survey.

- Honored OIG staff with service awards.

- Hosted 12 college interns from 7 universities. Our program is designed so that these individuals, all with varied backgrounds, put their educational skills and talents to work to help us accomplish the OIG's mission. Interns were guided by mentors and assisted in the Office of Audits, Office of Management and Policy, and Office of Counsel.

- Hosted and shared audit information and practices with Russian visitor, Natalia Vasilieva, head of Internal Audit Services at the Agency for

## Significant OIG Achievements
### April 2000 – September 2000

| | |
|---|---|
| Audit Reports Issued | 31 |
| Other Audit-Related Products * | 14 |
| Evaluation Reports Issued | 2 |
| Other Evaluation-Related Products * | 6 |
| Questioned Costs and Funds Put to Better Use from Audit and Evaluation Reports | $11 million |
| Investigations Opened | 22 |
| Investigations Closed | 35 |
| OIG Subpoenas Issued | 18 |
| Convictions | 11 |
| Fines, Restitution, and Monetary Recoveries | $10.7 million |
| Hotline Allegations Referred | 15 |
| Allegations Substantiated | 6 |
| Allegations Closed | 23 |
| Proposed or Existing Regulations and Legislation Reviewed | 11 |
| Proposed FDIC Policies Reviewed | 36 |
| Responses to Requests and Appeals Under the Freedom of Information Act and Privacy Act | 18 |

*These products relate to OIG work that did not result in formally issued audit or evaluation reports.



## Nonmonetary Recommendations

| | |
|---|---|
| October 1997 – March 1998 | 52 |
| April 1998 – September 1998 | 77 |
| October 1998 – March 1999 | 133 |
| April 1999 – September 1999 | 66 |
| October 1999 – March 2000 | 68 |
| April 2000 – September 2000 | 74 |

## OIG Litigation

During the reporting period, Counsel's Office actively litigated or monitored the progress of 23 matters, including 2 matters that closed during the reporting period. The active matters included 4 personnel actions and 9 actions involving such subjects as the Right to Financial Privacy Act; the qui tam¹ (whistleblower) provisions of the False Claims Act; and the Bivens doctrine (i.e., alleged tortious conduct by government employees). The other matters are awaiting action by the FDIC or the counsel of other adjudicatory bodies.

¹ Qui tam provisions allow for a civil action brought by a private party under the False Claims Act that the government may elect to join as a complainant. If the government proves the case, the party initiating the suit may be entitled to share in any resulting monetary recoveries.

13

## OIG Review of Proposed or Existing Legislation and Regulations
### (April 1, 2000 – September 30, 2000)

OIG Counsel reviewed and commented upon the following legislation and regulations:

### Legislation

Chief among the legislation reviewed during the reporting period was S.870, the Inspector General Act Amendments of 2000. This bill would, among other things, require annual–rather than the current semiannual–reporting to the Congress, change the matters to be reported, and require external reviews of Inspector General contracting and hiring functions.

In addition to S.870, Counsel's office reviewed numerous other bills and prepared comments, sometimes in conjunction with other components of the OIG, on the following items:

H.R. 4670 and H.R. 5024 – Creating a Federal Chief Information Officer

S. 3030 – Recovery Audits

S. 1993 – Government Information Security Act of 2000

Draft Bill – Reports Consolidation Act of 2000

Comments on Electronic Government Issues

### Regulations

The OIG reviewed various regulatory proposals, both internal to the FDIC and those with external application. We commented on the draft versions of the regulations listed below that were issued either by the FDIC or by the FDIC jointly with other agencies. Two of the regulations implement the Gramm-Leach-Bliley Act of 1999, the major banking bill that allows for the restructuring of the financial services industries and addresses various privacy issues, among other things.

Also the FDIC issued draft regulations to implement the Program Fraud Civil Remedies Act (PFCRA). Counsel's office has provided the FDIC with comments on versions of the PFCRA regulations during this and prior reporting periods. (See box on next page.)

Part 343 – Consumer Protections for Deposit Institutions' Sales of Insurance

Final Consumer Privacy Rule

Fair Credit Reporting Act Regulations

Federal Deposit Insurance Corporation
Office of Inspector General

# Semiannual Report to the Congress

*Including the OIG's 2000 Performance Report*



**October 1, 2000 – March 31, 2001**

FDIC

## OIG Internal Activities

| Table 1: Significant OIG Achievements October 1, 2000 - March 31, 2001 | |
|---|---|
| Audit Reports Issued | 21 |
| Audit-Related Memorandums Issued * | 16 |
| Evaluation Reports Issued | 3 |
| Evaluation-Related Correspondence Issued * | 5 |
| Questioned Costs and Funds Put to Better Use from Audit and Evaluation Reports | $8 million |
| | |
| | |
| | |
| | |
| Hotline Allegations Referred | 11 |
| Allegations Substantiated | 22 |
| Allegations Closed | 6 |
| | |

\* These memorandums and other correspondence relate to OIG work that did not
  result in formally issued audit or evaluation reports.

| Table 2: Nonmonetary Recommendations | |
|---|---|
| October 1998 - March 1999 | 133 |
| April 1999 - September 1999 | 66 |
| October 1999 - March 2000 | 68 |
| April 2000 - September 2000 | 74 |
| October 2000 - March 2001 | 90 |

/7

**Table 3: OIG Review of Proposed or Existing Legislation and Regulations**
**October 1, 2000 - March 31, 2001**

OIG Counsel reviewed and commented upon the following legislation and regulations:

**Legislation/Regulations**

The Counsel's office carried out its responsibilities under the Inspector General Act to review proposed or existing legislation and regulations. Among the items we reviewed and provided comments on included draft Office of Management and Budget Guidance on implementing the Government Information Security Reform Act contained in the 2001 Defense Authorization Act (Public Law 106-398). In the preceding reporting period we had provided comments on what was then the proposed legislation.

During this reporting period, the FDIC issued final regulations implementing the Program Fraud Civil Remedies Act, an administrative system for assessing monetary penalties for liability resulting from fraud and false statements against the FDIC. We had worked closely with the Corporation's Legal Division to develop these regulations, which will now provide an additional tool for the Corporation to use in addressing issues of fraud.

We worked with other OIGs to coordinate comments on behalf of the Inspector General community and develop a consensus position on the sensitive area of Inspector General access to confidential Alternative Dispute Resolution (ADR) information. The government-wide ADR Council had issued a call for comments on its paper dealing with confidentiality of ADR information. The comments we submitted from the President's Council on Integrity and Efficiency and the Executive Council on Integrity and Efficiency attempted to balance the need for preserving the confidential nature of certain ADR materials against the Inspector Generals' statutory right of access to agency information necessary to perform the duties of the office. The ADR Council accepted some (although not all) of the recommendations from the Inspectors General.

Counsel's office reviewed various regulatory and other proposals, both internal to the FDIC and those with external application, and commented upon 12 CFR Part 325 – Adjustments to the Risk-Based Capital Ratio Calculations (Securities Borrowing Transactions).

Counsel's office also reviewed and provided comments on the proposed model Memorandum of Understanding between the FDIC and National Association of Insurance Commissioners, pursuant to the Gramm-Leach-Bliley Act. This agreement will address the sharing of confidential information between and among financial institutions, insurance commissioners, and financial regulators.

**Exhibit 12d**

Extract Office of Inspector General,
Semi-Annual Report to Congress
April 2001- March 2002



Office of Inspector General

# Semiannual Report to the Congress

April 1, 2001 – September 30, 2001

**FDIC**

*19*

- Seven OIG special agents responded to 13 requests from the Federal Bureau of Investigation (FBI) and the Department of Defense to work on the civilian recovery team at the crash site. The Pentagon ground crash site. Additionally, OIG agents have become issue experts with the FBI in New York.

- Reorganized the OIG's Office of Audits.

- Hired Russell Rau as Assistant Inspector General for Audits.

- Established OIG Office of Policy Analysis and Congressional Relations.

- Conducted training and launched OIG telework program, permitting OIG staff to work from remote locations with supervisory approval.

- Completed internal quality assurance reviews of Office of Audits and Office of Congressional Relations and Evaluations.

- External peer review begun of the OIG's Office of Audits by the OIG at the Agency for International Development.

- Initiated the process to update the OIG's strategic and annual performance plans.

- Deployed laptop/docking station computers to most OIG staff.

- Purchased software to automate auditor working papers to improve the quality and efficiency of OIG audits.

- Established the OIG's Electronic Crimes Team to provide technology assistance to investigations conducted by OIG special agents.

- Appointed an OIG Information Security Manager to manage the development and implementation of an OIG information security program.

- Began development of an OIG Human Capital Strategic Plan to align human resources policies and practices to support the OIG mission.

- The Inspector General and several staff attended the Association of Government Accountants' Annual Professional Development Conference and Exposition.

- The Inspector General co-chaired a track for the E-Gov 2001 International Conference and Exposition that was held from July 9-12, 2001 in Washington, D.C. The track explored how professionals in domestic law enforcement groups, the military, and international authorities employ e-government strategies to analyze, share, and distribute information for enforcing regulations and preventing criminal and terrorist activities.

- OIG staff attended the fourth annual Performance Conference sponsored by the National Academy of Public Administration, which focused on performance-related initiatives of the new administration.

- The Inspector General attended the government 2001 conference along with top Deputy Assistant Inspectors General for Audits. The conference addressed and learned about critical issues such as human capital challenges, innovative leadership, measuring and enforcing performance, and achieving innovation and results through partnerships.

- The Assistant Inspector General for Investigations and other OIG staff attended the National Organization of Black Law Enforcement Executives (NOBLE) Conference, which provided an opportunity for professional growth and interaction with other law enforcement professionals.

- The Inspector General attended the National Intergovernmental Audit Forum meeting on August 29-30. The forum is led by the U.S. General Accounting Office (GAO) and includes federal, state, and local government auditors. Topics at the forum were the current status of updating the auditor independence standard, the importance of computer security, how to audit service contracts, and the management of human capital.

- The Inspector General continued to serve as a member of the Advisory Council on Government Auditing Standards to update GAO's government auditing standards.

- Two OIG teams have been selected to receive Awards for Excellence by the President's Council on Integrity and Efficiency. Receiving the awards are a joint FDIC/FBI investigative team who have participated in the fraud case at First National Bank of Keystone and the evaluation team that reviewed the FDIC's nationwide telecommunications contract. Also, Russell Rau is being recognized with an Award for Excellence for his exemplary leadership and service to the Inspector General community in his capacity as Chair of the Federal Audit Executive Council.

- OIG Counsel's office actively litigated 13 matters during the reporting period. Such matters involved the Equal Employment Opportunity statutes, the right to Financial Privacy Act, the qui tam provisions of the False Claims Act, whistleblower protection laws, and civil and criminal cases in which OIG documents were sought in discovery. These matters are in addition to matters that are awaiting further action by the parties or pending by the courts or other adjudicatory bodies.

- OIG Counsel's office provided advice and counsel, including written opinions, on a number of issues including the implications of the Privacy Act and Rehabilitation Act Section 508 on OIG systems, the Government Information Security Reform Act, the Federal Advisory Committee Act, the Buy America Act, interpretation of various Office of Management and Budget circulars, unclaimed deposits, copyright matters, investigative matters, contract interpretations and consulting issues, housing discrimination, disclosure of information, the Bank Secrecy Act, union-related matters, theft of computer equipment, and various ethics-related matters.

34

20



* These memorandums and other correspondence relate to OIG work that did not result in formally issued audit or evaluation reports.



OIG Summer 2001 Interns- front row left to right- C. Pollard, N. Wilson, S. Farooqi. Back row left to right- M. Gilhooly, H. Albert, IG Gianni, C. Veasey, E. Martin





Figure 3: Fines, Restitution, and Monetary Recoveries Resulting from OIG Investigations (in millions)

4/99 - 9/99
10/99 - 3/00
4/00 - 9/00
10/00 - 3/01
4/01 - 9/01



22

# FDIC



## Office of Inspector General

## Semiannual Report to the Congress

*Including the OIG's Performance Report*

**October 1, 2001 – March 31, 2002**

23

## OIG Counsel Activities
### (October 1, 2001 - March 31, 2002)

### The Mission of the Office of Counsel

The Office of Counsel serves the legal needs of the OIG. To that end, Counsel's office provides legal advice and assistance on the entire range of issues that have faced, are facing, or will face the OIG. The Office litigates personnel cases; provides advice and counsel on matters arising during the course of audits, investigations, and evaluations, including the legal sufficiency of reports; reviews, analyzes and comments on proposed or existing regulations or legislation, including recent banking legislation and implementing regulations; communicates or negotiates with other entities; responds to Freedom of Information Act and Privacy Act requests and appeals; prepares and enforces subpoenas for issuance by the Inspector General; and coordinates with the Legal Division. Examples include:

### Litigation

Counsel's office has actively litigated 7 matters during the reporting period. These matters involved the Equal Employment Opportunity statute, the "qui tam" provisions of the False Claims Act, whistleblower protection laws, and civil and criminal cases in which OIG documents were sought in discovery. These matters are in addition to 9 matters that are awaiting further action by the parties or rulings by the courts or other adjudicatory bodies.

### Advice and Counseling

Counsel's office provided advice and counseling, including written opinions, on a number of issues, including closed-bank matters, particularly Superior Bank FSB; personnel issues, including down-sizing and reduction-in-force matters; payroll issues; terrorism; the implications of the Privacy Act and Rehabilitation Act section 508 on OIG systems; interpretation of various Office of Management and Budget Circulars; investigative matters, contract interpretations, and consulting issues; disclosure of information; the Vacancy Act; and various ethics-related matters. In addition, we provided comments relative to the legal sufficiency of several audit reports.

### Legislation/Regulation Review

Counsel's office carried out its responsibilities under the Inspector General Act to review proposed or existing legislation and regulations. During this reporting period, we reviewed and provided comments on 1 FDIC regulation.

### Subpoenas

Counsel's office prepared 16 subpoenas for issuance by the Inspector General during this reporting period.

### FOIA/Privacy Act

Counsel's office responded to 7 requests under the Freedom of Information Act and the Privacy Act.

**Exhibit 12e**

Extract Office of Inspector General,
Semi-Annual Report to Congress
April 2002 - March 2003





Office of Inspector General
# Semiannual Report to the Congress
April 1, 2002 - September 30, 2002

25

## OIG Counsel Activities
### (April 2002 - September 2002)

**The Mission of the Office of Counsel**

The Office of Counsel serves the legal needs of the OIG. To that end, Counsel's office provides the legal advice and assistance on the entire range of issues that have faced, are facing, or will face the OIG. The Office litigates personnel cases, provides advice and counsel on matters arising during the course of audits, investigations, and evaluations, including the legal sufficiency of reports, reviews, analyzes, and comments on proposed or existing regulations or legislation, including recent banking legislation and implementing regulations, communicates or negotiates with other entities, responds to Freedom of Information Act and Privacy Act requests and appeals, prepares and enforces subpoenas for issuance by the Inspector General, and coordinates with the Legal Division. Examples include:

**Litigation**

Counsel's office has actively litigated or assisted in the litigation of 11 matters during the reporting peri-od. These matters involved claims brought before the Equal Employment Opportunity Commission and the Merit Systems Protection Board, the qui tam provisions of the False Claims Act, and civil and crimi-nal cases in which OIG documents were sought in discovery. These matters are in addition to 12 matters that are awaiting further action by the parties or rulings by the court or other adjudicatory bodies.

**Advice and Counseling**

Counsel's Office provided advice and counseling, including written opinions on a number of issues, including closed bank matters, personnel issues including downsizing reorganization, and mobility requirements, use of travel and procurement cards, review of the Gramm-Leach-Bliley Act and FDIC Special Examination Authority, investigative matters, contract interpretations, and various ethics-related matters. In addition, Counsel's Office provided comments relative to the legal sufficiency of more than 20 audit reports and evaluations.

**Legislation/Regulation Review**

Counsel's Office has carried out its responsibilities under the Inspector General Act to review proposed or existing legislation and regulations. During this reporting period, Counsel's Office reviewed and provided comments on one FDIC regulation.

**Subpoenas**

Counsel's Office prepared 14 subpoenas for issuance by the Inspector General during this reporting period.

**Freedom of Information Act/Privacy Act**

Counsel's Office responded to 13 requests under the Freedom of Information Act and the Privacy Act.

51 26





Office of Inspector General

# Semiannual Report to the Congress

October 1, 2002 - March 31, 2003

27

## OIG Counsel Activities
### (October 2002 – March 2003)

**The Mission of the Office of Counsel**

The Office of Counsel provides legal advice and assistance on the range of issues that have faced, are facing, or will face the OIG. The Office litigates (or assists in litigating) personnel and other cases; provides advice and counsel on matters arising during the course of audits, investigations, and evaluations, including reviewing reports for legal sufficiency; reviews, analyzes, and comments on proposed or existing regulations or legislation, including banking legislation and implementing regulations; communicates and negotiates with other entities on behalf of the OIG; responds to Freedom of Information Act and Privacy Act requests and appeals; prepares and enforces subpoenas for issuance by the Inspector General; and coordinates with the Legal Division, the Department of Justice, and other agency and governmental authorities. Examples include:

| | |
|---|---|
| **Litigation** | Counsel's Office represented the OIG in a hearing before a Merit Systems Protection Board administrative judge during the reporting period involving a claim brought by a former employee. The Office of Counsel assisted the FDIC in litigating a matter and was involved in 23 other litigation matters that are awaiting further action by the parties or rulings by the court or other adjudicatory bodies. |
| **Advice and Counseling** | Counsel's Office provided advice and counseling, including written opinions, on issues including closed bank matters and bank supervision; the Prompt Corrective Action provisions of the Federal Deposit Insurance Act; the role of independent public accountants; review of the Sarbanes-Oxley Act; investigative matters; contract interpretations; and various ethics-related matters. In addition, Counsel's Office provided comments relative to the legal accuracy and sufficiency of 11 audit and evaluation reports. |
| **Legislation/Regulation Review** | During this reporting period, Counsel's Office commented on one proposed piece of legislation. Counsel also reviewed one proposed formal FDIC regulation and 11 FDIC policies. |
| **Subpoenas** | Counsel's Office prepared 15 subpoenas for issuance by the Inspector General during this reporting period. |
| **Freedom of Information Act/Privacy Act** | Counsel's Office responded to 2 requests under the Freedom of Information Act. |

28

**Exhibit 12f**

Extract Office of Inspector General,
Semi-Annual Report to Congress
April 2003 - March 2004

# Federal Deposit Insurance Corporation Office of Inspector General



## Semiannual Report to the Congress
*including the OIG's Performance Report*

April 1, 2003 -
September 30, 2003



29

## OIG Counsel Activities
### (April 2003 – September 2003)

### The Mission of the Office of Counsel

The Office of Counsel provides independent legal advice and assistance to the Inspector General and the staff of the OIG. The Office litigates personnel and other cases; provides advice and counsel on matters arising during the course of audits, investigations, and evaluations, including reviewing reports for legal sufficiency; manages the OIG's Ethics process; reviews, analyzes, and comments on proposed or existing regulations or legislation, including banking legislation and implementing regulations; communicates and negotiates with other entities on behalf of the OIG; responds to Freedom of Information Act and Privacy Act requests and appeals; prepares and enforces subpoenas for issuance by the Inspector General; and coordinates with the Legal Division, the Department of Justice, and other agency and governmental authorities. Examples include:

| | |
|---|---|
| Litigation | The Office of Counsel is currently involved in 24 litigation matters that are awaiting further action by the parties or rulings by the court or other adjudicatory bodies. |
| Advice and Counseling | Counsel's Office provided advice and counseling, including written opinions, on issues including closed bank matters and bank supervision; OIG appropriations; the scope of OIG's statutory authorities; review of the USA PATRIOT Act and the E-Government Act; investigative matters; contract interpretations; and various other related matters. In addition, Counsel's Office provided comments relative to the legal accuracy and sufficiency of 8 audit and evaluation reports. |
| Legislation/Regulation Review | During this reporting period, Counsel's Office reviewed one proposed piece of legislation. We also reviewed and commented upon one proposed formal FDIC regulation, reviewed 14 FDIC policies, and provided comments on 6 of those. |
| Subpoenas | Counsel's Office prepared 9 subpoenas for issuance by the Inspector General during this reporting period. |
| Freedom of Information Act/Privacy Act | Counsel's Office responded to 5 requests under the Freedom of Information Act. |

30

# SEMIANNUAL REPORT TO THE

# CONGRESS

October 1, 2003 – March 31, 2004

**OFFICE OF INSPECTOR GENERAL**

FEDERAL DEPOSIT INSURANCE CORPORATION



31

## OIG Counsel Activities
### (October 2003–March 2004)

**The Mission of the Office of Counsel**

The Office of Counsel provides independent legal advice and assistance to the Inspector General and the staff of the OIG. The Office litigates personnel and other cases; provides advice and counsel on matters arising during the course of audits, investigations, and evaluations, including reviewing reports for legal sufficiency; manages the OIG's Ethics process; reviews, analyzes, and comments on proposed or existing regulations or legislation, including banking legislation and implementing regulations; communicates and negotiates with other entities on behalf of the OIG; responds to Freedom of Information Act and Privacy Act requests and appeals; prepares and enforces subpoenas for issuance by the Inspector General; and coordinates with the Legal Division, the Department of Justice, and other agency and governmental authorities. Examples include:

| | |
|---|---|
| Litigation | Counsel's Office is representing the OIG in hearings before the Equal Employment Opportunity Commission and before the District Court for the District of Columbia. The Office of Counsel is currently involved in 22 litigation matters that are awaiting further action by the parties or rulings by the court or other adjudicatory bodies. |
| Advice and Counseling | Counsel's Office provided advice and counseling, including written opinions, on issues involving closed bank matters and bank supervision, the Bank Secrecy Act, OIG Hotline complaints, administrative costs and security practices for receiverships, investigative matters, contract interpretations, and various ethics-related matters. In addition, Counsel's Office provided comments relative to the legal accuracy and sufficiency of more than eight audit and evaluation reports. |
| Legislation/Regulation Review | During this reporting period, Counsel's Office reviewed one proposed formal FDIC regulation. The office also commented on six proposed or final directives and various policies. |
| Subpoenas | Counsel's Office prepared four subpoenas for issuance by the Inspector General during this reporting period. |
| Freedom of Information and/or Privacy Acts | Counsel's Office responded to two requests under the Freedom of Information Act. |

## OIG Organizational Chart



# Exhibit 12g

Extract Office of Inspector General,
Semi-Annual Report to Congress
April 2004 - September 2004



# SEMIANNUAL REPORT TO THE
# CONGRESS

April 1, 2004 – September 30, 2004

INCLUDING
THE OIG's
FISCAL YEAR 2004
PERFORMANCE
REPORT



**OFFICE OF INSPECTOR GENERAL**
FEDERAL DEPOSIT INSURANCE CORPORATION

33

## OIG Counsel Activities
### (April 2004–September 2004)

### The Mission of the Office of Counsel

The Office of Counsel to the Inspector General provides independent legal advice and assistance to the Inspector General and the staff of the OIG. The Office litigates personnel and other cases; provides advice and counsel on legal issues affecting the OIG or that arise during the course of audits, investigations, and evaluations; manages the OIG ethics process; reviews, analyzes, and comments on proposed or existing legislation or regulations; communicates and negotiates with other entities on behalf of the OIG; responds to Freedom of Information Act and Privacy Act requests and appeals; prepares and enforces subpoenas for issuance by the Inspector General; and coordinates activity with the Legal Division, the Department of Justice, and other agency and governmental authorities:

| | |
|---|---|
| Litigation | The Office of Counsel represented the OIG in hearings before the Equal Employment Opportunity Commission and before the District Court for the District of Columbia. The Office was involved in 24 litigation matters, one of which was decided during the reporting period, and the remainder of which are awaiting further action by the parties or rulings by the court. |
| Advice and Counseling | The Office of Counsel provided legal opinions and advice on issues involving OIG Hotline complaints; regulatory matters, including the applicability of the Sarbanes-Oxley Act to FDIC-supervised institutions, Bank Secrecy Act compliance and supervision of limited-charter institutions; administrative and contract-related audits; investigative and personnel issues; and various ethics-related matters. Additionally, the Office of Counsel provided ongoing legal support for a number of audit products and reviewed the legal accuracy and sufficiency of more than 15 audit and evaluation reports. |
| Legislation/Regulation Review | During this reporting period, the Office of Counsel reviewed and commented upon two proposed formal FDIC regulations. The Office also reviewed and commented upon seven proposed or final directives. |
| Subpoenas | The Office of Counsel prepared 4 subpoenas for issuance by the Inspector General during the reporting period and reached a milestone of 500 subpoenas issued by the Office since its inception. |
| Freedom of Information Act/Privacy Act | During this reporting period, the Office of Counsel responded to six requests and one appeal under the Freedom of Information Act or Privacy Act. |

