## AFFIDAVIT

**District of Columbia**                                }

**I, Patricia M. Black, hereby affirm under the penalty of perjury and make this statement.**

My name is Patricia M. Black; I am a Caucasian, and am employed as the Deputy Inspector General (IG) and am temporarily Acting IG of the Federal Deposit Insurance Corporation (FDIC), because the IG position is presently vacant. I became the Deputy IG on April 8, 2002, and Acting IG January 3, 2005. I began working for the Resolution Trust Corporation (RTC) in October 1989, and with the FDIC Office of Inspector General (OIG) when the RTC merged with FDIC, in January 1996.

As the Acting IG, my general supervisor is the Vice Chairman of the FDIC, John Rich, and I do not believe there is a second level supervisor, because the Chairman of the FDIC has delegated general supervision authority to Mr. Rich.

I first met the Complainant in early 1998, when I was Counsel to the IG, when she was interviewed for the position of Paralegal Specialist a few weeks before she came to work in my office in March 1998. From March 1998 through April 2002, I was the Complainant's second level supervisor and my deputy, initially Larry Froehlich and then Fred Gibson, was her first level supervisor. When I became the Deputy IG, I was still the Complainant's second level supervisor, because, when Mr. Gibson became Counsel to

Page 1 of 4                                                                                          Affiant's Initials ____

the IG, he reported to me. I am aware that the Complainant is dark skinned and appears to be Black, but do not know how she self-identifies her race.

I was the individual who directed the Complainant's reassignment from the Paralegal Specialist to the Human Resources Specialist (Benefits) position. I had discussions with Mr. Gibson, Trina Petty, Director of the FDIC, OIG Human Resources Branch (HRB), Rex Simmons, Ms. Petty's supervisor, and Gaston Gianni, then the IG and my supervisor at that time. I also spoke to the Complainant.

A lack of paralegal work for the Complainant had developed over time. When the Complainant was hired as a Paralegal Specialist in 1998, the OIG was an organization with over 240 authorized positions, of which about 230 were actually encumbered. We were still cleaning up after the banking crisis, and there was a substantial amount of paralegal work. However, by the time I directed the Complainant's reassignment, that had changed. For example, the Freedom of Information Act (FOIA) backlog she helped handle was gone, and FOIA requests were down. We were an office of about 160 employees, and still declining. Discovery requests had also been declining. There was not enough paralegal work to keep the Complainant busy full time. I spoke to Mr. Gibson and Ms. Petty, and they agreed the Complainant was a good candidate to do the work in the HRB, where her skills could be used.

As the FDIC continues to downsize, so does the OIG. Therefore, sometime prior to making the decision to reassign the Complainant, I asked all of my office heads in the OIG to look at their offices to determine what surpluses or vacancies might exist. The FDIC had an ongoing buyout program, and we were looking at whether we had surplus

positions to determine whether to participate in the buyout. The Complaint's position was identified as surplus.

I was not aware the Complainant said she was not qualified for the position of Human Resources Specialist (Benefits). However, as I stated in my letter to the Complainant regarding the directed reassignment: "Although you are not presently trained to fully handle the duties of the Human Resources Specialist position, through classroom and on-the-job training I am confident that you can obtain the skills to fully perform those duties within a reasonable amount of time." We in fact identified training to assist the Complainant in performing the work.

I was not aware the Complainant stated there was another position available in the HRB that more closely met her skill set, but I am familiar with all vacancies that existed in the OIG at that time. There was a position that was announced shortly before or after this time frame that was advertised, but it was a CG-14. A CG-11, which is the Complainant's grade level, cannot be directed into a CG-14 position. Had the Complainant believed she was qualified for that position, she could have competed for it. However, the position announcement was later cancelled because the incumbent employee, who had notified us that she was leaving the OIG HRB, did not actually leave. At no time was the Complainant's race a factor in the decision to give her a directed reassignment.

I have no further information to add.

**I have read the forgoing statement consisting of __4__ page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.**

Page 3 of 4                                                                                    Affiant's Initials

_____
Patricia M. Black

Subscribed and sworn before me at  Washington, D.C.
on this  19th  day of  May , 2005

_____
Craig A. Brieske, Investigator
US Investigations Services

Affiant's Initials _____



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room B01-1231), Arlington, VA 22226-3500          Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _[signature]_          DATE: 5-12-05

## PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____  _____
Signature of Interviewer            Signature of Witness (person providing statement)

Date: 5-12-05

Place: Washington DC