## AFFIDAVIT

**District of Columbia**                    }

**I, Frederick W. Gibson, Jr., hereby affirm under the penalty of perjury and make this statement.**

My name is Frederick W. Gibson, Jr., I am a Caucasian, and currently employed as Counsel to the Inspector General, EM-905, in the Office of Inspector General (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C. I formally became the Counsel to the Inspector General in the fall of 2002, and prior to that I was the Deputy Counsel to the Inspector General. I began working for the FDIC, OIG, on January 1, 1996, when the Resolution Trust Corporation merged with the FDIC, OIG.

Patricia M. Black, Deputy Inspector General, FDIC, OIG is my current first line supervisor. At present, I have no second line supervisor, as that would be the Inspector General, which position is currently vacant. My second line supervisor was Gaston L. Gianni, Jr., who was the Inspector General until his retirement on December 31, 2004.

The Complainant worked for me and had done so for a number of years while I was her first line supervisor as Counsel to the Inspector General. Through this working relationship, I surmised the Complainant was African-American.

I had no involvement in the decision to reassign the Complainant. The reassignment was directed by Ms. Black, the Deputy Inspector General. My understanding is that Ms. Black concluded that the Paralegal Specialist position did not and could not occupy the Complainant on a full-time basis, because there was not enough work, and the Human Resources specialist position, which was also a grade 11, would keep her employed full-time.

As a Paralegal Specialist in the Office of Counsel to the Inspector General, the Complainant performed a number of duties, including: maintaining an opinions log; handling the intake and initial processing and review of Freedom of Information Act (FOIA) and Privacy Act requests; performing occasional research; and managing, to the extent we had document-heavy litigation, the identity and flow of documentary materials in connection with cases; and other duties as assigned, but I cannot remember any other duties that were assigned. To my knowledge the full performance level of this position is a grade 11, without further promotion potential.

When I became Counsel to the Inspector General, the Complainant was incumbent in the position of Paralegal Specialist, so I did not interview her, nor did I review her applications, so my understanding of her experience is based on what I believe I have been told, and therefore it may not be complete. My understanding is that the Complainant came from a Paralegal position in the FDIC Legal Division. I knew the Complainant had specialized training and an undergraduate degree and perhaps first year law school, so that education and training clearly was relevant to doing paralegal type work. While the Complainant was here, she took some FOIA and Human Resources training. The Complainant expressed an interest in doing more work in the employee relations area, and she took training in that area, as well as in EEO and dispute resolution. The Complainant also completed a research course.

I do not know the duties and responsibilities of the Human Resources Specialist (Benefits) position. My understanding is that the full performance level of this position is CG-11, but I do not know for certain. I understand the Human Resources Specialist (Benefits) position in question is equivalent in terms of grade and promotion potential to

the Complainant's former Paralegal Specialist position. However, I do not know what the Complainant's specific duties in the Human Resources Specialist (Benefits) position are.

My understanding of the way the Human Resources office works is that because it is a small office, people there are expected to be able to pitch in on a variety of matters in addition to their own principal area of responsibility. My hope and assumption is that whatever exposure and training the Complainant had in Human Relations related matters while in Counsel's office will be helpful to her. But I cannot really address how the Complainant's background ties into her current position description other than she took some Human Resources related training.

To my knowledge Ms. Black informed the Complainant of the directed reassignment verbally. I do not know specifically on what day this conversation would have taken place. I was not present when the Complainant was informed of the directed reassignment, so I do not know what she said at that time. I do not know what the Complainant was told as the reason for the reassignment at that time, because I was not there. My understanding from subsequent discussion is that Ms. Black told the Complainant there was work in Ms. Petty's office and not enough in the Counsel's office. I believe Ms. Black told the Complainant this in the discussion where she gave her the reassignment, but this is all something I heard second-hand, I was not there. Subsequent to the time of her reassignment, the Complainant said very little to me on this or any other subject.

I do not remember the Complainant telling me that she believed she was not qualified for the position of Human Resources Specialist (Benefits). The Complainant

and I had several conversations about a potential position in the Human Resources Branch (HRB), but I do not believe that she ever indicated she felt unqualified for the position. Equally though, it was clear she would have to take training to become familiar with the position and whatever the rules and requirements were governing the position. The Complainant never came out and said she was not qualified, but a tacit understanding that I had, and thought we both had, as part of our conversations was a need for training, and it was my understanding that training would be made available if she were to take the position.

The Complainant told me she believed there was another position in the HRB that more nearly matched her skill set. The Complainant's belief was that there was going to be a Benefits and a separate Employee Relations Specialist position. My recollection is that there was no Employee Relations position at that time. These discussions were part of a series of conversations that took place prior to the time of the directed reassignment, when the Complainant had been talking with Ms. Petty about a position in the HRB. However, there was no discussion about a possible directed reassignment. The reassignment was something that, from my perspective, just happened. Ms. Black made the decision and it happened.

Prior to the Complainant's reassignment there was a continuing discussion about potential ongoing downsizing in the OIG. We had gone through a period of buyouts in our business lines, particularly in the Office of Audits, and had downsized significantly. During late 2003 and into early 2004, however, it became clear there would be continued pressure to downsize even further. There began to be discussions about ways in which the FDIC, OIG could downsize further. Those discussions led to a conversation between

Ms. Black and myself as office head, about whether I would consider any position surplus in my office because of a lack of work. I believe Ms. Black had similar conversations with each of the other office heads in the FDIC, OIG, but because I did not participate in them, I do not know for certain. I told Ms. Black that I did not believe that there was sufficient work that could be performed by a Paralegal Specialist to justify a full-time position in our office. That was a management call based on daily supervision of the activities of the lawyers and the paralegal in my office. In any case that discussion, over time, I believe led to consideration as to whether there were other positions within the FDIC, OIG that either were surplus or would have to be filled because of changes in workload and office responsibilities. That was the background out of which discussions took place over the position in the HRB, that was discussed with the Complainant. It was clear Ms. Petty had needs in that office and that we did not have enough work to keep someone at the Complainant's grade level employed on a full-time basis.

At the time the Complainant was reassigned she had very little ongoing work. The opinion log was something Ms. Theresa Fewell, the Legal Assistant, could keep up, and I do not know if we have since even issued any opinions to be included in it. Chris Gieseler, an Attorney who does the vast majority of FOIA work, is keeping up the FOIA log. There is no need for an independent discrete paralegal function in my office.

My understanding is that a directed reassignment is always within the discretion of management, and I do not believe there are any specific policies and procedures in effect governing the exercise of that discretion. To my knowledge the Complainant was not reassigned because of her race.

I have no further testimony to provide.

I have read the forgoing statement consisting of __6__ page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.

_____
Frederick W. Gibson, Jr.

Subscribed and sworn before me at __Washington, D.C.__
on this __13th__ day of __May__, __2005__

_____
Craig A. Brieske, Investigator
US Investigations Services

Page 6 of 6                                        Affiant's Initials __FWG__



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____    DATE: 5/9/2005

PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
(OTHER THAN COMPLAINANT)
FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____        _____
Signature of Interviewer                Signature of Witness (person providing statement)

Date: May 9, 2005

Place: _____