## AFFIDAVIT

**District of Columbia** }

**I, Rex A. Simmons, hereby affirm under the penalty of perjury and make this statement.**

My name is Rex A. Simmons, I am White, and am currently the Assistant Inspector General for Management and Congressional Relations, EM-301, in the Office of Management and Congressional Relations, Office of Inspector General, (OIG), Federal Deposit Insurance Corporation (FDIC), Washington, D.C. While my job title has changed, the most accurate date when I began working in my current position is January 1, 1996. I was hired by the FDIC on August 17, 1990, at the Resolution Trust Corporation, and worked with the OIG there, until it merged into the FDIC in January 1996.

I have one supervisor, Patricia Black, Acting Inspector General, and she began working in that position on January 1, 2005. Prior to that Ms. Black was the Deputy Inspector General, but I do not know when she started in that position.

I knew the Complainant worked in the Counsel's office as a Paralegal Specialist, but I did not know her very well. I had no organizational relationship with the Complainant other than we both worked in the OIG. I have seen the Complainant and assume she is African-American.

Prior to the Complainant's reassignment, Ms. Black approached me to discuss Complainant's possible placement in the Human Resources Branch (HRB). While I cannot remember the exact date of this discussion, I believe it to be in the summer of 2004. The HRB had a vacancy for several months for a Benefits Specialist, which we

advertised, but we did not find a suitable candidate who would accept the position. Ms. Black told me the Complainant had a lack of work in the Counsel's office, and without the reassignment the Complainant's position would be abolished for lack of work, and she thought she might be suitable for the position and wanted to know my thoughts. I told Ms. Black that if the Complainant could do the job, I was agreeable to the reassignment.

I agreed that I would work with the Complainant to insure she received the training to fill the Benefits Specialist position. I do not have any first-hand knowledge, but assume her supervisor, Fred Gibson, would have been involved in the decision to make the reassignment. Trina Petty, Director of Human Resources was also involved because she is the first line supervisor for the incumbent in the Benefits Specialist position and in her Human Resources capacity, she is involved with all directed reassignments.

I can explain the duties and responsibilities of the Human Resources Specialist (Benefits) in general terms, and Ms. Petty can give more specifics. There are two main aspects to this position. The first aspect involves benefits, wherein the Complainant provides information on benefits to employees, and helps in processing benefit actions. The second aspect to the job is in training and work as a Training Officer to review and approve training requests in part for accuracy. Once there is supervisory approval of a training request, the Complainant reviews the request, awaits final approval, registers and pays for the training with a procurement credit card, and helps to ensure the employee closed out information in the system and receives credit for the hours for having attended the training. I am not aware of any relationship these duties and responsibilities have to

the Complainant's prior education, training and work experience. The Complainant was described as a smart and personable individual who could learn to perform the duties of the Human Resources Specialist (Benefits) position, and that is what I have found her to be.

Between September 23, 2004 and November 30, 2004, we advertised a grade 14 Human Resources Specialist, and that is the only position advertised in the HRB during this period. We were anticipating a vacancy, and as it has turned out, so far we have never had a ~~position~~ VACANCY for the grade 14. We were planning on reorganizing, and the duties of the grade 14 would have included staffing, classification and employee relations, and we were looking for someone with a very high level of knowledge in these areas. There is currently a grade 13 in a position, who had told us she was leaving for another position. With that information, we were taking the opportunity to reorganize, however, the grade 13 has not yet left, and because we do not have any open position in the HRB, we have not taken any actions to fill the grade 14 position for which we advertised.

I was not aware the Complainant claimed she was not qualified for the position of Human Resources Specialist (Benefits). I did not assume the Complainant was qualified to begin with, and therefore we approached the situation believing that she would need to have the training and development to perform the duties of the job. We have spent a lot of time in training the Complainant to get her up to speed in the position.

There was no vacant position in the HRB, either prior to or at the time of the reassignment, that more closely matched the Complainant's skill sets. Ms. Petty told me that the Complainant wanted an assignment as an Employee Relations Specialist, but we have never had a vacancy in that role. The incumbent has been in that position since

1998, and we were looking at combining the duties of the Employee Relations Specialist into the grade 14 position we had advertised. As part of that effort, the current Employee Relations Specialist has been placed into the new position description, which is the same as that which we advertised. In our reorganization, we would have had two grade 14 positions instead of the one in our current Human Resources organization.

Both the Paralegal Specialist position from which the Complainant was reassigned, and the Human Resources Specialist (Benefits) to which she was reassigned have a full performance grade level at CG-11.

My understanding is that management has the authority to reassign an employee to get work done commensurate with an employee's grade level, and that process was followed in the instance of the Complainant's reassignment. To my knowledge the Complainant was not reassigned because of her race.

I do not know what happened to the job duties the Complainant performed as a Paralegal Specialist. However, since the Complainant has been in my unit, she is a very good employee, and I look forward to working with her in the future. I think if the Complainant stays with this she will have a very bright and rewarding future.

I have no further testimony to provide.

**I have read the forgoing statement consisting of  5  page(s), each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections I have made have my initials next to the correction. This statement is made of my free will, without any threat, promise of immunity, or inducement. I understand that the information I have given is not considered confidential and that it may be shown to the interested parties.**

_[signature]_
Rex A. Simmons

Subscribed and sworn before me at ___Washington, D.C.___
on this __13th__ day of ___May___, 2005

_[signature]_
Craig A. Brieske, Investigator
US Investigations Services

Affiant's Initials _RAS_



**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500      Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes <u>prior to signing</u> the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _____   DATE: 5-6-05

PRIVACY ACT NOTICE TO COMPLAINANT INTERVIEW WITNESSES
(OTHER THAN COMPLAINANT)
FOR EMPLOYMENT DISCRIMINATION COMPLAINT INVESTIGATIONS

GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to FDIC activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary; however, failure on the part of FDIC employees to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you, up to and including termination. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____    _____
Signature of Interviewer            Signature of Witness (person providing statement)

Date: 5-6-05

Place: Washington, D.C.