## ADDENDUM TO AFFIDAVIT

District of Columbia                    }

I, Stacey K. Sharpe, under the penalty of perjury hereby affirm and make this statement which is provided as a supplement or addendum to my initial affidavit and is given in rebuttal to the statements made to the investigator by several management officials.

In rebuttal to Mrs. Black's Statement, I hereby aver as follows:

While Mrs. Black states in her affidavit that she does not know how I self-identify my race, my race identification is reflected in my SF-612 (application for employment) which was submitted by me in response to the Paralegal vacancy. Mrs. Black did interview me for a Paralegal position in 1998, and I would think that my racial self-identification would be obvious to her from that point in time.

Contrary to her statement, the only conversation that I had with Mrs. Black regarding the directed reassignment was based on her request to meet with me. At that meeting, she presented me with the memorandum directing my reassignment to the Human Resources Branch in Benefits.

Despite Mrs. Black affidavit comment that there was not enough paralegal work to keep me busy, OIG had recently hired additional Criminal Investigators and Auditors. Based on an increase in both Criminal Investigators and Auditors work output, my work load would have increased as they issue reports that are requested under FOIA and the Privacy Act as one of my main duties as a Paralegal was to process FOIA and Privacy Act requests.

In her affidavit, Mrs. Black states that she spoke to Mr. Gibson and Ms. Petty and they

agreed that I was a good candidate. I did not share the feeling that I was a good candidate for the Benefits job, and that belief was never communicated to me. In fact, Ms. Petty told me that I was not qualified for the Benefits position and would require a lot of training.

My position was the only position identified as "surplus" at the time at issue although a few months earlier the IG Counsel's office hired an attorney who had just recently finished law school and passed the bar. I do not understand how the Counsel's Office can justify having enough work to hire a new attorney with immediate promotion potential to the grade CG-15, and at the same time place me a paralegal on "surplus" status. Moreover, and unbeknownst to me at the time, the IG Counsel's office had promoted that newly hired attorney to the grade 12. Indeed, this same white female lawyer was subsequently promoted to the grade 13 immediately after I was reassigned on the forced detail out of the IG Counsel's office. She and I had worked on several projects as a team. The IG Counsel's office seemed to have enough work to keep this white woman busy and promoted, but not enough to keep me a black woman on. Once "surplus," I requested permission to apply for details to other positions. Mrs. Black rejected one of my requests. In short, neither did Mrs. Black nor did Mr. Gibson assist me in finding employment elsewhere. Instead, they suddenly directed my reassigned to Human Resources into the Benefit's position.

Ms. Petty and I identified the training that I would need to perform the duties of the Benefits position into which I was placed. Mrs. Black seemed to have had no involvement in this at all. While Mrs. Black acknowledges that a CG-14 position was advertised, she does not mention that a Benefit Specialist position was advertised as well. That position had potential to the CG-13. Prior to my placement in the Benefits job, no one mentioned any promotion

potential. In fact, I felt as if that position was a dead end for me. Mrs. Black stated that if I declined the reassignment, I would not have a job.

In rebuttal to Mr. Gibson's statement I hereby aver as follows:

In his affidavit, Mr. Gibson states that he had no involvement in the decision to reassign me. One would think, however, that his input and/or opinion were the basis of the reassignment since he was my first line supervisor. Indeed, it would be surprising if he did not have direct involvement in the decision to reassign me out of the IG Counsel's office.

In his affidavit, Mr. Gibson lists the duties that I performed as a Paralegal Specialist in the Counsel's office and states that he cannot remember any other duties that were assigned to me. In truth, he became my supervisor in 2000 and promoted me to the CG-11 level. Since that point, I performed many duties and assignments at his direction, and he never responded with any signs of disappointment in my work. Indeed, he never told me that I needed to improve in any aspect of my work. Still, he never took the time to assist me with my growth in the office, though he had at one point stated that he would get me more involved with the litigation aspect of responding to complaint filed by Office of Inspector General (OIG) employees against OIG management (*i.e.*, OIG employee relations). That never happened. Instead, Adriana Vosburg, the white female who was a law clerk in the IG Counsel's office at the time -- and for whose benefit an FTE was obtained through my having been made to suffer a directed detail to the Benefits position, was afforded the opportunity to become involved with employee relations assignments in the IG Counsel's Office.

Mr. Gibson also states in his affidavit that he does not know the full performance level of

the Benefits position to which I was sent on the directed detail. However, the woman who occupied that position for the past five years was a CG-12, and it is simply not believable that Mr. Gibson would be unaware of this fact in such a small OIG..

In his affidavit, Mr. Gibson states that he can not really address how my background ties into my current position other than the two HR courses that Counsel's Office approved. In fact, Mr. Gibson can not address how my background ties into my current Benefits position because at the time of my directed detail into that job my background did *not* include any significant knowledge of administering benefits to any OIG employees.

While it may be true as Mr. Gibson states that I never indicated to him that I felt unqualified for the Benefits position, I did communicated that I had interest in employee relations and staffing in an email that I sent to him. Also, in that email, I clearly stated that the Benefits position did not match my skill set. Additionally, while he states in his affidavit that it was his understanding that training would be made available if I took the Benefits position, he never mentioned that to me.

Mr. Gibson states that the reassignment was something that just happened. I do not believe that. The reassignment was based on input provided to Mrs. Black by Mr. Gibson. I believe that he saw the reassignment coming because he needed to move me out of IG Counsel's office to get an FTE for the white Ms. Vosburg. Why else would he attempt to persuade me to take the Benefits position on several occasions before I was forced to take it by directed detail? He even said that if a RIF took place, I had no bumping and retreating rights. I felt harassed and forced to accept the reassignment to the ruination of my career in paralegal work and destruction of my chances for advancement and personal fulfillment..

Although, according to Mr. Gibson, there was pressure to downsize significantly, OIG hired several Criminal Investigators and Auditors in this same time frame. Also, the IG Counsel's Office hired an attorney who just recently passed the bar. Still, Mr. Gibson claims to not believe that there was sufficient work that could be performed by a seasoned Paralegal Specialist with an excellent performance record. Incidentally, in order to try to preserve my paralegal-type prospects and to continue to apply my education and training, I even inquired about becoming a Criminal Investigator and getting one of those new jobs in the IG Counsel's office. Mr. Gibson was quick to reject that notion -- giving further proof to the view that I was forced out of the IG Counsel's office -- and sent to OIG's HR shop -- merely in order to make FTE room for a white person..

I have read the foregoing statement, consisting of __5__ pages, each of which I have initialed, and it is true and complete to the best of my knowledge and belief. Any corrections that I have made have my initials next to the correction. This statement was made of my free will without any threat, promise of immunity or inducement. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of May 2005.

*Stacey K. Sharpe*
Stacey K. Sharpe