## OIG Organizational Chart

Inspector General
Gaston L. Gianni, Jr.
Deputy Inspector General
Patricia M. Black

Counsel to the Inspector General
Fred W. Gibson

Office of Audits
Assistant Inspector General
Russell Rau

Office of Investigations
Assistant Inspector General
Samuel M. Holland

Office of Management and Congressional Relations
Assistant Inspector General
Rex Simmons

Office of Quality Assurance and Oversight
Assistant Inspector General
Robert L. McGregor

34

**Exhibit 12h**

Extract Office of Inspector General,
Semi-Annual Report to Congress
October 2004 - September 2005

Case 1:06-cv-01743-RBW    Document 10-25    Filed 10/10/2007    Page 2 of 5

# SEMIANNUAL REPORT TO THE

# GRESS

October 1, 2004 – March 31, 2005





**OFFICE OF INSPECTOR GENERAL**

FEDERAL DEPOSIT INSURANCE CORPORATION

## Points of Contact

| Title | Name | Telephone Number |
|---|---|---|
| Acting Inspector General | Patricia M. Black | 202-416-2026 |
| Deputy Inspector General | Patricia M. Black | 202-416-2026 |
| Counsel to the Inspector General | Fred W. Gibson | 202-416-2917 |
| Assistant Inspector General for Audits | Russell Rau | 202-416-2543 |
| Deputy Asst. Inspector General for Audits | Stephen Beard | 202-416-4217 |
| Deputy Asst. Inspector General for Audits | Sharon Smith | 202-416-2430 |
| Assistant Inspector General for Investigations | Samuel Holland | 202-416-2912 |
| Assistant Inspector General for Management and Congressional Relations | Rex Simmons | 202-416-2483 |
| Assistant Inspector General for Quality Assurance and Oversight | Robert Taylor | 202-416-2501 |

## OIG Counsel Activities
### (October 2004–March 2005)

**The Mission of the Office of Counsel**

The Office of Counsel provides independent legal advice and assistance to the Inspector General and the staff of the OIG. The Office litigates personnel and other cases; provides advice on matters arising during the course of audits, investigations, and evaluations, including reviewing reports for legal sufficiency; manages the OIG's Ethics process; reviews, analyzes, and comments on proposed or existing regulations or legislation, including banking legislation and implementing regulations; communicates and negotiates with other entities on behalf of the OIG; responds to Freedom of Information Act (FOIA) and Privacy Act requests and appeals; prepares and enforces subpoenas for issuance by the Inspector General; and coordinates with the Legal Division, the Department of Justice, and other agency and governmental activities. Examples from the reporting period include:

| | |
|---|---|
| Litigation | Counsel's Office represented the OIG in cases before the Equal Employment Opportunity Commission and before the District Court for the District of Columbia. The Office of Counsel was involved in 22 litigation matters, two of which were resolved during the period, and the remainder of which are awaiting further action by the parties or rulings by the court. |
| Advice and Counsel | Counsel's Office provided advice and counsel, including written opinions, on issues involving the statutory authority of the Inspector General; E-government initiatives; protection of sensitive information; Federal Information Security Management Act's external auditor provision; bank supervision matters involving aspects of the USA PATRIOT Act, the Bank Secrecy Act, and the Bank Merger Act; closed bank matters including dividend payments and asset write-offs for receiverships; contract interpretations; investigative matters; and various ethics-related matters. In addition, Counsel's Office provided comments relative to the legal accuracy and sufficiency of more than 15 audit and evaluation reports. |
| Legislation and Regulations | During this reporting period, Counsel's Office reviewed and commented upon proposed FOIA legislation entitled *The OPEN Government Act*, and reviewed three formal FDIC regulations. Counsel's Office also commented on six proposed or final directives and various policies. |
| Subpoenas | Counsel's Office prepared four subpoenas for issuance by the Inspector General or Acting Inspector General during this reporting period. |
| Freedom of Information and Privacy Acts | Counsel's Office responded to nine requests under the FOIA, one FOIA appeal, and assisted FDIC Counsel in a FOIA-related lawsuit. |



# SEMIANNUAL REPORT TO THE
# CONGRESS

April 1, 2005 – September 30, 2005

**OFFICE OF INSPECTOR GENERAL**
FEDERAL DEPOSIT INSURANCE CORPORATION

## OIG Counsel Activities
### (April–September 2005)

The Office of Counsel (OC) provides independent legal advice and assistance to the Inspector General and the staff of the OIG. During the latter half of fiscal year 2005, OC engaged in wider multi-disciplinary activities, reflecting the current needs of a greater range of OIG stakeholders. OC represented the OIG at the Department of Homeland Security's Inspector General Roundtable on security issues facing the Inspector General community. In the aftermath of Hurricane Katrina, OC participated in the Department of Justice's Hurricane Katrina Fraud Task Force and engaged in discussions with other federal banking regulators to determine collaborative work dealing with the post-Katrina restoration efforts. Internally, OC participated in the development of a new process for enhanced planning and implementation of OIG work. Other activities from the reporting period are described below:

| | |
|---|---|
| **Litigation** | OC represented the OIG in personnel cases before the Equal Employment Opportunity Commission, Merit Systems Protection Board, and in litigation before the District Courts for the District of Columbia and the Middle District of Florida. OC was involved in 28 litigation-related matters, 3 of which were resolved during the period, and the remainder of which are awaiting further action. |
| **Advice and Counseling** | OC provided advice and counsel, written opinions, and determinations of legal applicability on issues arising during the course of audits, investigations, and evaluations. Examples include analysis of: the statutory authority of the Inspector General; the applicability of privacy-related laws and regulations to the FDIC and its operations; banking law matters including the FDIC's Maximum Efficiency, Risk-focused, Institution Targeted and compliance examination procedures, and the use of corrective and enforcement actions; the FDIC's deposit insurance assessment program; and ethics-related and investigative matters. OC provided input in conjunction with briefings of congressional committees, and met with Congressional staff in support of Congressional oversight matters. Counsel's Office provided comments relative to the legal accuracy and sufficiency of more than 14 audit and evaluation reports. |
| **Legislation/Regulation Review** | OC reviewed proposed legislation S. 1332, the Personal Data Privacy and Security Act of 2005, and reviewed and commented on three proposed formal FDIC regulations, seven FDIC directives, and two OIG policies. |
| **Subpoenas** | OC prepared 10 subpoenas for issuance during this reporting period. |
| **Freedom of Information and/or Privacy Act** | OC responded to four requests under the Freedom of Information Act. |

**Exhibit 13**

Letter- March 1, 2002
Office of Inspector General
Subject: Downsizing

# FDIC

**Federal Deposit Insurance Corporation**

801 17th Street, NW, Washington, DC 20434

Office of Inspector General

**DATE:**          March 1, 2002

**MEMORANDUM TO:**     OIG Staff

**FROM:**          Gaston L. Gianni, Jr.
              Inspector General

**SUBJECT:**         OIG Implementation of FDIC's Initiatives and Downsizing

As you are all aware, the Chairman presented his comprehensive vision for the future of the FDIC at a meeting of the Agency's executive staff on February 5th. That vision calls for a shift in the way the FDIC perceives itself and its business. It also contemplates a smaller FDIC, and demands that each office and division reevaluate its activities, goals, and objectives.

Earlier this year, I advised you that our Fiscal Year (FY) 2003 staffing level would be 190. Additionally, I tasked a group of senior managers led by Pat Black with reviewing the operations of the OIG to establish its mission-critical functions, and to relate the staffing of the OIG directly to those functions. Based upon my review of the information developed by the group and the individual OIG offices, I have reached two conclusions. First, given past and ongoing changes in the Corporation, the staffing for the OIG beyond next year must decline below the 190 FTEs contemplated by the FY 2003 budget. The total staffing levels which I expect the OIG to require for FY 2004 and beyond is 168. This means that over the next 2 years our office will have to reduce staffing by a total of 37 positions. Second, we can no longer rely solely on attrition to meet projected staffing goals. Therefore, I am requesting that the Chairman include the OIG in the Corporation's early out and 50 percent buyout programs.

In addition, I have decided to close the OIG San Francisco office, which will occur no later than August 23, 2002. The OIG is preparing plans for closing that office and will work with affected employees in order to provide them with specific information about the closing, along with their rights and any services the Corporation makes available to employees in these circumstances.

As might be expected, reductions of this magnitude will require significant changes in how we operate in the future. Therefore, I want to set forth the types of changes which will occur so that you can have the best possible information to assist you in deciding whether a buyout or early-out program works for you. The executives for each unit will provide greater details about future operations within their respective areas.

Overall, there are a number of identifiable areas where reductions in staff are appropriate, generally because work can be done with fewer staff or because a function is not mission-critical or can be performed outside of the OIG. Moreover, our current organizational structure and administrative support levels are not the optimum and some changes should be made. Further, we do not necessarily have staff located where we need them, and we do not always have the proper skill sets to do the work OIG needs to do. Finally, our grade structure is not properly suited to the organization we are becoming.

As a result, we are modifying our structure to realign OIG operations with the critical business of FDIC, geographically as well as functionally. This is expected to result in restructuring of grades, reallocation of resources within the OIG, and directed reassignments.

## Office of Audits

Office of Audits (OA) has proposed an organizational alignment along four strategic objectives, with one crosscutting directorate. The number of directorates will be reduced from six to five: (1) Supervision, Insurance and Consumer Affairs; (2) Resolution, Receivership and Legal Affairs; (3) Information Assurance; (4) Resources Management; (5) and Corporate Evaluations. A CG-15 director, located in Washington, will head each unit, and audit teams, each headed by a CG-14 team leader, will be distributed among the five directorates. One field office, San Francisco, will be eliminated, and staffing levels at the three remaining offices will be changed and may require directed reassignment to other locations.

OA is also taking steps to change its grade structure. In general, OA expects CG-15's to be directors, with remaining CG-15 positions designated as "incumbent only." OA intends to head each audit team with a CG-14 team leader who will provide substantial input regarding staff performance and work done to the CG-15 supervisor. These team leaders will also carry an audit caseload, functioning as line auditors. These positions will be competed within OA. Ultimately, with the possible exception of an occasional technical expert, all remaining auditors will be graded at the CG-12/13 level. Auditors graded at higher levels who are placed in lower graded positions will not be reduced in grade at this time. However, the positions will be designated "incumbent only." When the occupant leaves the position, if it is filled, it will be at a lower level.

## Office of Investigations

Office of Investigations (OI) will operate an Eastern Region with offices located in Atlanta and Washington; a Western Region with offices located in Dallas and Chicago; a Special Investigations and Electronic Crime Group based in Washington; and a Headquarters Operations staff also located in Washington. The Eastern Region will have an Assistant Special Agent-in-Charge (ASAC) in Atlanta and an ASAC in Washington. Initially, the Western Region will have one ASAC located in Dallas, responsible for both Dallas and Chicago. Each regional office will be headed by a CG-15 Special Agent-in-Charge (SAC). A CG-14 ASAC will serve as a team leader and will carry caseloads in addition to providing input regarding staff performance and work done to the SAC. It is expected that ultimately

there will be a single administrative support person in each regional office assisting both OA and OI.

The Special Investigations and Electronic Crime Group will be located in Washington, D.C. The special investigations function will investigate allegations of misconduct involving OIG employees and other sensitive matters, provide support and rapid response as needed in ongoing investigations, target and develop strategies for investigations of emerging fraud schemes, and coordinate special areas of investigation and cross-regional projects, such as restitution cases. The Electronic Crime Group will support all OI offices by providing support for all electronic and computer media related issues, conduct computer forensic investigations, and serve as a point of contact for the law enforcement and legal communities in matters of investigative and forensic technology. The group will be headed by a CG-15 SAC reporting directly to the Deputy Assistant Inspector General (DAIG), assisted by a CG-14 ASAC.

OI's headquarters operations staff will consist of the Assistant Inspector General, the DAIG, and three non-supervisory desk officers or program manager positions. Each will be a point of contact through which operational information flows between the regional offices and headquarters as well as between OI and the Corporation. The Hotline will also be transferred from the Office of Management and Policy to one of these positions.

Line agents will serve at the CG-13 level, except for 2-3 technical experts, who will be CG-14s. Agents at higher grades who are assigned to lower graded positions will not be reduced in grade at this time, but their positions will be labeled "incumbent only," and the position, if subsequently filled, will be filled at a lower grade. As noted above, OA and OI will share support staff in the field, and there will also be two non-agent positions in Washington. Directed reassignments to other locations may be required.

## Office of Management and Policy

Office of Management and Policy (OMP) will combine functions in the budget, contracting, and oversight areas, while seeking ways to improve overall process efficiencies through greater delegation of functions to OIG units. In addition, OMP will continue to work in system administration and security because of the critical importance in supporting the accomplishment of our mission. After several successful years of system design work, we will now focus on system upkeep (including the web page) and de-emphasize our design work.

The Human Resources function is essential to the independent exercise of personnel authority by the OIG and will remain substantially unchanged. OMP will continue to take the lead role in the increasingly important Human Capital planning area. Further, OMP will continue managing OIG policies. As stated previously, the Hotline will be transferred to OI.

## Administrative Support

Given the extent of downsizing, regions and organizational units in Washington will be required to make greater use of shared administrative support. This will result in an excess of

administrative support functions.  Accordingly, Human Resources will work with the units to identify these excess positions and work with the affected employees should a reduction-in-force be needed.

Following is a preliminary allocation of the 168 positions among OIG units:

| Office | FY 2004 Staff |
|---|---|
| Staff of the Inspector General | 4 |
| Office of Counsel | 6 |
| Office of Audits | 95 |
| Office of Investigations | 39 |
| Office of Management and Policy | 14 |
| Office of Policy Analysis and Congressional Relations | 5 |
| Office of Quality Assurance and Oversight | 5 |
| Total | 168 |

Final organizational structure, office size, and staff locations cannot be determined until we complete the buyout and early-out process and assess the extent to which they assist our office in achieving the 168 staffing level.

## Buyout and Early-Out Process

As indicated above, I have requested authority for OIG employees to participate in the Corporation's buyout and early-out programs.  These programs are being made available to permanent employees hired by the FDIC before 1999.  The buyout program will pay employees who voluntarily leave the OIG a separation incentive equivalent to 50 percent of their total annual salaries (plus supplemental benefits similar to those offered in earlier buyout programs).  The early-out program permits employees to elect early retirement if the employee is 50 years of age and has at least 20 years of service, or employees of any age may retire if they have 25 or more years of service.  In order to allow us to plan future actions with some degree of certainty, employees electing to participate in these programs will be required to convert to term appointments with a not-to-exceed date of August 23, 2002.  That date has been selected in order to permit the OIG to complete this process prior to the end of FY 2002.  In certain rare cases, OIG management may elect to designate employees in certain positions as "critical," in which case the employee will be given a delayed departure date.

Based on the recommendations and information provided by our senior managers, and in order to meet the appropriate staffing level, the OIG will take the following steps:

1.  OIG has requested authority and expects to participate in the Corporation's voluntary 50 percent buyout program, as well as the early-out program.  Both programs are being offered to all eligible employees through grade CG-15, without restriction.  In addition, the programs will be offered to series 511 E-levels, up to a maximum of two applicants on a

first-come first-approved basis. Because of the nature of our Fiscal Year, which ends in September, the period for employees to accept participation in either program will run from April 1, 2002 through June 30, 2002. Accepting employees must be off the rolls by August 23, 2002, unless the employee has been designated "critical" and given a delayed departure date. Specific information about participation in the buyout will be provided to you soon.

2.  Employees accepting the buyout or early-out programs must convert to term appointments with a not-to-exceed date of August 23, 2002.

3.  When the buyout/early-out application period closes on June 30 and when we know how many employees will be leaving under these programs and which positions they now occupy, we will be able to plan any additional required reduction-in-force. Any such reduction-in-force will be implemented in the first half of FY 2003. Since the proposed FY 2003 budget is not sufficient to support any large number of directed reassignments, those actions are expected to be made in the final quarter of FY 2002, once incumbency in various positions has been determined.

4.  All OIG employees are advised that they may be subject to a reduction-in-force sometime within the next year.

5.  As a part of OIG's restructuring, OIG will announce a Solicitation of Interest within our office to allow some age-eligible OIG employees to cross over into the investigator series (1811), to the extent that positions are opened through buyout acceptances in OI. That solicitation remains open until Friday, March 15, 2002. This will enable us to retain some staff who currently occupy surplus positions. Note that a candidate for an 1811 position must, by law, be appointed before the candidate's 37th birthday.

The change we have to undergo is very painful for us all, and the decisions have not been easy ones to make. I have attempted, over the years, to achieve downsizing and restructuring commensurate with OIG needs and FDIC initiatives independently, and in the most humane manner possible. Consistent with the Chairman's vision, we must now accelerate this downsizing. In so doing, I believe that completing this process as promptly as practicable will minimize the long-term impact of the process on us as an office, as well as on those of us who may bear its effects individually. I would like to take this opportunity to ask you all to reflect on your personal role in this office, as well as the future role of the OIG within the FDIC. Renewed and profound commitment to those roles, and to the achievement of excellence in our work, is essential as we restructure and move forward. Without total commitment from every OIG employee, resulting in timely and relevant work products, there is no guarantee that the 168 staffing level will remain operative and further reductions may be required.

Finally, I wish to thank our San Francisco staff for their many years of dedicated service to the Corporation and the Federal Government. We will do all we can to assist them as we close the office.

# Exhibit 14

Affidavit of Theresa Fewell
Office of Inspector General
Legal Assistant
May 19, 2005

# A F F I D A V I T

District of Columbia                                        }

I, Theresa D. Fewell, hereby affirm under the penalty of perjury and make this statement.

My name is Theresa D. Fewell; I am African American, and am currently employed as a Legal Assistant, CG-986-8, in the Office of Counsel, Office of Inspector General (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C. I began working in my current position in January 2001, and for the Office of Counsel and FDIC in May 1990.

My first line Supervisor is Fred W. Gibson Jr., Counsel to the Inspector General; and Patricia M. Black, Acting Inspector General is my second line supervisor, with both located in the OIG, FDIC, Washington, D.C. My current chain of supervision has been in place since April 2002.

I have known the Complainant since the time she started to work for our office. I was here when the Complainant was hired, and actually called her to schedule her interview. The Complainant and I were co-workers, and I was aware of her race by visual observation.

In my current position I handle all the administrative work of the staff, such as the mail and telephones; I am Mr. Gibson's personal assistant and as such I arrange his travel, meetings, etc.; create databases to track such items as incoming correspondence and case pleadings; and prepare presentations using PowerPoint for Mr. Gibson or Ms. Black. I manage our workflow system, which captures the work of the staff, and prepare reports in the system for Mr. Gibson to discuss during status meetings with the Inspector

Page 1 of 3                                                Initials

General (or Acting IG). I was part of the team that developed this system. I do a little legal research, such as retrieving specific cases from Westlaw when asked by an attorney, or retrieving newspaper articles from Nexis or the Associated Press. .I also serve as the back up the Secretary to the Inspector General.

When I started working here I was Secretary to the Counsel to the IG, and after a desk audit I became a Legal Assistant. In actuality, I had progressed to doing most of this work in my previous position, and that's the reason my desk audit resulted in a promotion. All CG-7 Secretaries in OIG had desk audits performed at the same time. I have had more responsibility added since my desk audit.

I prepare subpoenas and effect service through USPS certified mail. I prepare the first draft of subpoenas, and pass it to an Attorney who reviews it, before I prepare the subpoena in final. I have been preparing subpoenas since I came to this office. The difference in my preparation of subpoenas from when I began in this office is that the Attorney used to do the first draft and I typed it in the final format. This is the way it was done when I was Secretary in the Office of Counsel. The Complainant prepared subpoenas in my absence or when my workload was high she would help out. In the same sense, I entered records in the opinion log when the need arose. I am also a Notary Public.

I also assemble documents (copying and collating) for hearings at the U. S. Equal Employment Opportunity Commission (EEOC) and Merit Systems Protection Board (MSPB). This involves the basic assembly of the case file and exhibits. I arrange for the copying of the case file if it is done offsite. I have done this ever since we have had a Human Resources Branch (HRB). When I assemble these case files, I receive a list of

Page 2 of 3

Initials

exhibits from the Attorney, who will tell me if it is an EEOC or MSPB case, and from this I know the correct format for assembly. I work very closely with our Attorney who handles personnel issues during this process. I know where the basic items, such as the complaint documentation, go in the file, but exhibit assembly comes from the Attorney. I also track incoming pleadings to ensure they are responded to in a timely manner.

When the Complainant left, the opinions database was given to me. The Complainant logged in opinions and filed them in this database that she created. I was assigned this responsibility about a week after the Complainant left when I needed to locate an opinion and could not find it. Mr. Gibson then assigned me to maintain that database form that point forward. However, it is not a high priority or major duty for me.

I have read the forgoing statement consisting of _3_ page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.

Theresa B. Fewell

Subscribed and sworn before me at _Washington, DC_

on this _19Th_ day of _May_, _2005_

Craig A. Brieske, Investigator
US Investigations Services

Initials



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

*Office of Diversity and Economic Opportunity*

## NOTICE OF RIGHTS OF WITNESSES
### IN
### EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.    To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.    To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.    To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.    To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.    To review your affidavit and make corrections or other changes <u>prior to</u> signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS:_____    DATE: 5-9-05

# PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
# FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

## EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____     _____
Signature of Interviewer       Signature of Witness (person providing statement)

Date: 5-9-05

Place: Washington, DC

**Exhibit 15**

Affidavit of Rex Simmons
Assistant Inspector General for Management
and Congressional Relations
Office of Inspector General
May 13, 2005

### A F F I D A V I T

**District of Columbia**                                    }

**I, Rex A. Simmons, hereby affirm under the penalty of perjury and make this statement.**

My name is Rex A. Simmons, I am White, and am currently the Assistant Inspector General for Management and Congressional Relations, EM-301, in the Office of Management and Congressional Relations, Office of Inspector General, (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C.   While my job title has changed, the most accurate date when I began working in my current position is January 1, 1996.  I was hired by the FDIC on August 17, 1990, at the Resolution Trust Corporation, and worked with the OIG there, until it merged into the FDIC in January 1996.

I have one supervisor, Patricia Black, Acting Inspector General, and she began working in that position on January 1, 2005.  Prior to that Ms. Black was the Deputy Inspector General, but I do not know when she started in that position.

I knew the Complainant worked in the Counsel's office as a Paralegal Specialist, but I did not know her very well.  I had no organizational relationship with the Complainant other than we both worked in the OIG.  I have seen the Complainant and assume she is African-American.

Prior to the Complainant's reassignment, Ms. Black approached me to discuss Complainant's possible placement in the Human Resources Branch (HRB). While I cannot remember the exact date of this discussion, I believe it to be in the summer of 2004.  The HRB had a vacancy for several months for a Benefits Specialist, which we

Page 1 of 5                                    Affiant's Initials  _RAS_

advertised, but we did not find a suitable candidate who would accept the position. Ms. Black told me the Complainant had a lack of work in the Counsel's office, and without the reassignment the Complainant's position would be abolished for lack of work, and she thought she might be suitable for the position and wanted to know my thoughts. I told Ms. Black that if the Complainant could do the job, I was agreeable to the reassignment.

I agreed that I would work with the Complainant to insure she received the training to fill the Benefits Specialist position. I do not have any first-hand knowledge, but assume her supervisor, Fred Gibson, would have been involved in the decision to make the reassignment. Trina Petty, Director of Human Resources was also involved because she is the first line supervisor for the incumbent in the Benefits Specialist position and in her Human Resources capacity, she is involved with all directed reassignments.

I can explain the duties and responsibilities of the Human Resources Specialist (Benefits) in general terms, and Ms. Petty can give more specifics. There are two main aspects to this position. The first aspect involves benefits, wherein the Complainant provides information on benefits to employees, and helps in processing benefit actions. The second aspect to the job is in training and work as a Training Officer to review and approve training requests in part for accuracy. Once there is supervisory approval of a training request, the Complainant reviews the request, awaits final approval, registers and pays for the training with a procurement credit card, and helps to ensure the employee closed out information in the system and receives credit for the hours for having attended the training. I am not aware of any relationship these duties and responsibilities have to

Affiant's Initials _RAS_

the Complainant's prior education, training and work experience. The Complainant was described as a smart and personable individual who could learn to perform the duties of the Human Resources Specialist (Benefits) position, and that is what I have found her to be.

Between September 23, 2004 and November 30, 2004, we advertised a grade 14 Human Resources Specialist, and that is the only position advertised in the HRB during this period. We were anticipating a vacancy, and as it has turned out, so far we have never had a position for the grade 14. We were planning on reorganizing, and the duties of the grade 14 would have included staffing, classification and employee relations, and we were looking for someone with a very high level of knowledge in these areas. There is currently a grade 13 in a position, who had told us she was leaving for another position. With that information, we were taking the opportunity to reorganize, however, the grade 13 has not yet left, and because we do not have any open position in the HRB, we have not taken any actions to fill the grade 14 position for which we advertised.

I was not aware the Complainant claimed she was not qualified for the position of Human Resources Specialist (Benefits). I did not assume the Complainant was qualified to begin with, and therefore we approached the situation believing that she would need to have the training and development to perform the duties of the job. We have spent a lot of time in training the Complainant to get her up to speed in the position.

There was no vacant position in the HRB, either prior to or at the time of the reassignment, that more closely matched the Complainant's skill sets. Ms. Petty told me that the Complainant wanted an assignment as an Employee Relations Specialist, but we have never had a vacancy in that role. The incumbent has been in that position since

Affiant's Initials _RAS_

1998, and we were looking at combining the duties of the Employee Relations Specialist into the grade 14 position we had advertised. As part of that effort, the current Employee Relations Specialist has been placed into the new position description, which is the same as that which we advertised. In our reorganization, we would have had two grade 14 positions instead of the one in our current Human Resources organization.

Both the Paralegal Specialist position from which the Complainant was reassigned, and the Human Resources Specialist (Benefits) to which she was reassigned have a full performance grade level at CG-11.

My understanding is that management has the authority to reassign an employee to get work done commensurate with an employee's grade level, and that process was followed in the instance of the Complainant's reassignment. To my knowledge the Complainant was not reassigned because of her race.

I do not know what happened to the job duties the Complainant performed as a Paralegal Specialist. However, since the Complainant has been in my unit, she is a very good employee, and I look forward to working with her in the future. I think if the Complainant stays with this she will have a very bright and rewarding future.

I have no further testimony to provide.

**I have read the forgoing statement consisting of 5 page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.**

Affiant's Initials _RAS_

Rex A. Simmons

Subscribed and sworn before me at _____ Washington, D.C. _____

on this 13th day of _____ May _____, 2005

Craig A. Brieske, Investigator
US Investigations Services

Affiant's Initials RAS



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    *Office of Diversity and Economic Opportunity*

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.    To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.    To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.    To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.    To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.    To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____    DATE: 5-6-05

# PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

Signature of Interviewer

Signature of Witness (person providing statement)

Date: 5-6-05

Place: Washington, D.C.

**Exhibit 16**

Affidavit of Trina F. Petty
Director of Human Resources
Office of Inspector General
May 19, 2005

.

## <u>A F F I D A V I T</u>

**District of Columbia**

**I, Trina F. Petty, hereby affirm under the penalty of perjury and make this statement.**

My name is Trina F. Petty; I am African American, employed as Director of Human Resources, CM-201-1, Office of Inspector General (OIG), Office of Management and Congressional Relations (OMCR), Human Resources Branch (HRB), Washington, D.C. I have been employed in my present position and for the FDIC since May 1999.

My current first line supervisor is Rex Simmons, Deputy Assistant Inspector General for Management and Congressional Relations; and my second line supervisor is Patricia Black, Acting Inspector General, OIG, FDIC. I have worked for both since May 1999.

I knew the Complainant because she worked in the Office of Counsel to the Inspector General (OCIG), and that office works with the HRB quite frequently. I knew of some work the Complainant had done for our office, and also as a customer of the HRB, when she obtained information on benefits. While the Complainant worked in the OCIG, I had no organizational relationship with her. The OCIG worked with the HRB on different personnel issues (including FOIA request issues), and that would be the only relationship I had with the Complainant, but there was nothing in terms of a reporting relationship in a chain of command. I was aware of the Complainant's race by looking at her, and we also maintain race and national origin data used for various reports in this office.

Page 1 of 5                                        Affiant's Initials _____

My only involvement with the Complainant's directed reassignment was that I was advised that a directed reassignment was going to be given to her. Ms. Black, who was then-Deputy Inspector General informed her she was going to be given a directed reassignment. Fred Gibson and I were informed by Ms. Black of her intent to initiate the directed reassignment. Because of my human resources role, I advised Ms. Black as to what needed to be in the directed reassignment letter.

The current duties and responsibilities of the Complainant involve providing customer advisory services to a group of assigned employees in the OIG, on benefits, including retirement counseling, federal and FDIC benefits, any information the employee may need to know in the benefits area. Gloria Hill provides these services for the other assigned group of employees. The Complainant has also taken on responsibility for administering the training and development classes for the OIG employees by registering them for different training classes. She is doing a great job in picking up a new assignment area. Both this position and that of the Paralegal Specialist have a full performance level of CG-11.

At the time of the reassignment I did not know the Complainant was enrolled in a graduate program through the University of Maryland University College, but learned of this after looking at documents she provided me and in a conversation we had about UMUC after she started working in HRB. Since then, I feel that her education is assisting her in the performance of duties in the HRB. Prior to knowing this, I believed that the Complainant's experience had nothing to do with her being placed in this office. Her education would not have qualified her for the CG-11 or anything higher in human resources.

Affiant's Initials

The decision to reassign the Complainant was made by Ms. Black. Mr. Gibson had previously stated that there was not enough paralegal work for her to do in the OCIG. But he did not initiate the directed reassignment. So prior to the directed reassignment, the Complainant was offered an opportunity to come to the HRB and work, and she was told that the Paralegal Specialist position would not be filled when it became vacant.

Between September 23, 2004 and November 30, 2004, there were no other positions in the HRB for which the Complainant would have been qualified. At one point I had a CG-14 vacancy that was advertised because I anticipated another employee leaving, but the Complainant did not qualify for that position. I did not know the Complainant claimed there was another vacant position in the HRB during the time she was being reassigned, because there was no other position for which she could have qualified.

I was aware the Complainant claimed she was not qualified for the position of Human Resources Specialist (Benefits) prior to her being reassigned to the HRB. However, the Complainant's position was going to be labeled as surplus in the OCIG, because there was not enough work for a full time paralegal.

Prior to the Complainant's directed reassignment I raised some concerns that she was not qualified for the position of Human Resources Specialist (Benefits). My concerns were that the Complainant had not worked in Human Resources, and had no experience in this area, let alone in benefits. I asked the Complainant to show me something regarding her experience in addition to her education. In response the Complainant provided me a résumé that reflected her work experience in addition to classes she had taken. However, the document did not reflect any qualifying work

Affiant's Initials _____

experience. There was not enough training to qualify the Complainant at the CG-11 level. After I knew I could not qualify the Complainant based on training and experience, we used the In-Service Placement provisions provided by the Office of Personnel Management (OPM).

These provisions allow an employee to be reassigned at the current grade level and train them during a certain period of time for their new position, so long as there is no positive education requirement for the position. A positive education requirement means the person must have a degree for the position. The position of Human Resources Specialist does not have a positive education requirement. An example of a positive education requirement is for an Auditor or an Attorney because these positions need to have a specific degree.

I asked for a delay in physically placing the Complainant in the HRB, because I had a contractor here doing benefits and other human resources work, and at that time the contractor was leaving at the end of the month, and I did not have a place for her to sit. The reassignment was not delayed, we made it effective, and the Complainant worked from her location in the OCIG.

There are no written policies in place regarding directed reassignment. However, in talking to the Corporation we use the OPM policies on reassignments, which we followed in this process. The Complainant was not reassigned because of her race.

I do not know how the duties and responsibilities the Complainant previously performed in the OCIG are being performed. To my understanding there was no full-time work, so the Complainant may have been performing some paralegal work, and

Affiant's Initials

whatever she was performing has been absorbed by the other staff. I do not know exactly

who is doing what because they have Attorneys and a Legal Technician in the OCIG.

Ms. Stacey is doing a great job since being reassignment to HRB. She has taken

several training classes related to benefits and is very customer-service oriented. She has

been willing to take on new assignments and is an asset to the Branch. I have no further

testimony to provide.

**I have read the forgoing statement consisting of $\underline{5}$ page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.**

_____
                              Trina F. Petty

**Subscribed and sworn before me at** Washington, D.C.

**on this** 19th **day of** May , 2005

_____
**Craig A. Brieske, Investigator**
**US Investigations Services**

Affiant's Initials



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

*Office of Diversity and Economic Opportunity*

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.    To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.    To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.    To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.    To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.    To review your affidavit and make corrections or other changes <u>prior to</u> signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS:_____    DATE: 5/10/2005

## PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
### (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____
Signature of Interviewer

_____
Signature of Witness (person providing statement)

Date: 5/10/2005

Place: FDIC OIG
801 17th St. N.W.
Washington, D.C.

# Exhibit 17

Affidavit of Plaintiff Stacey Sharpe
May 31, 2005

## ADDENDUM TO AFFIDAVIT

District of Columbia                          }

I, Stacey K. Sharpe, under the penalty of perjury hereby affirm and make this statement which is provided as a supplement or addendum to my initial affidavit and is given in rebuttal to the statements made to the investigator by several management officials.

In rebuttal to Mrs. Black's Statement, I hereby aver as follows:

While Mrs. Black states in her affidavit that she does not know how I self-identify my race, my race identification is reflected in my SF-612 (application for employment) which was submitted by me in response to the Paralegal vacancy.  Mrs. Black did interview me for a Paralegal position in 1998, and I would think that my racial self-identification would be obvious to her from that point in time.

Contrary to her statement, the only conversation that I had with Mrs. Black regarding the directed reassignment was based on her request to meet with me.  At that meeting, she presented me with the memorandum directing my reassignment to the Human Resources Branch in Benefits.

Despite Mrs. Black affidavit comment that there was not enough paralegal work to keep me busy, OIG had recently hired additional Criminal Investigators and Auditors.  Based on an increase in both Criminal Investigators and Auditors work output, my work load would have increased as they issue reports that are requested under FOIA and the Privacy Act as one of my main duties as a Paralegal was to process FOIA and Privacy Act requests.

In her affidavit, Mrs. Black states that she spoke to Mr. Gibson and Ms. Petty and they

Page 1 of 5                                                        Initials _SKS_

agreed that I was a good candidate. I did not share the feeling that I was a good candidate for the Benefits job, and that belief was never communicated to me. In fact, Ms. Petty told me that I was not qualified for the Benefits position and would require a lot of training.

My position was the only position identified as "surplus" at the time at issue although a few months earlier the IG Counsel's office hired an attorney who had just recently finished law school and passed the bar. I do not understand how the Counsel's Office can justify having enough work to hire a new attorney with immediate promotion potential to the grade CG-15, and at the same time place me a paralegal on "surplus" status. Moreover, and unbeknownst to me at the time, the IG Counsel's office had promoted that newly hired attorney to the grade 12. Indeed, this same white female lawyer was subsequently promoted to the grade 13 immediately after I was reassigned on the forced detail out of the IG Counsel's office. She and I had worked on several projects as a team. The IG Counsel's office seemed to have enough work to keep this white woman busy and promoted, but not enough to keep me a black woman on. Once "surplus," I requested permission to apply for details to other positions. Mrs. Black rejected one of my requests. In short, neither did Mrs. Black nor did Mr. Gibson assist me in finding employment elsewhere. Instead, they suddenly directed my reassigned to Human Resources into the Benefit's position.

Ms. Petty and I identified the training that I would need to perform the duties of the Benefits position into which I was placed. Mrs. Black seemed to have had no involvement in this at all. While Mrs. Black acknowledges that a CG-14 position was advertised, she does not mention that a Benefit Specialist position was advertised as well. That position had potential to the CG-13. Prior to my placement in the Benefits job, no one mentioned any promotion

Page 2 of 5

Initials _____

potential. In fact, I felt as if that position was a dead end for me. Mrs. Black stated that if I declined the reassignment, I would not have a job.

In rebuttal to Mr. Gibson's statement I hereby aver as follows:

In his affidavit, Mr. Gibson states that he had no involvement in the decision to reassign me. One would think, however, that his input and/or opinion were the basis of the reassignment since he was my first line supervisor. Indeed, it would be surprising if he did not have direct involvement in the decision to reassign me out of the IG Counsel's office.

In his affidavit, Mr. Gibson lists the duties that I performed as a Paralegal Specialist in the Counsel's office and states that he cannot remember any other duties that were assigned to me. In truth, he became my supervisor in 2000 and promoted me to the CG-11 level. Since that point, I performed many duties and assignments at his direction, and he never responded with any signs of disappointment in my work. Indeed, he never told me that I needed to improve in any aspect of my work. Still, he never took the time to assist me with my growth in the office, though he had at one point stated that he would get me more involved with the litigation aspect of responding to complaint filed by Office of Inspector General (OIG) employees against OIG management (*i.e.*, OIG employee relations). That never happened. Instead, Adriana Vosburg, the white female who was a law clerk in the IG Counsel's office at the time -- and for whose benefit an FTE was obtained through my having been made to suffer a directed detail to the Benefits position, was afforded the opportunity to become involved with employee relations assignments in the IG Counsel's Office.

Mr. Gibson also states in his affidavit that he does not know the full performance level of

Page 3 of 5

Initials _____

the Benefits position to which I was sent on the directed detail. However, the woman who occupied that position for the past five years was a CG-12, and it is simply not believable that Mr. Gibson would be unaware of this fact in such a small OIG..

In his affidavit, Mr. Gibson states that he can not really address how my background ties into my current position other than the two HR courses that Counsel's Office approved. In fact, Mr. Gibson can not address how my background ties into my current Benefits position because at the time of my directed detail into that job my background did *not* include any significant knowledge of administering benefits to any OIG employees.

While it may be true as Mr. Gibson states that I never indicated to him that I felt unqualified for the Benefits position, I did communicated that I had interest in employee relations and staffing in an email that I sent to him. Also, in that email, I clearly stated that the Benefits position did not match my skill set. Additionally, while he states in his affidavit that it was his understanding that training would be made available if I took the Benefits position, he never mentioned that to me.

Mr. Gibson states that the reassignment was something that just happened. I do not believe that. The reassignment was based on input provided to Mrs. Black by Mr. Gibson. I believe that he saw the reassignment coming because he needed to move me out of IG Counsel's office to get an FTE for the white Ms. Vosburg. Why else would he attempt to persuade me to take the Benefits position on several occasions before I was forced to take it by directed detail? He even said that if a RIF took place, I had no bumping and retreating rights. I felt harassed and forced to accept the reassignment to the ruination of my career in paralegal work and destruction of my chances for advancement and personal fulfillment..

Page 4 of 5

Initials *JS*

Although, according to Mr. Gibson, there was pressure to downsize significantly, OIG hired several Criminal Investigators and Auditors in this same time frame. Also, the IG Counsel's Office hired an attorney who just recently passed the bar. Still, Mr. Gibson claims to not believe that there was sufficient work that could be performed by a seasoned Paralegal Specialist with an excellent performance record. Incidentally, in order to try to preserve my paralegal-type prospects and to continue to apply my education and training, I even inquired about becoming a Criminal Investigator and getting one of those new jobs in the IG Counsel's office. Mr. Gibson was quick to reject that notion -- giving further proof to the view that I was forced out of the IG Counsel's office -- and sent to OIG's HR shop -- merely in order to make FTE room for a white person..

I have read the foregoing statement, consisting of _5_ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3/st day of May 2005.

Stacey K. Sharpe

# Exhibit 18

August 24, 2004
E-Mail message from Plaintiff to Mr. Frederick Gibson

Petty, Trina F.

| | |
|---|---|
| **From:** | Sharpe, Stacey K. |
| **Sent:** | Tuesday, August 24, 2004 5:20 PM |
| **To:** | Gibson, Fred W. |
| **Cc:** | Petty, Trina F. |
| **Subject:** | Transfer |

After careful consideration of the proposed transfer to the Benefits Unit of the Human Resources (HR) Section, I have concluded that to transfer under the proposed conditions would not be the best utilization of my skill set. Although Human Resources is an area of interest, I feel that the optimal use of my current skills would be in the Employee Relations and/or Classification Unit, of which a vacancy also exists. While I understand that each employee in HR will be expected to handle two different areas, I was informed that my areas of responsibility would be benefits and processing. Because, I feel, my skills as well as my interests are better suited for employee relations and/or classification, I prefer not to accept a transfer to the Benefits Unit within HR at this time.

Thank you for your consideration. I am open and to discuss this matter further if you so desire.

Stacey K. Sharpe

E-48

**Exhibit 19**

Appendix I I I, F.D.I.C. Merit Promotion Plan's Inservice Placement
Provisions

FDIC
Merit Promotion Plan dtd 5/12/44
Circular 2110.21

**APPENDIX III**
**Inservice Placement Provisions**

1. **General.** Inservice placement applicants may meet minimum qualification requirements based on education (including superior academic achievement) and/or experience, as specified in the appropriate U.S. OPM qualification standard. To qualify, the applicant must usually have the same level and type of experience or education that is required for initial appointment. The following special provisions apply to inservice placements:

A. **Minimum educational requirements.** When there is a change to, or addition of, minimum educational requirements to a job series, employees currently classified for that series do not have to meet the new educational requirements (except where separate in-service placement rules are included in the revised standard).

B. The "add-on rule." If an employee qualified for his/her current position by meeting the provisions of the appropriate qualification standard, the agency may "add on" the difference between the length of experience required for the current position and the length of experience required for the proposed position.

C. Modifying experience requirements for certain inservice placement actions:

(1) An agency may determine that an individual can successfully perform the work of a position, even though the individual may not meet all the requirements in the U.S. OPM qualification standards. Agencies may modify the U.S. OPM qualification standards for reassignments, voluntary downgrades, transfers, reinstatements, and repromotions to a grade not higher than a grade previously held when the applicant's background includes related experience that provided the knowledge, skills, and abilities necessary for successful job performance;

(2) This authority is used only when there is a reasonable likelihood that the employee will successfully make the transition to the new position;

(3) This authority is not used for placement to a higher grade nor a position with greater promotion potential, except where the employee previously held a position at that grade level/promotion potential;

(4) The use of a modified standard does not authorize the waiver or disregard of minimum educational, licensure, or certification requirements;

(5) Use of a modified standard should be documented to show that it was intentional and that the assignment did not result from a misinterpretation of the U.S. OPM qualification standards;

(6) When using a modified standard for inservice placement, a structured training program must be made an official part of the performance plan; and

(7) The appropriate method for recruitment for inservice placement includes use of a Solicitation of Interest (SOI). SOIs are not used for placement into positions at a higher grade or positions with higher promotion potential than the employee previously held on a permanent basis in the competitive service.

# Exhibit 20

Affidavit of Trina F. Petty
Deputy Assistant Inspector General
Office of Inspector General
August 15, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STACEY K. SHARPE )
)
Plaintiff, )
)
V. )            C.A. No. 1:06-CV01743 (RBW)
)
SHEILA C. BAIR, Chairman )
Federal Deposit Insurance )
Corporation, )            Date: August 15, 2007
)
Defendant. )
)
)

### Declaration of Trina F. Petty

I, Trina F. Petty, hereby state as follows:

1.   I am Deputy Assistant Inspector General for Management and Chief of Human Resources of the FDIC's Office of Inspector General.  My office is responsible for, among other things, maintaining the training records of the employees of the Office of Inspector General.  Attached to my declaration are the training records maintained by my office in the normal course of business pertaining to the Plaintiff for the period of her employment with the FDIC Office of Inspector

2.   An examination of these training records reveals that FDIC OIG paid for the Plaintiff to attend approximately 21 training courses in personnel related topics between May, 2000 and her transfer to the United States Office of Personnel Management on

April 28, 2007. In addition, between September 2005 and April 28, 2007, the FDIC OIG paid $12,725.26 for tuition and books to the University of Maryland for the Plaintiff to attend graduate level courses. These constituted the course of instruction required for the award of a Master of Science in Management (MSM) degree with a concentration in Human Resources.

3. During graduation ceremonies in May, 2007, the Plaintiff was awarded her MSM degree by the University of Maryland.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 15, 2007.

Trina F. Petty

2

## Cost of Tuition and Books for Stacey Sharpe
## at University of Maryland, University College

| Training Request Number | Course Title | Tuition |
|---|---|---|
| 2006-0576 | Current Perspectives in Training and Development | 1,128.00 |
| 2006-0575 | Program and Project Mgmt | 1,128.00 |
| 2006-0229 | Issue and Practices in Human Resources Management | 1,128.00 |
| 2006-0228 | Strategic Management Capstone | 1,128.00 |
| 2006-0136 | Organizational Development and Change | 1,138.00 |
| 2005-5267 | Human Resources Technology | 1,074.00 |
| 2005-5266 | Financial Decision Making for Managers | 1,074.00 |
| 2205-0559 | Research Methods for Managers | 1,074.00 |
| 2005-0220 | Introduction to Research Methods | 240.00 |
| 2004-4085 | Recruitment and Selection | 1,017.00 |
| 2004-4083 | Job analysis, Assessment, and Compensation | 1,017.00 |
| Total | | 11,146.00 |
| | Books for the above courses at UMUC | 1,579.26 |
| Grand Total | | 12,725.26 |

# OIG Training and Professional Development System

| Sharpe, Stacey K | Select Employee |
| --- | --- |

## Completed Training Requests for Stacey K Harkins

| Training Request Number | Course Title | Vendor | Training Request Status | Start Date | End Date |
| --- | --- | --- | --- | --- | --- |
| 2004-0220 | Basic Employee Relations | U.S. Dept. of Agriculture Grad. School-Government Audit Training Institute | Completed | 7/21/2004 | 7/24/2004 |
| 2004-0219 | Human Resources Management: Introduction | U.S. Dept. of Agriculture Grad. School-Government Audit Training Institute | Completed | 6/16/2004 | 6/18/2004 |
| 2004-0218 | The Business of Compliance and consumer protection | FDIC | Completed | 6/30/2004 | 7/1/2004 |
| 2003-4476 | OIG 2003 Conference: Welcome to Revolutionary Times, DRR, DSC, + The Future of Banking Sessions | Office of Inspector General | Completed | 10/20/2003 | 10/24/2003 |
| 2003-4475 | OIG 2003 Conference: Generations@OIG + Other Diversity Issues Session | Office of Inspector General | Completed | 10/20/2003 | 10/24/2003 |
| 2003-4474 | OIG 2003 Conference: Ethics + Competencies Project Sessions | Office of Inspector General | Completed | 10/20/2003 | 10/24/2003 |
| 2003-4473 | OIG 2003 Conference: Executive Presentation Skills Session | Office of Inspector General | Completed | 10/20/2003 | 10/24/2003 |
| 2003-0267 | ASAP Training Series | American Society of Access Professionals | Completed | 5/12/2003 | 5/14/2003 |
| 2001-0654 | OIG Conference 2001 | FDIC – OIG | Completed | 10/22/2001 | 10/26/2001 |
| 2000-0994 | Legal Skills for Secretaries and Paraleg | U.S. Department of Justice | Completed | 7/26/2000 | 7/30/2000 |
| 2000-0977 | Legal Research and Analysis for Paralega | U.S. Department of Justice | Completed | 6/19/2000 | 6/23/2000 |
| 2000-0973 | Legal Writing and Analysis for Paralegal | U.S. Department of Justice | Completed | 7/31/2000 | 8/4/2000 |
| 2000-0779 | Basic Exam School for Non-Examiners | FDIC | Completed | 2/12/2001 | 2/16/2001 |
| | Diversity Awareness | | | | |

| 2000-0449 | Training | FDIC | Completed | 6/16/2000 | 6/16/2000 |
|-----------|----------|------|-----------|-----------|-----------|
| 2000-0218 | EEO Law Process & Procedures | Government Training Institute | Completed | 5/3/2000 | 5/4/2000 |
| 2000-0058 | 2000 Asap Western Regional Training Conf | American Society of Access Professionals | Completed | 3/5/2000 | 3/8/2000 |
| 1999-0705 | 1999 OIG-Wide Conference | FDIC/OIG | Completed | 9/13/1999 | 9/17/1999 |
| 1999-0590 | Liability Of Federal Agencies For Unlawf | Government Training Institute | Completed | 12/1/1999 | 12/2/1999 |
| 1999-0511 | Reprisal And Retaliation Claims | Government Training Institute | Completed | 10/28/1999 | 10/29/1999 |
| 1999-0370 | Legal Writing For Non-lawyers | USDA GRADUATE SCHOOL | Completed | 6/28/1999 | 6/29/1999 |
| 1998-0653 | Time Management | USDA Graduate School | Completed | 1/27/1998 | 1/27/1998 |
| 1998-0652 | Ability To Analyze And Evaluate | | Completed | 3/24/1998 | 3/24/1998 |
| 1998-0347 | Freedom Of Information Act For Atty | US DEPT OF JUSTICE | Completed | 8/11/1998 | 8/12/1998 |
| 1997-1084 | EEO For Non-Supervisory Employees | FDIC | Completed | 10/30/1997 | 10/30/1997 |
| 1997-1021 | Changing Your Outlook On Email | | Completed | 11/14/1997 | 11/14/1997 |
| 1995-1083 | Skills Building Workshop--Internet | | Completed | 4/6/1995 | 4/6/1995 |
| 1995-1076 | Internet Basics | | Completed | 3/20/1995 | 3/20/1995 |
| 2005-0558 | SPPS Web Training | National Finance Center | Course Canceled by Vendor | 9/27/2005 | 9/27/2005 |
| 2005-0456 | Quickhire | Monster Government Solutions | Completed | 7/27/2005 | 7/29/2005 |
| 2005-0415 | Qualifications Analysis Workshop | U.S. Dept. of Agriculture Graduate School-National Capital Training Center | Completed | 8/1/2005 | 8/3/2005 |
| 2005-0411 | Basic Staffing and Placement | U.S. Dept. of Agriculture Graduate School-National Capital Training Center | Completed | 8/15/2005 | 8/19/2005 |
| 2005-0410 | Customer Service Excellence | U.S. Dept. of Agriculture Graduate School- | Completed | 7/14/2005 | 7/15/2005 |

| | | National Capital Training Center | | | |
|---|---|---|---|---|---|
| 2005-0251 | Entry, Processing, Inquiry and Correction System/History Correction Update Processing System (EPIC/H | National Finance Center | Course Canceled by Vendor | 10/25/2005 | 10/28/2005 |
| 2005-0250 | Workers Compensation and Disability Retirement | U.S. Dept. of Agriculture Graduate School-National Capital Training Center | Course Canceled by Employee's Supervisor | 8/23/2005 | 8/24/2005 |
| 2005-0220 _240._ | Introduction to Research Methods | University of Maryland University College | Completed | 5/31/2005 | 7/26/2005 |
| 2004-4085 _1,017._ | Recruitment and Selection | University of Maryland University College | Completed | 1/24/2005 | 5/12/2005 |
| 2004-4083 _6,017._ | Job Analysis, Assessment, and Compensation | University of Maryland University College | Completed | 1/24/2005 | 5/12/2005 |
| 2004-4082 | The Basics of HR Law | Padgett-Thompson | Completed | 2/2/2005 | 2/2/2005 |
| 2004-4067 | Processing Personnel Actions | U.S. Dept. of Agriculture Grad. School-Government Audit Training Institute | Completed | 3/7/2005 | 3/11/2005 |
| 2004-4066 | FERS Benefits Applications for Personnelists | U.S. Dept. of Agriculture Grad. School-Government Audit Training Institute | Completed | 2/7/2005 | 2/10/2005 |
| 2004-4065 | CSRS Benefits Applications for Personnelists | U.S. Dept. of Agriculture Grad. School-Government Audit Training Institute | Completed | 1/11/2004 | 1/14/2005 |
| 2004-0521 | Basic Employee Benefits for Personnelists | U.S. Dept. of Agriculture Graduate School-National Capital Training Center | Completed | 11/1/2004 | 11/5/2004 |
| Total | 42 Requests | | | | |

# OIG Training and Professional Development System

Sharpe, Stacey K     **Select Employee**

## Training Requests In-Process for Stacey K Sharpe

| Training Request Number | Course Title | Vendor | Training Request Status | Start Date | End Date |
|---|---|---|---|---|---|
| 2006-0576 *1,128.* | Current Perspectives in Training and Development | University of Maryland, University College | Registration Completed - Awaiting Attendance | 1/24/2007 | 5/10/2007 |
| 2006-0575 *1,128.* | Program and Project Management | University of Maryland, University College | Registration Completed - Awaiting Attendance | 1/24/2007 | 5/10/2007 |
| 2006-0363 | Consulting Skills for Human Resources Professionals | U.S. Dept. of Agriculture Graduate School-National Capital Training Center | Registration Completed - Awaiting Attendance | 12/6/2006 | 12/8/2006 |
| 2006-0229 *1,128.* | Issue and Practices in Human Resources Management | University of Maryland, University College | Registration Completed - Awaiting Attendance | 9/5/2006 | 12/19/2006 |
| 2006-0228 *1,128.* | Strategic Management Capstone | University of Maryland, University College | Registration Completed - Awaiting Attendance | 9/5/2006 | 12/19/2006 |
| 2006-0227 | FDIC CORPORATE HUMAN RESOURCES INFORMATION SYSTEM (CHRIS) | FDIC | Registration Completed - Awaiting Attendance | 6/6/2006 | 6/7/2006 |
| 2006-0169 | The 2006 Summit on Strategic Recruitment and Retention for Government Agencies | The Performance Institute | Registration Completed - Awaiting Attendance | 6/12/2006 | 6/14/2006 |
| 2006-0136 *1,138.* | Organizational Development and Change | University of Maryland University College | Registration Completed - Awaiting Attendance | 5/30/2006 | 8/8/2006 |
| 2006-0110 | Selecting Employees | Monster Government Solutions | Registration Completed - Awaiting Attendance | 3/23/2006 | 3/24/2006 |
| 2005-5267 *1,074.* | Human Resources Technology | University of Maryland University College | Registration Completed - Awaiting Attendance | 1/25/2006 | 5/11/2006 |

| 2005-5266 1,074. | Financial Decision Making for Managers | University of Maryland University College | Registration Completed - Awaiting Attendance | 1/25/2006 | 5/11/2006 |
| 2005-0744 | Job Analysis and KSA Examining | U.S. Dept. of Agriculture Graduate School-National Capital Training Center | Registration Completed - Awaiting Attendance | 12/14/2005 | 12/16/2005 |
| 2005-0559 1,074. | Research Methods for Managers | University of Maryland University College | Registration Completed - Awaiting Attendance | 9/3/2005 | 12/20/2005 |
| Total | 13 Requests | | | | |

# Graduate School of Management & Technology - Programs

## Master of Science in Management: Human Resource Management

### Human Resource Management Specialization Description

The Human Resource Management (HRM) specialization is designed for managers who want to increase their understanding of the field. Individuals who intend to become HRM professionals, as well as other managers who plan to supervise staff and need to comprehend the issues, policies, and procedures involved in effectively managing people, will find this program useful. HRM courses provide the theory, research, knowledge, and procedures used by HR executives, generalists, and specialists. The courses examine traditional functions, such as staffing, compensation, training, and change management, plus emerging disciplines, such as human resource information systems and employee security. Workforce diversity, the impact of globalization, and other current issues are included.

### Career Path

The MSM program prepares graduates for a number of entry-, mid-, and high- level positions, as determined by a student's work experience.

Depending on a student's background and an employer's criteria, graduates of the Human Resource Management specialization may qualify for these positions:

- HR Executive
- HR Generalist
- Employee Relations Manager
- Staffing Director
- Compensation Manager
- Director of Human Resource Training and Development
- Organizational Development and Change Consultant

### Requirements

### Recommendations

Students who wish to improve their graduate writing skills may take COMM 600, Academic Writing for Graduate Students (3).

### Core Required Courses

UCSP 611 Introduction to Graduate Library Research Skills (0), to be taken within the first 6 credits of study

- MGMT 610 The Manager in a Technological Society (3)
- MGMT 615 Intercultural Communication and Leadership (3)
- MGMT 640 Financial Decision Making for Managers (3)
- MGMT 650 Research Methods for Managers (3)

Capstone Course: MGMT 670 Strategic Management Capstone (3)

### Clustered Course Option

- MGMT 630 Organizational Theory and Behavior in a Global Environment (6) is a six-credit course. Students who

receive credit for MGMT 630 may not receive credit for MGMT 610 or MGMT 615.

## Core Rules

1. Students must complete 24 credits, including other core requirements, before enrolling in MGMT 670.
2. MGMT 640 and MGMT 650 should not be completed simultaneously.

## Human Resource Management (HRM) Specialization Required Courses

- HRMD 610 Issues and Practices in Human Resource Management (3)
- HRMD 620 Employee Relations (3)
- HRMD 630 Recruitment and Selection (3)
- HRMD 640 Job Analysis, Assessment, and Compensation (3)
- HRMD 650 Organizational Development and Change (3)
- HRMD 651 Current Perspectives in Training and Development (3)
- HRMD 665 Special Topics in Human Resource Management (3)

## Specialization Rules

1. HRMD 610 is recommended as the first specialization course.
2. The courses above are listed in their preferred sequencing.

**Note: Some course names and numbers were updated beginning with the fall 2007 semester. If you began the program prior to fall 2007 and have chosen to follow your original, pre-fall 2007 requirements, you should use the pre-fall 2007 Study Plan for this degree.**

# Exhibit 21

Memorandum, October 26, 2004
F.D.I.C. 2004 Buyout Program and Reductions-in-Force

**Cosgrove, Michael**

| | |
|---|---|
| From: | Bovenzi, John F. |
| Sent: | Tuesday, October 26, 2004 3:08 PM |
| To: | FDIC EMPLOYEES CORPORATE |
| Subject: | Workforce Planning |

MEMORANDUM TO:     All FDIC Employees

FROM:     John F. Bovenzi
Deputy to the Chairman and Chief Operating Officer

SUBJECT:     Buyout Program and Reductions-in-Force

This is the third in a series of communications about workforce planning for the future. In my August 6th message, I set forth several factors that will influence the Corporation's future business model and workforce profile. These factors, which include continued industry consolidation and improved efficiencies within the FDIC primarily through the use of technology, support the conclusion that the FDIC will need to become a smaller agency.

To assess the implications of this conclusion, each division and office was asked to determine if their organizational focus and workforce composition is properly aligned with the current workload and the evolving corporate vision. These analyses have been largely completed, reviewed, discussed with, and accepted by senior management. They fall into two groups.

The first group includes divisions where staffing levels are not justified by current or projected workloads. These divisions are planning for substantial reductions in their workforces. DRR, DIRM, DOA, Legal, and DOF are included in this group. Buyouts are going to be offered to most employees in these divisions. Nevertheless, it appears likely that the necessary staffing reductions in these divisions cannot be accomplished entirely through voluntary departures. Accordingly, we have begun active planning for RIFs in DRR and DIRM in the third quarter of 2005, and in DOA, Legal, and DOF in 2006.

The second group includes the remaining divisions and all of the offices. Staffing levels in these organizations are for the most part justified by current workload. As a result, in DSC, DIR, and the offices, there will be a more limited buyout program. There will not be a RIF in these organizations.

Corporate-wide we estimate a reduction of between 500 to 600 positions from our current on-board workforce of nearly 5,300. These reductions will occur by year-end 2006, with most of the reductions occurring by year-end 2005.

The approved buyout program has the following general parameters:

- A buyout period that will be open from early November 2004 to mid-May 2005 (Eligible DSC employees must submit their buyout applications by December 13, 2004, and leave the Corporation by December 31, 2004);
- A cash payment equal to 50% of total salary;

- Supplemental incentives including, but not limited to, exemption from obligations to repay certain relocation costs and an option to take the buyout as a lump sum or in installments;
- The ability to combine the buyout with either regular or early retirement;
- Employees who accept buyouts would be required to repay the gross amount of the buyout payment if they are re-employed or contract directly with the FDIC within five years following separation (except in exigent circumstances); and
- Management discretion to delay the departures of selected employees for workload reasons.

Eligible employees will start receiving detailed information related to buyouts on or about November 1, 2004, after we have satisfied all bargaining obligations.

Your division or office director will be sending you a more specific message this week detailing the scope of your organization's plans.

I recognize the anxiety and discomfort many of you may be experiencing while reading this message. The notion of undergoing another round of downsizing is troubling to everyone. These actions are necessary to ensure the FDIC is best able to fulfill its mission of maintaining public trust and confidence in the banking system. This public trust comes not only from ensuring the safety and soundness of the industry, but also from maintaining and managing the deposit insurance funds in a responsible manner. As FDIC employees, it is our responsibility to operate as effectively and efficiently as possible, thereby maximizing preservation of the funds and their availability to absorb losses resulting from institution failures. While difficult to accept, pursuing the restructuring activities outlined in this message is both necessary and consistent with our role as fiduciary of the deposit insurance funds.

As it has in the past under similar circumstances, the FDIC will take a variety of steps, including providing outplacement services and career counseling, to help provide a smooth transition for affected employees.

**Exhibit 22**

EEO Counselor's Report
October 27, 2004

**Federal Deposit Insurance Corporation**
Room 891-1231, 3501 N. Fairfax Drive, Arlington, VA 22226-3500     Office of Diversity and Economic Opportunity

## EEO COUNSELOR'S REPORT
### AGENCY DOCKET NUMBER FDICEO-050002

**A.    AGGRIEVED PERSON**

| | |
|---|---|
| Name: | Stacey Sharpe |
| Job Title/Series/Grade: | Human Resources Specialist, CG-0201-11 |
| Office/Division: | Office of the Inspector General |
| Work Address: | 801 17th Street, Room 905 |
| | Washington, DC 20434 |
| Work Phone No.: | 202-416-4059 |
| Home Address: | 11820 Capstan Drive |
| | Upper Marlboro, Maryland 10722 |
| Home Phone No.: | 301-574-4543 |
| Email Address: | ssharpe@fdic.gov |

**B.    AGGRIEVED PERSON'S REPRESENTATIVE (if applicable) N/A ( )**

| | |
|---|---|
| Attorney: Yes (X)   No ( ) | |
| Name: | David H. Shapiro |
| | Swick & Shapiro, P.C. |
| Address: | 1225 I Street, NW, Suite 1290 |
| | Washington, DC 20005 |
| Phone: | 202-842-0300 |
| Email: | dhshaprio@swickandshapiro.com |

**C.    COMPLAINT INFORMATION**

**Complaint is:**   An Individual Complaint (X)   A Class Action ( )
**Aggrieved Person Waived Anonymity: Yes (X)   No ( )**
**Negotiated Union Grievance Filed: Yes ( )   No (X)**
**For Mixed Cases - Appeal Filed (or to be Filed) with MSPB: Yes ( )   No (X)   N/A ( )**
**Has Aggrieved Person Filed Prior Complaint(s)? Yes ( )   No (X)**
        If so, Docket Number(s) FDICEO-

**D.    CHRONOLOGY OF EEO COUNSELING:**

| | |
|---|---|
| **Date of Initial Contact:** | October 27, 2004 |
| **Date of Initial Interview:** | October 27, 2004 |
| **Date of Occurrence of Alleged Discriminatory Event:** | September 23, 2004 |
| **45th Day after Event (or Knowledge of Event):** | November 7, 2004 |
| **If contact is beyond the 45th day, explain the reason for the delay:** | Not applicable |
| **Date Notice of Rights and Responsibilities issued:** | October 27, 2004 |
| **Date Election of Informal Processing Procedure:** | October 29, 2004 |
|         Mediation [X]   Counseling [ ] | |

Date of Extension of Counseling: October 29, 2004      90th Day:      January 25, 2005    N/A ( )
Date of Final Interview:                                                   January 24, 2005
Date Notice of Right to File a Formal Complaint issued:                    January 24, 2005

## E.    BASIS(ES) FOR ALLEGED DISCRIMINATION:

1   (X) Race (specify)  Black
2   ( ) Color (specify)
3   ( ) National Origin (specify)
4   ( ) Sex (specify)
5   ( ) Age (date of birth)
6   ( ) Mental Disability (specify)
7   ( ) Physical Disability (specify)
8   ( ) Religion (specify)
9   ( ) Reprisal (opposed practice(s), or docket number(s) of prior complaint(s), and date(s))
        See Section C
10  ( ) Sexual Orientation
11  ( ) Parental Status (specify)
12  ( ) Genetic Information (specify)

## F.    ISSUE(S): (actions, decisions, policies or practices alleged to be discriminatory)

( ) Appointment/Hire, Assignment of Duties ( ), Awards ( ), Conversion to Full Time ( ),
Disciplinary Action – Demotion ( ), Disciplinary Action – Suspension ( ), Disciplinary Action –
Removal ( ), Disciplinary Action – Other(specify) ( ), Duty Hours ( ), Evaluation Appraisal ( ),
Examination Test ( ), Harassment – Non-Sexual ( ), Harassment – Sexual ( ), Medical
Examination ( ), Pay Including Overtime ( ), Promotion ( ), Non-Selection ( ), Reassignment –
Denied ( ), Reassignment – Directed (X), Reasonable Accommodation ( ), Reinstatement ( ),
Retirement ( ), Termination ( ), Terms/Conditions of Employment ( ), Time and Attendance ( ),
Training ( ), Other (explain):

## G.    REMEDY REQUESTED:

1. A Human Resources Specialist position with the OIG, grade 12/13
2. Attorney fees.

## H.    SUMMARY OF COUNSELOR'S INQUIRY:

### (1) Aggrieved Person:

Ms. Stacey Sharpe, the Aggrieved Person ("AP") alleges discrimination on the
basis of race (Black) when on September 23, 2004 she was informed that she would
be reassigned from her current position of Paralegal Specialist, CG-0950-11 in the
Office of the Counsel to the Inspector General to the position of Human Resources
Specialist, CG-0201-11 in the Office of Management and Congressional Relations,

B-2

Human Resources Branch effective October 17, 2004. AP stated that she was informed that if she declined the offer, she would be separated from the federal government for failure to accept a directed reassignment.

AP stated that even though management gave the reason for the management directed reassignment as a decrease in the workload and felt there was a good business reason to eliminate the paralegal position, she believes that her position was eliminated to create a permanent position for a white female (Adrina Vossberg). AP stated that OIG management totally disregarded that she has a four year degree in Paralegal studies and has worked her way up from a Legal Clerk to a Paralegal and put her in a position where her skill set will not be utilized. AP stated that when she was requested to take the HR Specialist (Benefits) position, there was another HR position available that was more related to her skill set but she was denied that position.

**(2) Involved Manager(s) Response:**

Patricia Black, Deputy Inspector General, Office of the Inspector General 801 17th Street, Room 801-1025 Washington, DC 20434 Telephone Number: 202-416-2474

Fred Gibson, Counsel to the Inspector General, Office of the Inspector General 801 17th Street, Room 801-1022 Washington, DC 20434 Telephone Number: 202-416-2917

**(3) Documents Reviewed (if any):**

## I. SUMMARY OF INFORMAL RESOLUTION ATTEMPT:

Settlement:    Yes ( )    Date:      No (X)

Through: Counseling_____, Mediation    X____

Withdrawal:   Yes ( )    Date:      No (X)

Gaye T. Walker_____              202-416-2597____
**Name of EEO Counselor (printed)**           **Telephone Number**

801 17th Street, NW, Room 801-1238 Washington, DC 20434
Work Address

_Signature_

EEO Counselor's Signature                   January 24, 2005
                                            Date

B-3

# FDIC
**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

## ELECTION OF INFORMAL PROCESSING PROCEDURE

### Agency Docket Number FDICEO-_050002_

1. I hereby elect to process the matter on which I contacted the EEO Counselor through the:

    a. . EEO Counseling procedure _____         .

       OR

    b. FDIC Mediation Program ____x____

2. I understand that my election, as indicated above, is final. If resolution is not reached under the process I elected above, I will be issued a Notice of Right to File A Formal Discrimination Complaint.

3. I understand that if I elect to proceed in the EEO Counseling procedure, the EEO Counselor must hold a final interview with me within thirty (30) calendar days of the date from my initial contact with the Office of Diversity and Economic Opportunity, unless I consent to an extension of time, not to exceed sixty (60) calendar days. If resolution is not reached within thirty (30) calendar days or the extension time period, then the EEO Counselor must hold a final interview with me and I will be issued a Notice of Right to File a Formal Discrimination Complaint.

4. I acknowledge that if I elected to participate in the FDIC Mediation Program, I have also signed the Agreement to Mediate and Extend Counseling form, and have returned the signed and completed form to the EEO Counselor indicated below, at the same time that I am returning this form. I understand that if I do not return the Agreement to Mediate form within five calendar days from the date of the initial interview, then EEO Counseling will be conducted.


_Stacey Sharpe_
Stacey Sharpe

_October 29, 2004_
Date

Please sign and return this form via facsimile to (202) 416-2520 and send the original to Gaye T. Walker, EEO COUNSELOR, OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY, FDIC, ROOM 801-1238, 3501 N. Fairfax Drive, Arlington, VA 22226-3500.

Reviewed 03/2004

B-4

**FDIC**

**Federal Deposit Insurance Corporation**
Room 801-1231, 3501 N. Fairfax Drive, Arlington, VA 22226-3500

## RIGHTS AND RESPONSIBILITIES OF INDIVIDUALS IN THE EEO PROCESS

### Agency Docket Number: FDICEO- 05 0002

In accordance with EEOC regulations at 29 C.F.R. part 1614, your rights and responsibilities in the EEO complaint process are as follow:

1. **EEO Counseling.** If you believe that you have been discriminated against on the basis of race, color, age (40 or older), religion, sex (including pregnancy and sexual harassment), national origin, disability (physical or mental), sexual orientation, parental status, or genetic information, or that you have been retaliated against for engaging in EEO activity, you must contact an Equal Employment Opportunity ("EEO") Counselor within forty-five (45) calendar days of the date of the alleged discriminatory incident, or of the date you learned of, or reasonably should have know of the alleged discriminatory event. If the discriminatory incident involves a personnel action, you must contact an EEO counselor within forty-five (45) calendar days of the effective date of the personnel action.

   You have the right to remain anonymous during the informal EEO counseling process, unless you elect to participate in the FDIC Mediation Program, or you waive the right to anonymity.

   You have the right to representation throughout the complaint process, including at the EEO counseling stage. If you retain an attorney or any other person to represent you, you **must** provide written notification to the FDIC, and to the Equal Employment Opportunity Commission ("EEOC"), if a formal complaint is also before the EEOC. (Designation of Representative form is attached for your use.) The EEO Counselor is not an advocate for either you or the agency, but acts strictly as a neutral in the EEO process.

   You have the right to seek resolution of your claim through either the EEO counseling process or the FDIC Mediation Program, but not both. Your election is final.

   If you elect the EEO Counseling Procedure, the EEO Counselor has thirty (30) calendar days from the date of your initial contact with the Office of Diversity and Economic Opportunity ("ODEO") to conduct an inquiry and attempt to resolve your claim. If your claim is not resolved within thirty (30) calendar days from the date of initial contact with ODEO, you may elect to either continue or end EEO counseling. If EEO counseling is continued, then a written and signed agreement to extend counseling for up to an additional sixty (60) calendar days will be executed. If EEO counseling is terminated, then a Notice of Right to File a Formal Discrimination Complaint ("NRTF") will be issued.

Reviewed 03/2004

B-5

FDIC – Rights and Responsibilities of Individuals
in the EEO Process

2.  **Mediation.** If you elect to participate in the EEO Mediation Program during the informal Counseling stage of the EEO process, you must complete and sign the Agreement to Mediate and Extend EEO Counseling form. If this form is not completed and returned within five (5) calendar days from the date you receive it, your right to mediation will be deemed waived and your claim will be processed through the EEO counseling procedure.

   If you timely request mediation, but your claim is not resolved through the EEO Mediation Program, the NRTF will be issued to you within ninety (90) calendars day of the date of your initial contact with ODEO. The issuance of the NRTF does not preclude you from continuing to pursue resolution of your claim through the EEO Mediation Program, or from filing a formal complaint through the administrative EEO complaint process. Additional information about the FDIC Mediation Program is available in the booklet titled "FDIC Mediation Alternatives in the EEO Complaint Resolution Process."

3.  **A Formal Complaint under the Administrative EEO Complaint Process.** If you file a formal complaint under the Administrative EEO Complaint Process, your complaint must be filed _within 15 calendar days_ of receiving the NRTF from the EEO Counselor. The NRTF will provide specific instructions relating to the filing of a formal complaint.

   After you file a formal complaint, and the claim in your formal complaint is identified and accepted, the FDIC will investigate your complaint. The investigation is to be completed within 180 calendar days from the filing date of your formal complaint, unless there is a written agreement to extend the investigation for not more than ninety (90) calendar days. When a formal complaint has been consolidated with one or more earlier complaints, the FDIC is to complete the investigation within the earlier of 180 calendar days after the filing of the last complaint, or 360 calendar days after the filing of the first complaint.

   Once the investigation of your complaint is completed, you have the right to participate in the EEO Mediation Program during the formal stage of the administrative EEO complaint process. If resolution is not reached, or you choose not to participate in the EEO Mediation Program, you may request a hearing before an EEOC Administrative Judge (except for a mixed case complaint, or a case alleging discrimination based on sexual orientation, parental status or genetic information), or request a Final Agency Decision without a hearing.

   You also may request a hearing before an EEOC Administrative Judge (except in a mixed case complaint or a case alleging discrimination based on sexual orientation, parental status or genetic information) 180 calendar days after you file your formal complaint, or within thirty (30) calendar days after you receive the completed report of the investigation, whichever comes first. When two or more formal complaints have been consolidated, you may request a hearing before an EEOC Administrative Judge at any time after 180 calendar days of the filing of the first formal complaint.

Reviewed 03/2004

B-6

FDIC – Rights and Responsibilities of Individuals
in the EEO Process

Your request for a hearing must be submitted to the EEOC District Office listed below:

EEOC Washington Field Office
1400 L Street, NW, Suite 200
Washington, DC 20005
Telephone Number: 202-275-7377

You also must send a copy of your hearing request to the FDIC, and certify to the EEOC that a copy of the hearing request was sent to the FDIC. Your correspondence to the FDIC must be addressed to the following Agency Official:

FEDERAL DEPOSIT INSURANCE CORPORATION
OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
ATTN: ANNA H. MERGELE, CHIEF
COMPLAINTS PROCESSING BRANCH
ROOM 801-1231
3501 N. FAIRFAX DRIVE
ARLINGTON, VA 22226-3500

You also have the right to request a Final Agency Decision without a hearing, after the investigation has been completed.

4. **Mixed Cases.** If your claim is appealable to the Merit Systems Protection Board ("MSPB"), you have the right to file a mixed case complaint with ODEO, or a mixed case appeal with MSPB, but not both. In a mixed case complaint, the investigation and final agency decision must be completed within 120 calendar days from the filing date of the complaint. You must file a MSPB appeal within thirty (30) calendar days of the effective date of the action being appealed, or within thirty (30) calendar days of the date you received the agency's decision.

5. **Age Discrimination Complaints.** When age is alleged as a basis for discrimination, you have the right to file a civil lawsuit in U.S. District Court thirty (30) days after you have filed a Notice of Intent to Sue with the agency, or you may file a formal EEO complaint under the administrative EEO Complaint process pursuant to 29 C.F.R. § 1614, but not both.

6. **Equal Pay Act Complaints.** When sex-based wage discrimination is alleged, you have the right to immediately file a civil lawsuit in U.S. District Court under the Equal Pay Act, or you may file an EEO complaint under the administrative EEO Complaint process . If you file an EEO complaint under the administrative EEO Complaint process, however, you must file a civil lawsuit in U.S. Federal District Court within two (2) years of the date of the alleged discriminatory act, or within three (3) years, if the alleged discriminatory act is

Reviewed 03/2004

B-7

intentional. If you do not file a lawsuit within those timeframes, you may lose your right to go to court.

7. **Class Complaints.** If you are seeking EEO counseling as a class agent or representative, you must inform the EEO counselor of this and clearly indicate that you intend to file a class complaint. As with individual EEO counseling, you must seek counseling within forty-five (45) days of the alleged discriminatory event, or within forty-five (45) calendar days of the date that you knew or reasonably should have known of the alleged discriminatory event or personnel action. If the complaint involves a personnel action, you must seek counseling within forty-five (45) calendar days of the effective date of the personnel action.

If EEO counseling of your class complaint is not completed within thirty (30) calendar days from the date of initial contact, the counseling period may be extended up to an additional sixty (60) calendar days. A class complaint must be signed by the class agent or class representative and must identify the policy or practice adversely affecting the class, as well as the specific action or policy affecting the class agent. Within thirty (30) days of the FDIC's receipt of a class complaint, the FDIC will designate an Agency Representative and forward the class complaint, with a copy of the EEO Counselor's Report and other relevant information, to the EEOC. The EEOC will certify or dismiss the class complaint. If the class complaint is dismissed, you have the right to file an individual formal EEO complaint.

8. **Civil Actions.** You have the right to file a civil lawsuit in U.S. District Court 180 calendar days after filing a formal complaint, or 180 calendar days after filing an administrative appeal with EEOC, if no final decision has been rendered by the FDIC or EEOC – except for complaints filed under the Equal Pay Act (see Section 6 above), and complaints filed on the basis of sexual orientation, parental status and genetic information.

9. **Your Responsibilities.** It is your duty to keep the FDIC and the EEOC informed of your current mailing address and to serve copies of hearing requests and appeal papers on the FDIC as indicated:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> ATTN: ANNA H. MERGELE, CHIEF
> COMPLAINTS PROCESSING BRANCH
> ROOM 801-1231
> 3501 N. FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500

It is your duty to mitigate damages. If you were an applicant for a position at the FDIC who was not selected, or a former FDIC employee whose employment was terminated, you must use your best efforts to obtain employment comparable to the position at the FDIC that you sought, or that you lost.

Reviewed 03/2004

B-8

FDIC – Rights and Responsibilities of Individuals
in the EEO Process

Your rejection of an offer of resolution made by the FDIC pursuant to 29 C.F.R. § 1614.109(c) may limit the amount of attorney's fees or costs that you can recover.[1]

Please sign and return a copy of this form via facsimile to (202) 416-2520. Mail or hand-deliver the original to:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> ATTN: GAYE T. WALKER, EEO COUNSELOR
> ROOM 801- 1238
> 3501 N. FAIRFAX DRIVE
> ARLINGTON, VA  22226-3500

If you have any questions, please call Susan Berman, Chief, Informal Cases Processing Section at: (202) 416-2148, or Mike Moran, Chief, Formal Complaints Processing Section at: (202) 416-2014.

Stacey Sharpe

_Stacey K. Sharpe_

Signature of the Aggrieved Person

_October 28, 2004_

Date

---

[1] Attorney's fees or costs are not recoverable for administrative complaints filed under the Age Discrimination in Employment Act and the Equal Pay Act.

Reviewed 03/2004                      Page 5 of 5

B-9

**Federal Deposit Insurance Corporation**
# FORMAL COMPLAINT OF DISCRIMINATION
### Agency Docket Number FDICEO-050002

| **⬅ Note: This form is to be used if you believe you have been discriminated against because of race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information. Read carefully the Instructions of page 3 of this form prior to completion.** | | |
|---|---|---|
| **Name of Complainant** *(Last, First, MI)* | **Position** *(Job Title/ Pay Plan/ Series/ Grade)* | **Individual ☐    Class ☐** *(Check type of complaint)* |

| **Home Address** *(Number Street, City, State, Zip Code)* | **Home Phone** *(Area Code-Number):* |
|---|---|
| | **Work Phone** *(Area Code-Number):* |
| | **Fax Number** *(Area Code-Number):* |
| | **E-mail Address:** |
| **Organization Location/ Work Address** *(Division/ Office & Number Street, Room No., City, State, Zip Code)* | **Name & Address of Office you believe discriminated against you** *(Division/ Office & Number Street, Room No., City, State, Zip Code)* |

| **Complainant's Representative** *(If applicable)* | **Attorney: ☐ YES    ☐ NO** *(Check appropriate box if applicable)* |
|---|---|
| **Representative's Name:** | **Name of Firm** *(If applicable):* |
| **Address** *(Number Street, City, State, Zip Code)* | **Designation of Representative Form Completed and Attached** <br> **☐ YES    ☐ NO** |
| | **Phone** *(Area Code-Number):* |
| | **Fax Number** *(Area Code-Number):* |

**Type(s) of Allegation(s) ("X" appropriate box(es) and specify)**

| ☐ RACE *(Specify)* | ☐ DISABILITY *(Specify)* | ☐ GENETIC INFORMATION *(Specify)* | ☐ REPRISAL *for participating in any stage of an administrative or judicial proceeding covered by the antidiscrimination complaint statutes or for opposing any practice made unlawful by such statutes (Specify the protected activity and date).* |
|---|---|---|---|
| ☐ COLOR *(Specify)* | ☐ RELIGION *(Specify)* | ☐ AGE *(Specify date of birth)* <br><br> DOB: | |
| ☐ NATION ORIGIN *(Specify)* | ☐ SEXUAL ORIENTATION | | |
| ☐ Sex *(Specify)* | ☐ PARENTAL STATUS *(Specify)* | | |

**Claim(s) being complained of** *(Check appropriate box(es) and specify the date(s) the alleged discriminatory claim(s) occurred.)*

| Claim(s) | Date | Claim(s) | Date | Claim(s) | Date |
|---|---|---|---|---|---|
| ☐ Appointment/Hire | | ☐ Harassment, non-sexual | | ☐ Reprimand | |
| ☐ Assignment/Duty | | ☐ Harassment, sexual | | ☐ Retirement | |
| ☐ Award | | ☐ Overtime | | ☐ Suspension | |
| ☐ Demotion | | ☐ Promotion | | ☐ Termination | |
| ☐ Disciplinary Action | | ☐ Reassignment/Transfer | | ☐ Time and Attendance | |
| ☐ Evaluation/Appraisal | | ☐ Reduction-In-Force | | ☐ Training | |
| ☐ Expiration of Appointment | | ☐ Reinstatement | | ☐ Working Conditions | |
| ☐ Other *(Specify)*: | | | | | |

| **Have you raised this claim(s) in another forum** *(As a grievance or with the Merit System Protection Board or U.S. District Court)?* **☐ YES    ☐ NO** <br> **If Yes, specify the forum and give the date(s) filed:** | |
|---|---|
| **Have all alleged discriminatory matters in this complaint been discussed with a FDIC EEO Counselor? ☐ YES    ☐ NO** | |
| **Name of EEO Counselor:** | **Date you received the Notice of Right to File a Formal Complaint:** |
| **What corrective action are you seeking?** | |

| **Complainant's Signature** | **Date of Complaint** |
|---|---|

B-10

Federal Deposit Insurance Corporation
## FORMAL COMPLAINT OF DISCRIMINATION
### Agency Docket Number FDICEO-050002

CLAIM NUMBER 1

I believe that I suffered discrimination based on [choose one or more: race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information]
_____, when on_____, [Explain what happened]
        *(Basis(es)*                                    *(Date)*

[Provide names of involved management official(s) and or witnesses]

Plain why you believe the action was discriminatory, e.g. discriminatory statements, others who were treated more favorably, or any other reason(s)]

CLAIM NUMBER 2
[Use same format as for Claim Number 1 above]  Attach additional sheets, if necessary.

deral Deposit Insurance Corporatio
# FOR AL COMPLAINT OF DISCRIMA ON
### Agency Docket Number FDICEO-050002

The purpose of this form is to help you provide information necessary for processing a complaint of discrimination. Although it is erable that you use this form, you are not required to do so; you are not limited to answering the questions on the form if there her information you wish to provide. However, if you do not wish to use the form, your complaint must contain the information requested on the form. Your complaint, whether or not it is on the form, must bear an original signature. Each claim must have been discussed with a FDIC Equal Employment Opportunity (EEO) Counselor.

You should use this form only if you believe you have been discriminated against because of race, color, religion, sex, national origin, age, disability, sexual orientation, or retaliated against by FDIC and have presented the alleged discriminatory matter for informal resolution to an FDIC EEO Counselor within 45 days of the date the alleged discriminatory incident occurred, or if a personnel action, within 45 calendar days of its effective date.

If the alleged discriminatory matter has not been resolved to your satisfaction within 30 calendar days or within the agreed upon extension period, and no notice has been provided within that time, you have a right to file a formal complaint on the 31st day after your initial interview with an FDIC Counselor, or upon expiration of the agreed upon extension period.

The procedures for processing formal complaints of 'discrimination based on sexual orientation, parental status or genetic information differ from the procedures for processing complaints based on race, color, national origin, sex, age, mental disability, physical disability, religion, or reprisal, because the entitlement to file a discrimination complaint based on sexual orientation, parental status, or genetic information is not derived from EEOC regulations. Certain entitlements afforded by EEOC are not available to employees or applicants who raise complaints based on sexual orientation, parental status and genetic information. Specifically, complaints based on sexual orientation, parental status or genetic information cannot be the subject of a hearing before an Administrative Judge of the EEOC, or an appeal to the EEOC.

Upon conclusion of the counseling process, the EEO Counselor will provide you a Notice of Right to File a Formal Complaint. You have 15 calendar days from the date of your receipt of the Notice of Right to File a Formal Complaint to file a formal complaint. This time limit may be extended if you show that you were not notified of the time limit, were not otherwise aware of the time limits, or that you were prevented by circumstances beyond your control from submitting the complaint within the prescribed time limit, r other reasons considered sufficient by the FDIC.

r written complaint should be filed by you or by your designated representative with the Chairman of the FDIC, or Director of ...e Office of Diversity and Economic Opportunity (ODEO), or to the Chief, Complaints Processing Branch (ODEO). The Office of Diversity and Economic Opportunity will acknowledge receipt of the complaint and provide you information regarding the processing of your complaint.

It is your responsibility to keep ODEO informed of your current mailing address, including your whereabouts if you will be away from your current mailing address for several weeks or more. You have the right to have a representative of your own choosing at all stages in the processing of your complaint. Also, it is your responsibility to immediately inform ODEO if you retain counsel or a representative. The designation of a representative must be in writing and include the representative's name, address, and daytime phone number.

If you need help in the preparation of your complaint, you may contact an EEO Counselor. You may also seek help from a representative of your choice.

### PRIVACY ACT STATEMENT

Collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16. This information will be used to determine the timeliness of filing and to investigate and reach a determination regarding a complaint of discrimination. Other uses may include utilization of data for statistical or analytical studies. This information may be disclosed to: (1) the Equal Employment Opportunity Commission when requested in the performance of its authorized duties; (2) a congressional office in response to an inquiry made at the request of the individual to whom the record pertains; (3) the appropriate Federal, State, local agency or representative charged with enforcing or implementing a statute, rule, regulation or order, when it appears there may have been a violation or potential violation of a civil or criminal law or regulation; (4) another Federal agency, or to a court or in an administrative proceeding being conducted by a subpoena; or, (5) an authorized appeal grievance examiner, formal c laints examiner, administrative judge, EEO investigator, arbitrator or the duly authorized official engaged in the investigation o lement of a grievance, complaint or appeal filed by an employee. The completion of this form is voluntary. However, failure t de the requested information may lead to dismissal of your complaint.

R-12

**Exhibit 23**

October 28, 2004
Global E-Mail message on Office of Inspector General Workforce
Planning

.

**Cosgrove, Michael**

| | |
|---|---|
| **From:** | Black, Patricia M. |
| **Sent:** | Thursday, October 28, 2004 9:01 AM |
| **To:** | OIG CORPORATE |
| **Subject:** | OIG workforce planning. |

As you know, the Corporation has issued a series of communications about workforce planning for the future and further downsizing. The latest of these messages came earlier this week in an email message to all FDIC employees from John Bovenzi, Deputy to the Chairman and Chief Operating Officer.

I want to give you up-to-date information about workforce planning for the Office of Inspector General. Our budget for fiscal year 2005, which began October 1, 2004, awaits final congressional action. We currently have temporary funding through November 20, 2004. We expect final approval for the fiscal year 2005 budget which will provide full funding for 160 staff. Our current staffing is just under that number.

Our fiscal year 2006 budget, which begins October 1, 2005, awaits the Chairman's review. We believe our workload supports budgeting for our present staff level in fiscal year 2006. Although FDIC continues to downsize, the Corporation's programs and processes continue, often under contracts. Also, we believe with the continued downsizing, there are added stresses on the Corporation's delivery of services as new processes and technology are rolled out with fewer staff. This is a critical time for the Corporation and the OIG believes its resources remain needed to ensure an efficient and effective rollout. As people leave the OIG through normal attrition, we will examine each situation to see if it is appropriate to replace the loss or eliminate the position.

Consequently, the Office of Inspector General does not anticipate broadly offering buyouts. Gaston is exploring whether it may be appropriate to offer buyouts in limited situations. We also do not plan a reduction-in-force. If anything should change about these plans, we will communicate those changes to you promptly.

**Exhibit 24**

December 17, 2004
Global E-Mail message: Announcement of Office of Inspector
General Buyout Plan

**Cosgrove, Michael**

| | |
|---|---|
| **From:** | Black, Patricia M. |
| **Sent:** | Friday, December 17, 2004 3:39 PM |
| **To:** | OIG CORPORATE |
| **Subject:** | OIG Limited Buyout Plan |

**Attachments:** OIG 2005 Limited Buyout Plan.doc

This is in follow-up to my October 28 email where I informed you that while the Office of Inspector General did not anticipate broadly offering buyouts, Gaston was exploring whether it may be appropriate to offer buyouts in limited situations. We have now determined that the OIG will offer a limited number of buyouts. OIG employees assigned to one of the following positions will be eligible for the buyout and, if applicable, early retirement.

(1) Any OIG employee in a position that has been designated surplus (the OIG Human Resources Branch will notify each employee in such a position with an email no later than Tuesday, December 21).

(2) Any OIG employee in a position designated incumbent only (the OIG Human Resources Branch will notify each employee in such a position with an email no later than Tuesday, December 21).

(3) Other Office of Audit employees, not to exceed a cap of 10 and excluding employees hired by OA from bank examination backgrounds since January 1, 2001, at the following series and grade levels:
- Series 511 and 343 at CG-12 and 13.
- Series 2210 at CG-13 and 14.

If more than 10 applications are received from those in category (3), OIG management reserves the right to require employees who have applied to enter into an Employee Separation Agreement setting a separation date that employees will be held to absent extreme hardship or extraordinary circumstances.

We intend to use Employee Separation Agreements to ensure fairness to any person in category (3) whose buyout application cannot be approved because of the cap limitation. The applications will be logged into the OIG Human Resource Branch in room 906 at the 801 Building in Washington in the order they are received.

Individuals who have not been included in this buyout and early retirement offer are in positions that the OIG deems essential for its operations and would need to be replaced at their grade and job series.

Applications for the buyout, which you can find on the FDIC 2004 Buyout Website, will be accepted from January 10 (starting at 8:00 a.m., Eastern Time) through March 21, 2005 (no later than 4:00 p.m., Eastern Time). Field staff can fax the signed and dated statement of intent to the OIG Human Resources Branch at (202) 416-2968 and mail the original for later delivery. The time of the fax will be used to establish the order of receipt. Headquarters staff should hand deliver their statement unless advance arrangements are made with and agreed to by our HR Branch. The earliest departure date for approved buyout applicants is January 22, 2005. The last day for departure will be April 2, 2005. The attached document provides additional instructions. Further information is posted on FDIC's 2004 Buyout Website.



OIG 2005 Limited
Buyout Plan.d...

**Exhibit 25**

Plaintiff's Formal EEO Complaint
February 11, 2005

**Federal Deposit Insurance Corporation**
**FORMAL COMPLAINT OF DISCRIMINATION**
Agency Docket Number FDICEO-050002

OFFICE OF DIVERSITY
AND ECONOMIC OPPORTUNITY

FEB 11 2005

**Note: This form is to be used if you believe you have been discriminated against because of race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information. Read carefully the instructions of page 3 of this form prior to completion.**

| Name of Complainant *(Last, First, MI)*<br>Sharpe, Stacey K. | Position *(Job Title/ Pay Plan/ Series/ Grade)* | Individual ☑  Class ☐<br>*(Check type of complaint)* |
|---|---|---|

| Home Address *(Number Street, City, State, Zip Code)*<br>11820 Capstan Drive<br>Upper Marlboro, MD 20772 | Home Phone *(Area Code-Number):* 301-574-4543 |
|---|---|
| | Work Phone *(Area Code-Number):* 202-416-4059 |
| | Fax Number *(Area Code-Number):* |
| | E-mail Address: sharpe11820@comcast.net |

| Organization Location/ Work Address<br>*(Division/ Office & Number Street, Room No., City, State, Zip Code)* | Name & Address of Office you believe discriminated against you *(Division/ Office & Number Street, Room No., City, State, Zip Code)* |
|---|---|

| Complainant's Representative *(If applicable)* | Attorney: ☑ YES   ☐ NO *(Check appropriate box if applicable)* |
|---|---|
| Representative's Name: David H. Shapiro | Name of Firm *(If applicable):* Swick & Shapiro, P.C. |
| Address *(Number Street, City, State, Zip Code)*<br>1225 Eye Street, N.W.<br>Suite 1290<br>Washington, D.C. 20005 | Designation of Representative Form Completed and Attached<br>☑ YES   ☐ NO |
| | Phone *(Area Code-Number):* 202-842-0300 |
| | Fax Number *(Area Code-Number):* 202-842-1418 |

**Basis(es) of Allegation(s) *("X" appropriate box(es) and specify)***

☑ RACE *(Specify)* African-American
☐ DISABILITY *(Specify)*
☐ GENETIC INFORMATION *(Specify)*
☐ REPRISAL *for participating in any stage of an administrative or judicial proceeding covered by the antidiscrimination complaint statutes or for opposing any practice made unlawful by such statutes (Specify the protected activity and date).*

☐ COLOR *(Specify)*
☐ RELIGION *(Specify)*

☐ NATION ORIGIN *(Specify)*
☐ SEXUAL ORIENTATION
☐ AGE *(Specify date of birth)*
DOB:

☐ Sex *(Specify)*
☐ PARENTAL STATUS *(Specify)*

**Claim(s) being complained of** *(Check appropriate box(es) and specify the date(s) the alleged discriminatory claim(s) occurred.)*

| Claim(s) | Date | Claim(s) | Date | Claim(s) | Date |
|---|---|---|---|---|---|
| ☐ Appointment/Hire | | ☐ Harassment, non-sexual | | ☐ Reprimand | |
| ☐ Assignment/Duty | | ☐ Harassment, sexual | | ☐ Retirement | |
| ☐ Award | | ☐ Overtime | | ☐ Suspension | |
| ☐ Demotion | | ☐ Promotion | | ☐ Termination | |
| ☐ Disciplinary Action | | ☑ Reassignment/Transfer | | ☐ Time and Attendance | |
| ☐ Evaluation/Appraisal | | ☐ Reduction-In-Force | | ☐ Training | |
| ☐ Expiration of Appointment | | ☐ Reinstatement | | ☐ Working Conditions | |
| ☑ Other *(Specify):* Mgmt directed reassignment | | | | | |

| Have you raised this claim(s) in another forum *(As a grievance or with the Merit System Protection Board or U.S. District Court)*? ☐ YES  ☑ NO |
|---|
| If Yes, specify the forum and give the date(s) filed: |
| Have all alleged discriminatory matters in this complaint been discussed with a FDIC EEO Counselor? ☑ YES  ☐ NO |
| Name of EEO Counselor: Gaye T. Walker | Date you received the Notice of Right to File a Formal Complaint: 1/31/05 |

**What corrective action are you seeking?**
Reassignment to a different field in HR work -- e.g., Employee Relations, Staffing, Position Classification -- but not Benefits, ideally in FDIC's HR Department not in the OIG HR (although I would work in OIG HR if a different field was offered). Attorneys fees and expenses.

| Complainant's Signature *Stacey K. Sharpe* | Date of Complaint February 11, 2005 |
|---|---|

FDIC 2710/01 (Reviewed 03/2004)    *(See Page 3 for Instructions in Completing Form and Privacy Act Statement)*    Page 1 of 3

**Federal Deposit Insurance Corporation**
**FORMAL COMPLAINT OF DISCRIMINATION**
**Agency Docket Number FDICEO-050002**

**CLAIM NUMBER 1**

I believe that I suffered discrimination based on [choose one or more: race, color, national origin, sex, age, mental disability, physical disability, religion, reprisal, sexual orientation, parental status, or genetic information]

Race discrimination _____, when on October 17, 2004 _____, [Explain what happened]
    *(Basis(es))*                                *(Date)*

The Office of Inspector General directed my transfer from the CG-11 Paralegal Specialist position in the Office of Counsel to the Inspector General -- which I had held (with good performance evaluations) since 1998, first as a CG-7 and later as a CG-9 (promotion in 1999) and as a CG-11 since 2000 -- into a CG-11 Human Resources Specialist job, CG-11, with an assignment in Benefits in the Human Resources branch of the Office of Inspector General. This directed reassignment was effective on October 17, 2004, but I was informed in writing on September 23, 2004.

[Provide names of involved management official(s) and or witnesses]
    Fred Gibson, the Counsel to the Inspector General
    Patricia Black, the Deputy to the Inspector General and now Acting Inspector General
    Gaston Gianni, FDIC's Inspector General (now retired)

[Explain why you believe the action was discriminatory, e.g. discriminatory statements, others who were treated more favorably, and/or any other reason(s)]
    Fred Gibson (white male), my immediate supervisor, and Patricia Black (white female), the Deputy to the Inspector General, and Gaston Gianni, FDIC's Inspector General -- wanted my permanent slot for Adriana Vosburg, a young white woman who recently graduated from law school and had been serving on a temporary appointment (and had previously served as a law clerk in the OIG Counsel's office. Having declined the suggestion that I transfer to HR in the benefits area, where I had no background, I was forced to take the job -- which was vacant at the time. I understand that my new boss, Trina Petty (B/F), the OIG HR Director, did not feel that I was qualified for the job -- and that even her request to wait two weeks for my transfer was denied by upper OIG management. Prior to my departure from Counsel's Office, Theresa Fewell, Legal Asst. (B/F) had enrolled to study paralegal courses, which were approved by management.

**CLAIM NUMBER 2**
[Use same format as for Claim Number 1 above. Attach additional sheets, if necessary.

## Federal Deposit Insurance Corporation
## FORMAL COMPLAINT OF DISCRIMINATION
### Agency Docket Number FDICEO-050002

The purpose of this form is to help you provide information necessary for processing a complaint of discrimination. Although it is preferable that you use this form, you are not required to do so; you are not limited to answering the questions on the form if there is other information you wish to provide. However, if you do not wish to use the form, your complaint must contain the information requested on the form. Your complaint, whether or not it is on the form, must bear an original signature. Each claim must have been discussed with a FDIC Equal Employment Opportunity (EEO) Counselor.

You should use this form only if you believe you have been discriminated against because of race, color, religion, sex, national origin, age, disability, sexual orientation, or retaliated against by FDIC and have presented the alleged discriminatory matter for informal resolution to an FDIC EEO Counselor within 45 days of the date the alleged discriminatory incident occurred, or if a personnel action, within 45 calendar days of its effective date.

If the alleged discriminatory matter has not been resolved to your satisfaction within 30 calendar days or within the agreed upon extension period, and no notice has been provided within that time, you have a right to file a formal complaint on the 31st day after your initial interview with an FDIC Counselor, or upon expiration of the agreed upon extension period.

The procedures for processing formal complaints of discrimination based on sexual orientation, parental status or genetic information differ from the procedures for processing complaints based on race, color, national origin, sex, age, mental disability, physical disability, religion, or reprisal, because the entitlement to file a discrimination complaint based on sexual orientation, parental status, or genetic information is not derived from EEOC regulations. Certain entitlements afforded by EEOC are not available to employees or applicants who raise complaints based on sexual orientation, parental status and genetic information. Specifically, complaints based on sexual orientation, parental status or genetic information cannot be the subject of a hearing before an Administrative Judge of the EEOC, or an appeal to the EEOC.

Upon conclusion of the counseling process, the EEO Counselor will provide you a Notice of Right to File a Formal Complaint. You have 15 calendar days from the date of your receipt of the Notice of Right to File a Formal Complaint to file a formal complaint. This time limit may be extended if you show that you were not notified of the time limit, were not otherwise aware of the time limits, or that you were prevented by circumstances beyond your control from submitting the complaint within the prescribed time limit, or for other reasons considered sufficient by the FDIC.

Your written complaint should be filed by you or by your designated representative with the Chairman of the FDIC, or Director of the Office of Diversity and Economic Opportunity (ODEO), or to the Chief, Complaints Processing Branch (ODEO). The Office of Diversity and Economic Opportunity will acknowledge receipt of the complaint and provide you information regarding the processing of your complaint.

It is your responsibility to keep ODEO informed of your current mailing address, including your whereabouts if you will be away from your current mailing address for several weeks or more. You have the right to have a representative of your own choosing at all stages in the processing of your complaint. Also, it is your responsibility to immediately inform ODEO if you retain counsel or a representative. The designation of a representative must be in writing and include the representative's name, address, and daytime phone number.

If you need help in the preparation of your complaint, you may contact an EEO Counselor. You may also seek help from a representative of your choice.

### PRIVACY ACT STATEMENT

Collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16. This information will be used to determine the timeliness of filing and to investigate and reach a determination regarding a complaint of discrimination. Other uses may include utilization of data for statistical or analytical studies. This information may be disclosed to: (1) the Equal Employment Opportunity Commission when requested in the performance of its authorized duties; (2) a congressional office in response to an inquiry made at the request of the individual to whom the record pertains; (3) the appropriate Federal, State, local agency or representative charged with enforcing or implementing a statute, rule, regulation or order, when it appears there may have been a violation or potential violation of a civil or criminal law or regulation; (4) another Federal agency, or to a court or in an administrative proceeding being conducted by a subpoena; or, (5) an authorized appeal grievance examiner, formal complaints examiner, administrative judge, EEO investigator, arbitrator or the duly authorized official engaged in the investigation or settlement of a grievance, complaint or appeal filed by an employee. The completion of this form is voluntary. However, failure to provide the requested information may lead to dismissal of your complaint.

**Exhibit 26**

Agency Acceptance Letter
February 22, 2005

# FDIC

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

February 22, 2005

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>
# 7002 0860 0004 7269 5804

David H. Shapiro, Esquire
Swick & Shapiro, P.C.
1225 Eye Street, NW, Suite 1290
Washington, DC 20005

|  |  |
|---|---|
| In Reply Refer To: | Stacey K. Sharpe |
| Agency Docket No.: | FDICEO - 050002 |
| Date Filed: | February 11, 2005 |

Subject: <u>Acceptance of Formal Discrimination Complaint</u>

Dear Mr. Shapiro:

This is regarding the formal discrimination complaint filed by Stacey K. Sharpe ("Complainant")[1] against the Federal Deposit Insurance Corporation ("FDIC" or "Agency") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.

Complainant's formal complaint, dated February 11, 2005, and hand delivered to our office on February 11, 2005, is deemed filed on that date.

Complainant initially contacted an Equal Employment Opportunity ("EEO") Counselor on October 27, 2004, alleging discrimination involving the Office of the Inspector General, Washington, DC. Informal EEO counseling was not successful in resolving the claim raised and on January 24, 2005, Complainant was issued a Notice of Right to File a Formal Discrimination Complaint ("NRTF"). The NRTF advised Complainant of the procedures and time limit for filing a formal complaint.

Based on Complainant's formal complaint and the enclosed EEO Counselor's Report, the following claim is accepted for investigation:

Whether Complainant was discriminated against on the basis of race (Black), when:

---

[1] All official correspondence will be sent to Complainant's representative, with copies sent to Complainant, unless Complainant submits a written request directing the FDIC to send all correspondence directly to Complainant. 29 C.F.R. § 1614.605(d).

C-1

Re: Sharpe, FDICEO – 050002                                                    Page 2 of 4

Effective October 17, 2004, she was subjected to an involuntary directed
reassignment from the position of Paralegal Specialist, CG-0950-11, in the Office
of the Counsel to the Inspector General to the position of Human Resources
Specialist, CG-0201-11, in the Office of Management and Congressional
Relations, Human Resources Branch, Office of Inspector General. [2]

If the above-identified claim is incorrect, please inform Edith Murphy, EEO Specialist of the
claim Complainant is alleging to be discriminatory, as well as the relevant date(s). This
information must be provided, in writing, within five (5) calendar days of Complainant's receipt
of this letter to Edith Murphy, at the address provided below. If this Office does not receive a
written reply within five (5) calendar days of receipt of this letter, the above-identified claim will
be forwarded for investigation. Due to delays with the Agency receiving mail sent through the
U.S. Postal Service, a copy may also be sent by facsimile transmission to Michael P. Moran at (202)
416-4295.

All correspondence regarding this complaint must include the Agency Docket Number FDICEO
- 050002 and the date filed February 11, 2005. This information will assist us in responding
promptly. Correspondence forwarded to this Office by regular and certified mail should be
addressed in the format indicated below:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> COMPLAINTS PROCESSING BRANCH
> ATTN: MICHAEL P. MORAN, CHIEF
> ROOM 801-1232
> 3501 NORTH FAIRFAX DRIVE
> ARLINGTON, VA 22226-3500

Overnight and express mail and hand deliveries should be to:

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> COMPLAINTS PROCESSING BRANCH
> ATTN: MICHAEL P. MORAN, CHIEF
> 801 17TH STREET, NW (ROOM 1232)
> WASHINGTON, DC 20434

Complainant will be notified of the investigator assigned to conduct the investigation. If
evidence obtained during the investigation indicates that dismissal of a claim is appropriate, all
decisions will be made in accordance with the U.S. Equal Employment Opportunity Commission
("EEOC") regulations at 29 C.F.R. § 1614.107. If a hearing is requested at the conclusion of the
investigation of the accepted claim, an administrative judge appointed by the EEOC may review

---

[2] By accepting the above-identified claim, the Agency does not waive the right to dismiss it pursuant to
29 C.F.R. §1614.107, if the Agency determines that Complainant was not aggrieved by the directed reassignment.

C-2

the dismissed claim. However, there is no immediate right to appeal the dismissed claim. Any dismissed claim may not be appealed until final agency action is rendered by the Agency on all the claims. 29 C.F.R. § 1614.107(b). A final agency action is either a Final Agency Order (if there is a hearing) or a Final Agency Decision (if no hearing is held). A complaint that is dismissed in its entirety may be appealed after a Final Agency Decision is issued. Complainant will be provided appeal rights with the final agency action.

Pursuant to the EEOC regulations at 29 C.F.R. § 1614.108, a copy of the Report of Investigation ("ROI") is to be forwarded to Complainant within 180 calendar days of the date that Complainant filed the formal complaint, unless there is a written agreement to an extension. Prior to receipt of the ROI, Complainant may amend this complaint to add claims that are like or related to the claim raised in this complaint. 29 C.F.R. § 1614.106(d). There is no requirement that Complainant seek EEO counseling on these new claims. However, if the new claim is not like or related, then Complainant will be referred to an EEO counselor. Complainant must submit any new claim(s) to this Office to the address indicated above.

At the time the ROI is transmitted, a Notice about participating in the FDIC's EEO Mediation Program and the Right to Request a final agency action with or without a hearing will be provided. Complainant may elect to participate in the FDIC's EEO Mediation Program or request a hearing before an Administrative Judge appointed by the EEOC or request a Final Agency Decision without a hearing to be issued by Donald E. Powell, Chairman, FDIC, or his designee. The Notice will provide detailed information relating to the procedures and time limits imposed for making the election and requests.

The EEOC regulations also provide that if 180 calendar days have elapsed from the filing date of the formal complaint, and a copy of the ROI has not been received, then Complainant may request a hearing before an Administrative Judge appointed by the EEOC, or may file an action in federal district court. Unless this Office receives written notification from Complainant that one of these options is being exercised, this Office will continue processing this complaint.

When 180 calendar days have elapsed from the filing date of the formal complaint, and Complainant requests a hearing, Complainant must send the written request directly to the U.S. EEOC Washington Field Office to:

> U.S. Equal Employment Opportunity Commission
> Hearings Unit
> Washington Field Office
> 1801 L Street, NW, Suite 100
> Washington, DC 20507

Complainant must certify that a copy of the request for a hearing was also sent to the FDIC to Michael P. Moran, Chief, Complaints Processing Branch at the FDIC address indicated above.

C-3

Re: Sharpe, FDICEO – 050002                                          Page 4 of 4

If there are any questions, please contact Edith Murphy, EEO Specialist, at (202) 416-2147 or me at (202) 416-2014.

Sincerely,

*Michael P. Moran*

Michael P. Moran
Chief, Complaints Processing Branch

Enclosure:  EEO Counselor's Report

cc:     Stacey K. Sharpe
        11820 Capstan Drive
        Upper Marlboro, MD 20772
        <u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>
        # 7002 0860 0004 7269 5811

        Edith Murphy, EEO Specialist, Complaints Processing Branch, ODEO
        Stephanie M. Gordon, EEO Specialist, Complaints Processing Branch, ODEO

C-4

**Exhibit 27**

June 8, 2005
Global E-Mail message, Office of Inspector General,
Proposal for Downsizing

## Cosgrove, Michael

| | |
|---|---|
| **From:** | Black, Patricia M. |
| **Sent:** | Wednesday, June 08, 2005 10:31 AM |
| **To:** | OIG CORPORATE |
| **Subject:** | OIG Proposal |

As you all know, earlier this year I asked OIG's executives to assess their offices' workload, staffing levels and structures to determine whether changes would be appropriate in the near future. Following that assessment, and my own review of it, last month we developed a proposal for reducing the size of the OIG consistent with our expected workload. The proposal reflects our assessment of our mission, the risks to FDIC and related priorities. I have taken no further steps to implement that proposal, including communicating it to OIG employees, because the proposal hinges on the availability of a buyout within parts of the OIG and I do not presently have that authority to make that offer. However, I am acutely aware that some of the details of the proposal, as well as some misinformation, is circulating among OIG employees. Our employees have become very concerned, understandably so, and I genuinely regret that circumstances have played out in this fashion. This email is being sent in order to inform you of the nature of the proposal so that you will at least have those facts. Please understand that, at this point, no final plans have been made. I expect to be able to communicate more definitive information to you soon. Given our budgetary cycle, certain decisions will need to be made no later than the end of the month.

The outlines of my proposal are these:

1. The OIG would be reduced from its current authorized size of 160 to 133.
2. The Office of Audit would be reduced from its current authorized size of 88, with 80 presently on board, to 64.
3. Two OA field offices, Atlanta and Chicago, would be closed, probably in the spring of 2006, but we expect some vacancies in the remaining offices for which staff in closing offices may apply. Reductions in force may be required in the closing field offices, but not elsewhere.
4. OI would not be reduced in size.
5. OQA would be consolidated with OMCR, with some reduction in staffing. No reductions in force would be required.
6. In order to effect the reduction to 133, the OIG would offer buyouts to all employees in the closing audit field offices and OQA, as well as limited buyouts to some other OA employees, which could help open opportunities for relocations.

As I said earlier, this is a proposal not a finalized plan, and consistent with past FDIC practice, I would only proceed with office closures and consolidations if I have the ability to offer buyouts. Moreover, the IG position will be filled in due course, and the person who takes that job may differ with the assessment reflected above. Pending such an appointment, and notwithstanding the availability of a buyout, I will continue to carefully examine each vacancy which occurs to determine whether it should be filled or left vacant since I believe that is incumbent in my obligation to be a good steward of the funds appropriated to the OIG. I recognize that these decisions, if implemented, will be difficult on our organization and staff and am committed to working to ease the transition for affected employees. I continue to appreciate the hard work and commitment shown by staff throughout the OIG, even during these difficult times.

If any of you wish to send questions to me, I will do my best to answer them.

**Exhibit 28**

SF 50, December 11, 2005
Promotion of Plaintiff to Grade 12,
Human Resources Specialist

Standard Form 50
Rev 7/91
U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| SHARPE, STACEY K | 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 | 05/15/68 | 12/11/05 |

**FIRST ACTION** — **SECOND ACTION**

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 702 | PROMOTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| N7M | REG 335.102 RECLASS | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| Human Resources Specialist  00014301   40I148 | Human Resources Spec  00014301   40I190 |

| 8.Pay Plan | 9.Occ. Code | 10.Grade or Level | 11.Step or Rate | 12.Total Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. Code | 18.Grade or Level | 19.Step or Rate | 20.Total Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 11 | 00 | 67,710.00 | PA | CG | 0201 | 12 | 00 | 74,481.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 59,762.00 | 7,948.00 | 67,710.00 | .00 | 65,738.00 | 8,743.00 | 74,481.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | FEDERAL DEPOSIT INSURANCE CORPORATION  OFFICE OF INSPECTOR GENERAL  OFC OF MNGT & CONG REL  HUMAN RESOURCES BR  FD 684001000130400000     PP 25 2005 |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 2  1-None  2-5 Point  3-10 Point/Disability  4-10 Point/Compensable  5-10 Point/Other  6-10 Point/Compensable/30% | 1  0-None  1-Permanent  2-Conditional  3-Indefinite | | X YES ☐ NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| Z2  BASIC-STANDARD-5X ADDITIONAL-2X FAM | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS AND FICA | 10/24/87 | F  FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1-Competitive Service  2-Excepted Service  3-SES General  4-SES Career Reserved | N  E-Exempt  N-Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON   DIST OF COLUMBIA   DC |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

**45. Remarks**

CONGRATULATIONS ON YOUR PROMOTION
RESULT OF ADDITIONAL DUTIES AND RESPONSIBILITIES.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION | TRINA F PETTY  DEPUTY ASSISTANT IG, HUMAN RESO |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
| FD 68 | 1644 | 12/08/05 | |

2 - OPF Copy - Long-Term Record - DO NOT DESTROY   Editions Prior to 7/91 Are Not Usable After 6/30/93

FD 684001000130400000
PP 25 1*2005*BATCH 16446775 000-00 201-12 AG/EO 68-1644

# Exhibit 29

Plaintiff's Deposition Testimony
February 1, 2006

Page 1

1               U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

2                       WASHINGTON FIELD OFFICE

3       - - - - - - - - - - - - - x

4       STACEY K. SHARPE,              :

5                    Complainant,      :

6            -vs-                       :   EEOC No:  100-2005-00927X

7       MARTIN GRUENBERG,             :   Agency No:  FDICEO-05002

8       Chairman, Federal Deposit :

9       Insurance Corporation,        :

10                   Agency.            :

11      - - - - - - - - - - - - - x

12                                   Wednesday, February 1, 2006

13                                   Washington, D.C.

14      Deposition of

15                          STACEY K. SHARPE

16      a witness in the above-entitled cause, was called for

17      examination by counsel for the Agency, at the Office

18      of Inspector General Federal Insurance Corporation, 801

19      17th Street, Northwest, 10th Floor, Washington, D.C.

20      20434, beginning at 10:28 a.m., before Hedy D. Blau, a

21      Notary Public in and for the District of Columbia, and

22      were present on behalf of the respective parties:

**Page 2**

```
 1   APPEARANCES:
 2      FOR THE AGENCY:
 3      BY: MICHAEL S. COSGROVE, ESQUIRE
 4         Associate Counsel
 5         Office of Inspector General
 6         Federal Deposit Insurance Corporation
 7         801 17th Street, Northwest
 8         10th Floor
 9         Washington, D.C. 20434
10         (202) 416-4230
11      FOR THE COMPLAINANT:
12      BY: DAVID H. SHAPIRO, ESQUIRE
13         STEPHANIE K. RICHARD, ESQUIRE
14         Swick & Shapiro, P.C.
15         1225 Eye Street, Northwest
16         Suite 1290
17         Washington, D.C. 20005
18         (202) 842-0300
19
20
21
22
```

**Page 3**

```
 1              C-O-N-T-E-N-T-S
 2   Witness:          Examination by Counsel for:
 3   Stacey K. Sharpe      Agency:      Complainant:
 4                    MR. COSGROVE:  MR. SHAPIRO:
 5                       4
 6
 7              E-X-H-I-B-I-T-S
 8   Exhibit:                      Page:
 9   (None)
10                    ***
11
12
13
14
15
16
17
18
19
20
21
22
```

**Page 4**

```
 1      P-R-O-C-E-E-D-I-N-G-S
 2   Whereupon,
 3         STACEY K. SHARPE
 4   a witness in the above-entitled cause, was called for
 5   oral examination, and after having first been duly
 6   sworn was examined and testified as follows:
 7      EXAMINATION BY COUNSEL FOR THE AGENCY
 8      BY MR. COSGROVE:
 9      Q   Good morning. I'm going to try to remember
10   the convention of calling you Ms. Sharpe, to be polite.
11   But, however, having worked with you for years I'm sure
12   I'm going to slip up and call you Stacey. So I
13   apologize. I'm not — I don't mean any disrespect to
14   you or the occasion.
15      The most important thing, I have the ability
16   to mangle the English language to uncomprehension. If
17   you don't understand the question I'm asking, please
18   just make sure we know, okay. And I'll try to work
19   with you to make sure that we arrive at a common
20   understanding of what it is I'm trying to say.
21      This is also not an endurance contest. So if
22   you need a break for any reason whatsoever, just say
```

**Page 5**

```
 1   so. We'll go off the record and take a break.
 2      All right, any questions so far?
 3      A   No.
 4      Q   The first thing I'd like to do is go into
 5   your background a little bit, okay. Why don't you
 6   start by telling me your date of birth and where you
 7   were born.
 8      A   5/15/1968.
 9      Q   Okay.
10      A   I was born in Washington, D.C.
11      Q   Were you raised here in Washington?
12      A   Yes.
13      Q   And you're married, correct?
14      A   Yes.
15      Q   And your spouse's name?
16      A   Everett Sharpe.
17      Q   And what does Mr. Sharpe do?
18      A   He's Support Services Supervisor.
19      Q   And I know you have children, correct?
20      A   Yes.
21      Q   How many?
22      A   Two.
```

**Page 46**

1    A    Okay.

2    Q    So why is it that the fact that hiring Ms.

3  Fossberg is proof that your transfer was discriminatory

4  when the fact of hiring me is not the same proof?

5    MR. SHAPIRO:  Objection, argumentative.

6  If you understand the question, you can answer, but

7  it's argumentative.  Objection.

8    THE WITNESS:  Well, from my understanding we

9  were at our core numbers in the counsel's office before

10  Adriana was hired.

11    BY MR. COSGROVE:

12    Q    And that would be approximately 2001?

13    A    I don't know what capacity you're talking

14  about as far as hiring her.  I don't know.

15    Q    Well, where did you get the idea we were at

16  our core numbers?

17    MR. SHAPIRO:  She's talking about when she

18  was moved and Adriana was brought on.

19    MR. COSGROVE:  Okay, we will accept that, in

20  2004 when you were moved.

21    BY MR. COSGROVE:

22    Q    Where did you get the idea that there was a

**Page 47**

1  core number?

2    A    Because I've heard it at our staff meetings.

3    Q    And you heard it described as core numbers?

4    A    Yes.

5    Q    What specifically do you recall hearing in

6  terms of core numbers of the counsel's office?

7    A    That we were at our core numbers, no empty

8  slots.

9    Q    I'm confused now.  What significance does

10  that have?

11    A    There were no slots to hire anybody in the

12  counsel's office.

13    Q    Okay, so from that you conclude that to hire

14  Ms. Fossberg — it wasn't to be concluded.  Don't let

15  me put words in your mouth.

16    A    Say that again.

17    Q    I don't want to put words in your mouth.  So

18  what did you conclude from the fact that you understood

19  everything to be at core numbers?

20    A    That's why I was transferred out.

21    Q    What makes you think that the transfer of a

22  paralegal would create a vacancy for a lawyer?

**Page 48**

1    A    It creates a slot.

2    Q    Do you see them all as fungible, lawyers,

3  paralegals, legal technicians?

4    A    I don't know.

5    Q    Well, do you believe that to be the case?

6    A    I don't understand your question.

7    Q    All right, I'll go back to it again.  Because

8  I don't understand the analysis.  What in your mind

9  says to you that to hire Ms. Fossberg they had to get

10  rid of me and that is inherently because I'm an

11  African-American?

12    MR. SHAPIRO:  She's just said — I think

13  she's answered that question.  You're asking for a

14  sophisticated explanation personnel-wise, but she's

15  talking about FTEs.  There's only so many FTEs.  They

16  needed one.  Because they were full up, they moved her

17  out of counsel.  FTE appears.  Fossberg gets hired.

18    BY MR. COSGROVE:

19    Q    Okay, assuming that that is all true, what

20  makes you believe that that was because you're African-

21  American?  That's what I'm trying to understand.

22    A    No one else got a direct reassignment out of

**Page 49**

1  that office.

2    Q    Was there any other paralegals?

3    A    No.

4    Q    Is there anything else other than the fact of

5  the reassignment that leads you to conclude that you

6  were discriminated against because of your race?

7    A    I guess that's it.

8    Q    Now if you had stayed as a paralegal in the

9  counsel's office, what would you have expected to

10  happen with your career thereafter?

11    A    Well, being a paralegal, I think, opened up a

12  lot of doors for other positions.

13    Q    They would not be in the counsel's office,

14  correct?

15    A    Maybe not.

16    Q    Well, let me rephrase that.  Can you think of

17  any position that it would have opened a door into in

18  the counsel's office?

19    A    Positions get upgraded and they have been in

20  OIG.

21    Q    Did you have any expectation that your

22  position as a paralegal would be upgraded?

**Exhibit 30**

Affidavit of Trina F. Petty, Director of Human Resources, F.D.I.C.
Office of Inspector General, March 28, 2004

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## WASHINGTON FIELD OFFICE

| | |
|---|---|
| STACEY K. SHARPE,<br>Complainant,<br><br>v.<br><br>MARTIN GRUENBERG,<br>Chairman, Federal Deposit Insurance<br>  Corporation,<br>      Agency. | EEOC NUMBER:<br>100-2005-00927X<br><br>AGENCY No:<br>FDICEO-050002<br><br>DATE: March 28, 2004 |

### Affidavit of Trina F. Petty

I am currently employed as the CM-201-1 Personnel Director for the Office of Inspector General (OIG) of the FDIC. My official title is Director of Human Resources, Human Resources Branch, Office of Management and Congressional Relations. I have been employed in my current position since joining the OIG on May 10, 1999.

The OIG personnel office consists of me, three Human Resources Specialists, and a Program Analyst. The Human Resources Specialists are responsible for processing all personnel actions which affect OIG employees.

As the FDIC OIG is a relatively small organization I am usually familiar with the facts underlying the personnel actions processed by my office. I am familiar with the personnel actions that are at issue in this EEO complaint.

Each subordinate office or organization within the OIG has an authorized staff level. The authorized staff level of each OIG subordinate office is established by the Inspector General. The authorized staff level of each subordinate office is not established by Congress in an appropriation or other enactment. The authorized staff level changes from time to time at the discretion of the Inspector General.

In 2001 and 2002, the authorized staff level for OIG Counsel's Office was seven. Sometime in 2003, after Patricia Black became the Deputy IG and Fred Gibson was

made OIG Counsel, the authorized staff level for OIG Counsel's Office was reduced to six.

Ms. Adrian Vosburg is one of the attorneys employed in the OIG Counsel's Office. Beginning in the summer between her second and third year of law school, and continuing through her taking the bar exam, Ms. Vosburg was employed by the OIG Office of Counsel as a Student Intern (Law Clerk). As a Student Intern (Law Clerk), Ms. Vosburg did not count against the Office of Counsel's authorized staff level.

After taking the bar exam, Ms. Vosburg was, on November 4, 2001, appointed as an excepted service, CG-904/905-9/11 Law Clerk/Attorney with a not-to-exceed (NTE) date of November 5, 2002. Ms. Vosburg was selected under a competitive vacancy announcement. Ms. Vosburg's NTE date was eligible for extension for a period not-to-exceed four years. Upon passing the bar and being admitted to practice, Ms. Vosburg was promoted to a CG-905-11, Attorney.

Upon being appointed to an excepted service, CG- 904/905-9/11 Law Clerk/Attorney on November 4, 2001, Ms. Vosburg counted against the authorized staff level of the OIG Counsel's Office. On the date of Ms. Vosburg's appointment, the total authorized staff level of the OIG Counsel's Office was seven. The seven authorized staff positions were filled by the Counsel, Patricia Black, the Deputy Counsel, Fred Gibson, Associate Counsels Michael Cosgrove and Christian Gieseler, Law Clerk Adriana Vosburg, Paralegal Stacey Sharpe and Legal Assistant Theresa Fewell.

Between Ms. Vosburg's initial appointment in November 2001 and July 2004, Ms. Vosburg's initial NTE one year appointment was extended for a full four year term and Ms. Vosburg was promoted to CG-905-12. In July 2004, Ms. Vosburg's term, excepted service appointment was converted to a regular excepted service appointment.

On October 17, 2004 Stacey Sharpe was reassigned from a CG-950-11 Paralegal position in the OIG Counsel's Office to a CG-201-11 Human Resources Specialist position in my office. Her former CG-950-11 Paralegal position in the OIG Counsel's Office was abolished and the authorized staff level of the OIG Counsel's office was reduced by one position to a total of five.

I have been advised that Ms. Sharpe alleges in her EEO complaint that she was reassigned from the OIG Counsel's Office to my office so that the authorized position she filled in the OIG Counsel's Office could be used to provide an authorized position for Ms. Vosburg after her conversion to an excepted service appointment in July 2004. Ms. Sharpe alleges that if she had not been reassigned to Human Resources Ms. Vosburg could not have been converted to an excepted appointment. Ms. Sharp's allegations are false.

At the time of Ms. Vosburg's conversion to an excepted service appointment in July 2004 the total authorized staff of the OIG Counsel's Office was six. These six authorized staff positions were filled by the Counsel, Fred Gibson, Associate Counsels

2

Michael Cosgrove, Christian Gieseler and Adriana Vosburg, Paralegal Stacey Sharpe and Legal Assistant Theresa Fewell. Ms. Vosburg's conversion from a term appointment to an excepted service appointment had no effect on the number of authorized staff positions in the OIG Counsel's Office. Ms. Vosburg has continuously filled an authorized staff position in the OIG Counsel's office from her appointment on November 4, 2001 through the present.

Likewise, Ms. Sharpe continuously filled an authorized staff position in the OIG Counsel's Office from the date of her hiring by that office in April 1998 through the date of her reassignment, October 17, 2004.

In the OIG, authorized staff positions are authorized staff positions. They exist or don't exist; they are filled or vacant. If doesn't make a difference if the position is filled with an employee in the competitive service or excepted service; part-time or full time; or temporary, term or permanent employee.

Trina F. Petty

Sworn to and subscribed before me on March 28, 2006 in Arlington, Virginia:

Valerie V. Toyer
Special Agent

A person authorized to administer oaths by the Inspector General Act, 5 U.S.C. App. 3

3

# Exhibit 31

Office of Inspector General, Counsel Work Flow Summary Report
January 1, 1990 to January 30, 2006 for Stacey K. Sharpe

# OIG COUNSEL'S OFFICE

## Counsel Workflow Summary Report

**73   Cases Have Been Returned**

## Report Selection Criteria

### All Assignments Start Date Range:

### Assignments Range: 1980001 - 2006019S

1/1/1980 - 1/30/2006

### Selected Categories:

Advice & Counsel
Congressionals & Chairman's
Correspondence
Ethics
FOIA
Litigation
Management & Administrative
Personnel
Regulation, Legislation and
Directive Review
Subpoena

### Selected Attorneys:

Sharpe, Stacey K.

### Assignment Type:

A Formal Opinion
A General Advice
A Other
A Appeal
F Appeal
F Request
G Other
L Other
L EEOC
L Federal Court
L MSPB
L Other
L Subpoena Challenges
L Subpoena Enforcement
R Directive
R Legislation
R OIG Manual
R Policies
R Regulation
S ECPA
S Non-RFPA
S RFPA

### Selected Clients:

FDIC Office of
Executive Secretary
FDIC Legal
Office of Congressional
Relations and Evals
Office of Inspector
General
Inspector General
Office of Audit
Office of Investigations
Office of Analysis and
Congressional Relations
and Policy
Office of Management
Office of Oversight and
Quality Assurance
Office of Counsel
FDIC
Department of Justice
Outside The FDIC

FOIA = 32

FOIA Litigation = 1

Subpoenas = 36

Regulations = 4

75

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2004111F | FOIA No. 04-0589 r | 10/07/2004 | FDIC | Closed | 10/14/2004 | Sharpe, Stacey K. Glessler, Christian | 10/15/2004 |

Description: In question form, the requestor is seeking the number of civil law suites, MSPA, Office of Special Counsel, and Unfair Labor Practices filed against FDIC. Also, the requestor is seeking the number of complaints and reports of incidents received by OIG and the total number of incidents of fraud, waste, abuse and mismanagement within FDIC and its contractor operations.

Attorney Notes:  10/13/2004 (CGIESELER) .

10/12/2004 (BSHARPE) - Chris is planning to speak with Fred Fisch regarding the wording and/or revising of the request.

| FOIA | 2004009F | FOIA No. | 09/07/2004 | FDIC | Closed | 09/10/2004 | Sharpe, Stacey K. Glessler, Christian | 09/10/2004 |
|------|----------|----------|------------|------|--------|------------|---------------|------------|

Description: The requestor is seeking a copy of an internal OIG policy document.

Attorney Notes:  09/10/2004 (BSHARPE) - We received the Control Log and responded directly to the requestor. Also, we sent Legal a copy of our response to the requestor.

09/07/2004 (BSHARPE) - Request came directly to OIG. Faxed request to Legal. Awaiting Control Log and official assignment.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2004098F | FOIA No. 04-0582 | 08/31/2004 | FDIC | Closed | 10/13/2004 | Sharpe, Stacey K. Gieseler, Christian | 11/10/2005 |

Description: A list of all investigations closed between 1/1/2003 and the present

Attorney Notes: 11/09/2004 (CG|ESELER) -

09/02/2004 (SSHARPE) - Request came directly to us. Sent Legal a request for Control Log and determination of the status of the requester.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2004092F | FOIA No. 04-0448 : | 08/11/2004 | FDIC | Closed | 08/24/2004 | Sharpe, Stacey K.  Gressler, Christian | 10/18/2004 |

**Description:** The requestor is seeking information pertaining to the closing and loan documents pertaining to `

**Attorney Notes:**

08/11/2004 (SSHARPE) - DRR brought this request, along with request number 04-0447, to our attention. On 8/11, we sent Legal and e-mail, and we are awaiting Legal's response as it relates to assigning these requests to OIG.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2004091F | FOIA No. 04-047 | 08/11/2004 | FDIC | Closed | 08/24/2004 | Sharpe, Stacey K. Gieseler, Christian | 10/19/2004 |

**Description:** The requester is seeking pertaining to Town and Country State Bank

**Attorney Notes:**

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2004085F | FOIA 04-0411 | 07/16/2004 | FDIC | Closed | 07/27/2004 | Sharpe, Stacey K. Gieseler, Christian | 10/19/2004 |

**Description:** The requester is seeking records pertaining to FDIC Case No. 98-0020

**Attorney Notes:** 10/19/2004 (CGIESELE

08/09/2004 (SSHARPE) - Received Legal response, dated August 6th, to the requestor.

07/30/2004 (SSHARPE) - Provided Legal additional information in response to their request. As of today, work on this matter is suspended.

07/27/2004 (SSHARPE) - Sent Legal an e-mail that contains our proposed search and review (search time - 1.25 hours and review 20 hours). Also, informed Legal that we've located approximately 2,400 pages or potentially responsive records. Our work on this matter is suspended until Legal assigns us any further action.

07/21/2004 (SSHARPE) - The requestor is seeking information pertaining to FDIC Case No. 98-0020. Because this is a commercial request, we have contacted OI to get an approximation on 1) search and review time and 2) the number of pages.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2004053F | FOIA App 04-005A | 04/30/2004 | FDIC | Closed | 05/10/2004 | Gloecler, Christian Sharpe, Stacey K. | 09/20/2004 |

*Description:* Assist Legal Division, as needed, in responding to this FOIA appeal

*Attorney Notes:* 09/20/2004 (SSHARPE) - Received Legal response to the requestor, which is dated 5/10/04. The Legal Division affirmed OIG's response to the requestor. The requestor has since filed FOIA lawsuit against the FDIC.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2004051F | FOIA 03-04R5 | 04/23/2004 | FDIC | Closed | 05/14/2004 | Sharpe, Stacey K. Gloecler, Christian | 09/26/2004 |

*Description:* The requestor is seeking documents relative to a report of an apparent crime filed against him.

*Attorney Notes:* 05/28/2004 (SSHARPE) - Received Legal response to the requestor dated 5/21/04

05/14/2004 (SSHARPE) - This is a referral from the FBI. Conducted a search in workflow in order to determine if we had previously provided requestor with referred records, of which we had not. Spoke to Special Agent Karen Davis who said that the referred records were produced during prior litigation. Karl did not object to disclosing both memo of activities. He did object to releasing the memo of interview.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2004031F | FOIA No. | 03/17/2004 | FDIC | Closed | 04/09/2004 | Sharpe, Stacey K.; Gieseler, Christian | 07/14/2004 |

**Description:** Requestor is seeking records supporting the background investigation performed on him.

**Attorney Notes:** 07/14/2004 (SSHARPE) - Received Legal's proposed response to Taidcus Steinberg's request that FDIC amend certain records relating to him. No FOIA/PA Log number has been assigned to this request, and no action has been assigned to OIG.

04/15/2004 (SHARKINS) - We completed this request on 4/9/04 and sent our response to Legal via interoffice mail. We received Legal's response to the requestor dated 4/14. Legal also provided CSP with a copy of its response to the requestor.

03/29/2004 (CGIESELER) -

This request came directly to OIG. 3/17 - sent memo to Legal requesting Control Record Log. Requestor is seeking all records supporting a background investigation on himself.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2004022F | FOIA No. 04-01201 | 03/10/2004 | FDIC | Closed | 03/05/2004 | Sharpe, Stacey K.; Gieseler, Christian | 03/10/2004 |

**Description:** The requestor is seeking all documents pertaining to an investigation of his FDIC employment by the OIG.

**Attorney Notes:** 03/10/2004 (SHARKINS) - Received Legal's response to the requestor dated 3/8/04.

03/05/2004 (SHARKINS) - Since there were no records added to the file since the 2003 request and no additional investigations or inquiries exist, we responded by informing Legal that we have no responsive.

03/03/2004 (SHARKINS) - Received this request today and have contacted OI for potentially responsive records. The requestor submitted a request in 2003 (FOIA Request No. 03-0082) seeking records concerning any criminal or any other investigation regarding himself. We released to him the partially-redacted ROI that pertains to an investigation regarding himself.



| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2003166F | FOIA No. 03-0702 | 11/20/2003 | Other | Closed | 12/19/2003 | Sharpe, Stacey K. ; Gieseler, Christian | 02/17/2004 |

**Description:** FDIC employee is seeking his background investigative file.

**Attorney Notes:** 02/17/2004 (SHARKINS) - Received Legal's response, dated 1/22/04, to the requestor.

01/20/2004 (SHARKINS) - In light of Legal's 12/22 response to our 12/19 response to this request, we have taken a different approach as it relates to the processing of this request. Although the requestor was provided a copy of the OIG investigative file in the context of his disciplinary case, we now opined that that disclosure was not a public disclosure. As a result, in our response to Legal, we asserted (b)(5), (b)(6) & (b)(7)(9) and we emphasized our recommendations to Legal.

12/19/2003 (SHARKINS) - Today, we responded to Legal by advising them that U.S.OPM should release in full the 4 page investigative summary since the true requestor (Serge Malsea) was provided with a copy of the OIG investigation during his disciplinary case.

12/16/2003 (SHARKINS) - Requested and received a 2-day extension to complete the processing of this request. Spoke to Sharon Davis, (Dallas-Legal), who had some involvmenhnent as far as the handling of the disciplinary action. She will inform me as to whether the subject of the investigation was ever provided a copy of the investigative report.

12/15/2003 (SHARKINS) - Still reviewing conflicting cases and waiting for OI's response regarding whether the requestor was ever provided a copy of the OI/G investigative report.

12/10/2003 (CGIESELER) -

12/01/2003 (SHARKINS) - This is a referral from the U.S. OPM. The requestor is an FDIC employee seeking his background investigative file. The U.S. OPM referred 4 pages of records to us for review.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2003100F | FOIA No. 03-0083 | 11/19/2003 | FDIC | Closed | 11/25/2003 | Sharpe, Stacey K. Gleseler, Christian | 01/20/2004 |

**Description:** The requestor is seeking an FDIC OIG and an RTC OIG audit report.

**Attorney Notes:**

01/20/2004 (SHARKINS) - Received Legal's final response, dated 1/13/04, to the requestor.

12/15/2003 (SHARKINS) - Received Legal's second partial response to the requestor dated 12/03.

12/01/2003 (SHARKINS) - On 11/25, we sent our response to him the Legal Division. We released in full the two sought audit reports.

11/21/2003 (SHARKINS) - We received Legal's partial response to the requestor dated 11/19. Legal's response is partial because the requestor is seeking documents from different divisions within the Corporation, and he requested that the documents be sent to him as they become available.

11/19/2003 (SHARKINS) - Received request on 11/17. The requestor is seeking 2 audit reports (an FDIC and an RTC audit report). This is a commercial request.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 20031744F | FOIA No. 03-0020 | 10/02/2003 | FDIC | Closed | 11/04/2003 | Sharpe, Stacey K. Gleseler, Christian | 11/21/2003 |

**Description:** The requestor is seeking records that pertain to employees with law enforcement duties.

**Attorney Notes:**

11/21/2003 (SHARKINS) - On 10/27 we requested an extension from Legal, and Legal granted that request. We closed this item on 11/4 and release in part the 4-page document that was sought. That document came to us by way of referral from OPM. We received Legal's response to the requestor dated 11/17.

10/02/2003 (SHARKINS) - 10/2- received request from Legal. The requestor is seeking records that pertain to employees who perform law enforcement duties. Will discuss with Chris on how we should proceed.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 20031544F | FOIA No. 03-0583 | 09/18/2003 | FDIC | Closed | 10/01/2003 | Sharpe, Stacey K. Gleseler, Christian | 10/02/2003 |

**Description:** Requestor is seeking records pertaining to himself.

**Attorney Notes:**

10/02/2003 (SHARKINS) - Closed assignment on 10/1, and we sent Legal our response on that same day. We redacted 2 pages of OIG records. We redacted 6 pages of FDIC originated documents, which we redacted and explained to Legal that our redactions are only suggestions.

09/25/2003 (SHARKINS) - Chris is reviewing redactions.

09/24/2003 (SHARKINS) - Received request on 9/16. The requestor is seeking investigative records pertaining to himself. This is a referral from DOJ. DOJ referred 8 pages to us for further processing.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2003153F | FOIA No. 03-0358 | 08/18/2003 | FDIC | Closed | 10/15/2003 | Sharpe, Stacey K.; Gieseller, Christian | 10/15/2003 |

**Description:** Requestor is seeking a list of closed Investigations that were closed since January 1, 2002 (or since October 1, 2001).

**Attorney Notes:** 10/15/2003 (SHARKINS) - We have completed the redaction process and have sent Legal our close-out memo.

09/30/2003 (SHARKINS) - Today, we received the control record and sent an e-mail requesting responsive records to OI. Received records from OI and have started the redaction process.

09/26/2003 (SHARKINS) - Will start redactions once we receive control record from Legal.

09/18/2003 (SHARKINS) - FOIA came directly to us. The requestor is seeking a list of closed Investigations. Sent memo to Legal, requesting a control record.

| FOIA | 2003152F | FOIA Ap 03-0016A | 09/18/2003 | FDIC | Closed | 11/28/2004 | Sharpe, Stacey K. | 01/10/2005 |

**Description:** Requestor is appealing FOIA Request No. 03-0255

**Attorney Notes:** ;

09/24/2003 (SHARKINS) - on 9/9 we received a hardcopy of FOIA appeal re request no. 03-0255. Requestor disagreed with FDIC's decision to withhold records for reasons stated in its response letter. Will await further word from assigned Legal Division attorney.

| FOIA | 2003130F | FOIA No. 03-0503 | 09/05/2003 | FDIC | Closed | 08/14/2003 | Sharpe, Stacey K.; Gieseller, Christian | 09/27/2003 |

**Description:** Requestor is seeking OIG report entitled "Efforts to Enhance the Readiness to Manage and Liquidate Card Portfolios" (01-700).

**Attorney Notes:** 09/27/2003 (SHARKINS) - On 6/13, we sent memo directly to the requestor. (Request was for an audit that was never completed. However, Russ issued a memo instead.) Also, we provided OES with a copy of the letter to the requestor and advised OES of possible fee issue.

| Category: | OIG File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2003120F | FOIA 03-0205 | 05/15/2003 | FDIC | Closed | 08/14/2003 | Gieseler, Christian Sharpe, Stacey K. | 09/05/2003 |

Description: To respond to request who seeks records re: investigation re .

Attorney Notes: 09/08/2003 (SHARKINS) - Received OES' response to the requestor dated 8/22/03.

09/15/2003 (SHARKINS) - Chris and I met with Jerry last week to discuss the request. Due to the sensitivity of the records, and the fact that this is a third party request (or confidential and privileged financial information, we withheld substantially the entire file, outside of two redacted documents that were released to the requestor.

| Category: | OIG File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2003100F | FOIA 03-0350 | 08/24/2003 | FDIC | Closed | 08/24/2003 | Sharpe, Stacey K. Gieseler, Christian | 07/24/2003 |

Description: Requestor is seeking the resume of the successful candidate regarding vacancy number 2003-OIG-2123.

Attorney Notes: 07/24/2003 (SHARKINS) - After selection was made, we forwarded the redacted version of the resume to OES. We received OES' response, dated 7/22 to the requestor.

09/25/2003 (SHARKINS) - Via email, we informed OES that we have no responsive records since the position has not been filled.

09/24/2003 (SHARKINS) - Asked Personnel for responsive records via e-mail.

*Monday, January 30, 2006*

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| FOIA | 2003000F | FOIA 03-0327 | 03/28/2003 | FDIC | Closed | 06/03/2003 | Sharpe, Stacey K. Giessler, Christian | 08/14/2003 |

**Description:** Requestor is seeking records of complaints, current or past, regarding

**Attorney Notes:** 03/13/2003 (SHARKINS) - On 3/1, I sent OES records that are responsive to the FOIA modification. (After having closed this item on WORKFLOW, Chris and I spoke to Adena David who said that the requestor had modified his request and is seeking copies of the complaint and verdict that were filed in the instant case.) Although the responsive records are public documents, I requested the records from the clerk of the court instead of our investigator. I did so because it would have been a burden to have had the investigator/staff search through numerous records to locate, copy, and send/fax the requested documents to us.

08/18/2003 (SHARKINS) - After speaking with Fred Flech, who suggested that we provide the requestor with anything that we could, we expanded our search to include OA and hotline complaints. As it stands, OI is the only group to have located potentially responsive records. In our second response to OES, we withheld in full all responsive records. We asserted exemptions (b)(4), (b)(6), (b)(6) and (b)(7)(C). Also, we glomarized the portion of the request where the requestor sought "additional" complaints, outside of the 1999 press release provided by him.

03/03/2003 (SHARKINS) - Chris and I spoke to OI's Phil Robertson. We've informed OES via e-mail of our determination to gomar this third-party request since the FDIC's last involvement on this cases resulted in a trial in 2001, which reflected back to the 1999 indictment, which is mentioned in the press release provided by the requestor. Additionally, because we've interpreted the last paragraph of the request as a request for information, not records, we've referred this particular portion of the request to OI for further consideration. In our response to OES, we informed the requestor of this referral.

03/30/2003 (SHARKINS) - This is a request for OI records though we're contemplating including OA. Waiting to speak with Fred to get clarification, background information, and the name of investigator and his/her synopsis of related case.

*FDIC OIG Counsel Workflow System*

*Page 12 of 33*

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Updated: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2003010F | FOIA 03-0052 | 02/06/2003 | FDIC | Closed | 03/14/2003 | Gloesler, Christian Sharpe, Stacey K. | 04/15/2003 |

Description: Requester seeks Info self. Related to 02-0510, to which we asserted b7A

Attorney Notes: 04/15/2003 (SHARKINS) - Received OES' response to the requested dated April 10, 2003.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Updated: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2002213F | FOIA 02-0510 | 11/27/2002 | FDIC | Closed | 12/18/2002 | Sharpe, Stacey K. Gloesler, Christian | 01/10/2003 |

Description: Requester is seeking any and all records in the possession of the FDIC as receiver for Net First National Bank that may indicate why the FDIC is holding the SBA loans from the market.

Attorney Notes: 01/07/2003 (SHARKINS) - We asserted the (c)(1) exelution to this request, and OES concurred by letter sent to the requestor dated 1/3/03.
12/17/2002 (SHARKINS) - Received records from OI and OA. In the process of determining how to respond to the request.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2002152F | FOIA 02-0556 ; | 08/09/2002 | FDIC | Closed | 09/26/2002 | Giessler, Christian Sharpe, Stacey K. | 04/10/2003 |

**Description:** Respond to request for audit workpapers in support of RTC IG report re law firm.

**Attorney Notes:**

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2002033F | FOIA 02-0180 | 03/07/2002 | FDIC | Closed | 03/19/2002 | Sharpe, Stacey K.; Glessler, Christian | 04/03/2002 |

*Description:* 1st party request for OIG investigation concerning DOA employee antriquicides files on mer (email).

*Attorney Notes:*

| FOIA | 2001280F | FOIA 01-0711 | 12/05/2001 | FDIC | Closed | 12/27/2001 | Glessler, Christian; Sharpe, Stacey K. | 01/04/2002 |

*Description:* To respond to request from OIG auditor for info on counselling in connection with UTA

*Attorney N.*

| FOIA | 2001187F | :quest | 07/27/2001 | FDIC | Closed | 07/27/2001 | Glessler, Christian; Sharpe, Stacey K. | 08/07/2001 |

*Description:* Respond to informal discovery request (email) on (criminal-related)

*Attorney Not.*

| Category: | O.C. File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2001145F | FOIA Request 01-0307 | 05/31/2001 | OMP | Closed | 06/01/2001 | Glessler, Christian; Sharon Sharau K | 06/01/2001 |

*Attorney Not*

**Description:** NTEU in Wash DC files permission on behalf of certain documents re: 8 4/2/01 meeting involving requester, on April 2, 2001

| FOIA | 2001075F | | 03/09/2001 | FDIC | Closed | 03/28/2001 | Sharpe, Stacey K.; Glessler, Christian | 04/10/2001 |
|---|---|---|---|---|---|---|---|---|

**Description:** The requestor is seeking loan information involving

**Attorney Notes:** 04/10/2001 (SHARKINS) - on 4/9, we received OES response to the requester.

03/20/2001 (SHARKINS) - Requester sent a copy of his latest request, to which we have already informed OES that we here no responsive records, to OIG. The request is dated March 22nd. Drafted a short memo, for Fred's review, to Glaston explaining how this request is being handled. In that memo, explained that we have completed proceeding the request and that this is the second request for the same information. In response to the first request, OES informed the requester that FDIC has no response records and that the type of loan information being sought resides with the assuring institution. OES informed OIG that if the requester submits a third request for the same information, it will be processed as a FOIA appeal.

03/28/2001 (SHARKINS) - Although the scope of the request did not include the type of loan information sought by the requester, Don Deville and I reviewed 3 boxes of working papers.

03/19/2001 (SHARKINS) - Naomi has located the audit sought by us, and she has requested the working papers from Iron Mountain.

03/09/2001 (SHARKINS) - This request is a follow up to request no. 01-0033. The requestor is seeking the same loan information he sought under request 01-0033. We are awaiting a response from OA as to whether it has responsive records.

| FOIA | 2001016F | 01-0033. | 01/18/2001 | FDIC | Closed | 03/07/2001 | Sharpe, Stacey K.; Glessler, Christian | 03/09/2001 |
|---|---|---|---|---|---|---|---|---|

**Description:** The requestor is seeking loan information involving the .

**Attorney Notes:** 03/09/2001 (SHARKINS) - On 3/7 OES assigned this request to us under a different request number (01-0160).

01/18/2001 (SHARKINS) - This request came directly to us, and as a result, we've faxed this request to OES to determine the appropriate division(s) assignment to this request. We will consider this pending, until such time as OES assigns the matter to us or closes it out. This requestor is seeking loan-related information.

01/28/2001

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Updated: |
|---|---|---|---|---|---|---|---|---|
| FOIA | 2000207F | | 10/03/2000 | FDIC | Closed | 10/10/2000 | Sharpe, Stacey K. Gleeeler, Christian | 10/20/2000 |

**Description:** This appeal was forwarded to the Legal Division by OES. Pertains to FOIA Request.

**Attorney Notes:** 10/11/2000 (SHARKINS) - On 10/10/00 we received Legal's response to this requestor. In it's response, Legal made a supplemental release of information to the requestor.

| FOIA | 20002033F | No. | 09/18/2000 | FDIC | Closed | 09/22/2000 | Sharpe, Stacey K. Gleesler, Christian | 09/25/2000 |
|---|---|---|---|---|---|---|---|---|

**Description:** Request for investigative records on himself.

**Attorney Notes:** 09/25/2000 (SHARKINS) - We notified OES that we have no records responsive to this request on 9/22/2000.

09/22/2000 (SHARKINS) - The requestor is seeking information pertaining to him located in the "Investigative Files and Records" Systems of Records. OI did not find any records responsive to this request.

09/21/2000 (PBLACK) -

| FOIA | 20000235F | 00-0777 ? | 03/00/2000 | FDIC | Closed - | 03/08/2000 | Gleesler, Christian Sharpe, Stacey K. | 08/21/2000 |
|---|---|---|---|---|---|---|---|---|

**Description:** '

**Attorney Notes:** 09/21/2000 (SHARKINS) - Received OES Response to requester 9/20/2000 by e-mail.

09/20/2000 (Conversation) - Rec'd email about request. OIG has not been formally assigned but will receive Control record and copies of OIG docs that are being referred for OIG review. Reviewed records and discussed with Audit. However, on 3/6/00 OES advised that requestor had withdrawn request. Accordingly, OIG has closed out this matter without releasing anything. 4/12/00 OES requests that we provide to them the docs they had referred to us re. this request; will do so via interoffice mail; Felica R., OES, and she would return docs to us when done.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Litigation | 2004063L | WT Dean v. FDIC&OIG | 08/19/2004 | OIG | Active | | Giesseler, Christian Sharpe, Stacey K. | 12/13/2005 |

Description: To defend FOIA lawsuit filed against FDIC

Attorney Notes: 12/13/2005 (CGIESELER) -

11/16/2005 (CGIESELER) - 1

10/05/2005 (CGIESELER) -

03/07/2005 (CGIESELER) -

02/25/2005 (CGIESELER) -

N
8

01/07/2005 (CGIESELER) -

11/16/2004 (CGIESELER) -

10/26/2004 (CGIESELER) - and affidavits, to AUSA for

09/21/2004 (CGIESELER) -

09/24/2004 (CGIESELER) -

09/03/2004 (CGIESELER) -

08/24/2004 (SSHARPE) - Spoke to K. Berbelich, who said that the original investigative file is in Atlanta, and he'll have the records shipped directly to me.

08/20/2004 (CGIESELER)

Category:     OIC File#:     Short Title:

Start
Date:     Client:     Status:     Date
Completed:     Staff
Assigned:     Last
Update:

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Regulation | 2002002R | Bank Auditing Act of 1950 | 11/19/2002 | IG | Active | | Sharpe, Stacey K. Gibson, Fred W. | 11/18/2002 |

Description: Requested by IG

Attorney Notes:

| Regulation | 2002032R | 5 CFR Part 330 | 02/21/2002 | OMP | Closed | 02/25/2002 | Sharpe, Stacey K. Gieseler, Christian | 02/25/2002 |
|---|---|---|---|---|---|---|---|---|

Description: To inform OMP of an OPM-issued regulation regarding hiring priorities for displaced Lorton employees.

Attorney Notes:

| Regulation | 2001128R | Availability Pay | 05/01/2001 | OI | Closed | 08/31/2001 | Sharpe, Stacey K. Gibson, Fred W. Cosgrove, Michael S. | 08/20/2001 |
|---|---|---|---|---|---|---|---|---|

Description: To determine limitations regarding Investigators compensation in the form of caps.

Attorney Notes: 08/18/2001 (SHARKINS) - According to Fred, no additional research is needed though more work is expected to come. Mike completed a memo on Availability Pay.

07/20/2001 (SHARKINS) - Additional research will resume once other highly prioritized assignments have been completed.

06/01/2001 (SHARKINS) - Met with Fred on May 30th. Based on conversation, research needs to be geared toward case law and legislative history.

05/11/2001 (SHARKINS) - On 5/10 discussed progress with Fred. He made suggestions, and as a result, the research will be continued.

| Category: | OC File#: | Short Title: | Attorney Notes: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|---|
| Regulation | 2001020R | "Cookies" | | 01/24/2001 | OA | Closed | 03/08/2001 | Gieseler, Christian Sharpe, Stacey K. | 03/08/2001 |

**Description:** To determine whether FDIC's "cookie" files, if archived, poses FOIA implications

Attorney Notes:

02/01/2001 (CGIESELER)

01/26/2001 (CGIESELER) -

01/26/2001 (SHARKINS) - On 1/25, I gave Chris a copy of a Tennessee case that may to some extent help resolve OA's legal question. Chris will meet with auditors to determine how to proceed.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20040103 | | 03/01/2004 | OI | Closed | 03/02/2004 | Vosburg, Adriana Sharpe, Stacey K. | 03/30/2004 |

Description: Information pertaining to

Attorney Notes: 03/02/2004 (AVOSBURG,

| Subpoena | 20030603 | | 04/03/2003 | QA | Closed | 04/04/2003 | Sharpe, Stacey K. Gieseler, Christian | 06/30/2003 |

Description:

Attorney Notes:

04/07/2003 (TFEWELL) -

Monday, January 30, 2006

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20030648 | | 04/03/2003 | OA | C... . | 04/04/2003 | Sharpe, Stacey K. Gieseler, Christian | 06/30/2003 |

Description:

Attorney Notes: 06/30/2003 (CGIESELER).

04/23/2003 (CGIESELER)

04/21/2003 (CGIESELER)

04/11/2003 (CGIESELER)

04/07/2003 (TFEWELL).

| Subpoena | 20030528 | - | 03/21/2003 | OA | Closed | 03/24/2003 | Gieseler, Christian Sharpe, Stacey K. | 04/03/2003 |

Description:

Attorney Notes: 04/03/2003 (TFEWELL).

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20021768 | | 08/12/2002 | 01 | Closed | 08/16/2002 | Sharpe, Stacey K. | 10/24/2002 |

Description:

Attorney Notes: 10/24/2002 (SHARKNB) - on 10/22/02 Chris received a letter from R. Robinson, Schwartz's attorney, wishing to discuss settlement. Advised SA Toyer and Fred about letter. Left voicemail with Ben Crowley, DRR regarding matter, including need to have any settlement agreement reflect need to cooperate with OI. Left voicemail message with Robinson advising him to call Crowley about the settlement process.

09/18/2002 (TFEWELL).

| Subpoena | 20021748 | k | 09/12/2002 | 01 | Closed | 09/18/2002 | Sharpe, Stacey K. | 10/24/2002 |

Description:

Attorney Notes: 10/24/2002 (SHARKNB) - On 10/22/2002, Chris received a letter from R. Robinson, Schwartz's attorney, wishing to discuss settlement. Advised SA Toyer and Fred about letter. Left voicemail with Ben Crowley, DRR regarding matter, including need to cooperate with OI. Left voicemail message with Robinson advising him to call Crowley about the settlement process.

09/18/2002 (TFEWELL).

| Subpoena | 20020393 | | 02/19/2002 | 01 | Closed | 02/20/2002 | Sharpe, Stacey K.<br>Gibson, Fred W. | 02/22/2002 |

Description:

Attorney Notes:

| Subpoena | 2001273S | | 10/17/2001 | 01 | Closed | 11/09/2001 | Black, Patricia M.<br>Sharpe, Stacey K. | 11/09/2001 |

Description: Misrepresentation of Insurance

Attorney Notes:

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20012845 | | 10/05/2001 | OI | Closed | 10/12/2001 | Fewell, Theresa D. Gibson, Fred W. Sharpe, Stacey K. | 10/16/2001 |

Description: T200-041            Attorney Notes: 10/05/2001 (TFEWELL; T200-041.

| Subpoena | 20012539 | | 10/05/2001 | OI | Closed | 10/12/2001 | Fewell, Theresa D. Gibson, Fred W. Sharpe, Stacey K. | 10/16/2001 |

Description: T200-041            Attorney Notes: 10/05/2001 (TFEWELL T200-041.

| Subpoena | 20012525 | | 10/05/2001 | OI | Closed | 10/12/2001 | Fewell, Theresa D. Gibson, Fred W. Sharpe, Stacey K. | 10/16/2001 |

Description: T200-041            Attorney Notes:

| Subpoena | 20012518 | | 10/05/2001 | OI | Closed | 10/12/2001 | Fewell, Theresa D. Gibson, Fred W. Sharpe, Stacey K. | 10/16/2001 |

Description: T200-041            Attorney Notes: 10/05/2001 (TFEWELL)
T200-041.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20012903 | | 10/03/2001 | OI | Closed | 10/12/2001 | Fewell, Theresa D. Gibson, Fred W. Sharpe, Stacey K. | 10/16/2001 |

Description: T200-041    Attorney Notes:

| Subpoena | 20012448 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041    Attorney Not.

| Subpoena | 20012449 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041    Attorney Note

| Subpoena | 20012428 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041    Attorney Notes:

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20012415 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041

Attorney Notes:

| Subpoena | 20012409 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |
|---|---|---|---|---|---|---|---|---|

Description: T200-041

Attorney Note

| Subpoena | 20012399 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |
|---|---|---|---|---|---|---|---|---|

Description: T200-041

Attorney Note

| Subpoena | 20012369 | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |
|---|---|---|---|---|---|---|---|---|

Description: T200-041

Attorney Note

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 2001237S | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041

| Subpoena | 2001230S | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041                                    Attorney

| Subpoena | 2001230S | | 09/21/2001 | OI | Closed | 09/28/2001 | Sharpe, Stacey K. Gibson, Fred W. | 10/02/2001 |

Description: T200-041                                    Attorn

| Subpoena | 2001222S | | 09/19/2001 | OI | Closed | 09/20/2001 | Sharpe, Stacey K | 09/24/2001 |

Description: To ascertain records regarding          Attorney Notes:

| Subpoena | 2001104S | | 06/08/2001 | OI | Closed | 08/11/2001 | Sharpe, Stacey K. Gibson, Fred W. | 08/11/2001 |

Description:                                          Attorney Notes:

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20011478 | | 08/01/2001 | OI | Closed | 08/08/2001 | Sharpe, Stacey K. Gloeeler, Christian | 08/03/2001 |

**Description:**

**Attorney Notes:** 08/03/97''

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20011033 | | 04/09/2001 | OI | Closed | 04/10/2001 | Sharpe, Stacey K. Gloeeler, Christian | 04/10/2001 |

**Description:** to collect restitution

**Attorney Notes:** 08/01/2001 (SHARKING) - completed first draft, which was reviewed by Chris and forwarded to Fred.

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20010078 | | 01/12/2001 | OI | Closed | 01/17/2001 | Sharpe, Stacey K. Gieseler, Christian | 01/17/2001 |

**Description:** The business account(s) that are sought are for company Original Construction Projects, LTD, which is a corporation.

**Attorney.**

| Subpoena | 20010008 | | 01/11/2001 | OI | Closed | 01/18/2001 | Sharpe, Stacey K. Gibson, Fred W. | 01/17/2001 |

**Description:** to obtain records from

| Subpoena | 20003378 | | 12/13/2000 | OI | Closed | 12/21/2000 | Gieseler, Christian Sharpe, Stacey K. | 12/28/2000 |

**Description:** Subpoena for Financial Records      **Attorney Notes:** 12/13/2000 (TFEWELL).

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20003368 | | 12/13/2000 | OI | Closed | 12/21/2000 | Glaeseler, Christian Sharpe, Stacey K. | 12/28/2000 |

**Description:** Subpoena for Financial Records

**Attorney Notes:** 12/13/2000 (TFEWELL) -

| Subpoena | 20003368 | " | 12/13/2000 | OI | Closed | 12/21/2000 | Sharpe, Stacey K. | 12/28/2000 |
|---|---|---|---|---|---|---|---|---|

**Description:** Subpoena for Financial Records

**Attorney Notes:** 12/13/2000 (TFEWELL) -

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|-----------|-----------|--------------|-------------|---------|---------|-----------------|-----------------|--------------|
| Subpoena | 20003349 | | 12/13/2000 | OI | Closed | 12/21/2000 | Gieseler, Christian Sharpe, Stacey K. | 12/29/2000 |

Description: Request for Financial Records          Attorney Notes: 12/13/2000 (TFEWELL) -

| Subpoena | 20002789 | | 10/10/2000 | OI | Closed | 10/12/2000 | Bernardo, Andrea Q. Sharpe, Stacey K. | 10/12/2000 |

Description: Subpoena for Records          Attorney Note:

| Category: | OC File#: | Short Title: | Start Date: | Client: | Status: | Date Completed: | Staff Assigned: | Last Update: |
|---|---|---|---|---|---|---|---|---|
| Subpoena | 20002029 | | 09/26/2000 | OI | Closed | 09/26/2000 | Sharpa, Stacey K.; Gibson, Fred W. | 10/03/2000 |

Description: Concealment of Assets Case

Attorney Notes: 10/03/2000 (SHARKINS) - re: Concealment of Assets by Leonard Ginsberg, a former debtor who claims to have no assets. It has been reported that Mr. Ginsberg's wife purchased vehicles in cash from Newport Auto Center dealership in the last several years.

The agent is seeking any and all documents relating to the purchase or lease of any vehicles to Leonard Ginsberg, Deborah Osborne Ginsberg or Deborah Osborne, Michael Ginsberg, Steven Clineberg, Shelley Ginsberg and Robert Ginsberg from January 1, 1998 to the present, including CRTs (form 8300), copies of checks and money orders (front and back).

| Subpoena | 20002385 | | 09/27/2000 | OI | Closed | 09/28/2000 | Sharpa, Stacey K.; Bonnardo, Andrea Q.; Glessler, Christian | 10/06/2000 |

Description: Allegation that received gifts from a

Attorney Notes: 10/06/2000 (TFEWELL) -

10/03/2000 (SHARKINS) - It has been alleged that Tournament as a guest of ... Callery, President, STSI. It has been confirmed that STSI is a ... attended several tournaments in the past. ... attended a ...tional Basketball and

Description of the Records to be Subpoenaed including Scope of Time Period Covered by Subpoena - Any and all corporate expense reports, general ledgers, and travel records for the period from January 15, 1998 through April 15, 1998; January 15, 1999 through April 15, 1999 and January 15, 2000 through April 15, 2000.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
STACEY K. SHARPE                              )
                                              )
              Plaintiff,                      )
                                              )        Civil Action No. 06-1743 (RBW)
                                              )
SHEILA C. BAIR, Chairman                      )
Federal Deposit Insurance                     )
  Corporation                                 )
                                              )
              Defendant.                       )
                                              )
_____)

**<u>ORDER</u>**

         UPON CONSIDERATION of Defendant's to Dismiss, or in the Alternative, for Summary

Judgment, any Opposition thereto, and for good cause shown,  it this _____ day of _____ ,

2007.

         ORDERED, that the said motion should be and hereby is granted; and it is

         FURTHER ORDERED that plaintiff's complaint be and hereby is dismissed, and

summary judgment entered for defendant.


                              _____
                              UNITED STATES DISTRICT JUDGE


Copies to:

**Attorney for Defendant**          **Plaintiff Counsel**
Wyneva Johnson                      David H. Shapiro, P.C.
555 Fourth Street, N.W. E-4106      Swick & Shapiro, P.C.
Washington, D.C. 200530             1225 Eye Street, N.W. , Suite 1290
                                    Washington, D.C. 20005-3914