UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
STACEY K, SHARPE            )
                            )
        Plaintiff,          )
                            )
                            )
                            )   Civil Action No. 06-1743 (RBW)
                            )
SHEILA C. BAIR, Chairman    )
Federal Deposit Insurance   )
  Corporation               )
               Defendant.   )
_____ )

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Stacey K. Sharpe filed this civil action and alleged that she was discriminated against on the basis of race (African-American) when her managers at the Federal Deposit Insurance Corporation (FDIC) "forced her from her paralegal position in the FDIC's Office of Inspector General Legal Counsel's by claiming that there was insufficient work for her and then replacing her with a higher paid white employee". Complaint, ¶ 1. Plaintiff also contended that less than two weeks after her involuntary reassignment, Fred Gibson, the Legal Counsel to the FDIC's Inspector General, selected Adriana Vosburg, a white female, for a permanent GS-13 Attorney position "doing virtually the same work that Ms. Sharpe was doing as a paralegal at the GS - 11 level". Complaint, ¶13. Plaintiff claimed that she was discriminated against on the basis of her race by shifting plaintiff's duties to a white employee who was paid

more than plaintiff. Complaint, ¶ 15. Plaintiff asserted that she suffered a loss of pay and severe curtailment of career opportunities because of unlawful race discrimination. Complaint, ¶ 16.

Defendant moved to dismiss, or alternatively for summary judgment. Defendant asserted that on October 1, 2004, Plaintiff was transferred from a grade 11 paralegal position, without promotion potential, in the Office of Inspector General's Office of Counsel to a grade 11, without promotion potential, Human Resources Specialist (Benefits) position in the Office of Inspector General's Human Resources Branch. Plaintiff did not suffer the requisite adverse action to establish a prima facie case of discrimination. Plaintiff did not suffer a change in grade, promotion potential, pay, or benefits. Both positions were non-supervisory. On December 11, 2005, Plaintiff was promoted to a grade 12 Human Resources Specialist position due to accretion of duties.

Plaintiff had expressed an interest in personnel work and had taken training in personnel law. She had also expressed an interest in transferring to the OIG Human Resources Branch if she could work in employee relations. There was no opening for employee relations and plaintiff was transferred to employee benefits. Three months following plaintiff's transfer to the OIG Human Resources Specialist position, in January 2005, until plaintiff's departure from the agency in April 2007, Defendant paid $12, 735.26 for plaintiff to pursue and receive a Masters degree in Management with a concentration in Human Resources Management.

Defendant further asserted that Plaintiff failed to demonstrate a prima facie case of discrimination in the instant case because Plaintiff could not establish any facts from which a discriminatory motive for her October 1, 2004 reassignment could be inferred.

Finally, Defendant argued that, even if Plaintiff could establish a prima facie case, summary judgment for the Defendant was still appropriate as the Defendant had articulated legitimate non-discriminatory reasons for its action, which established that there was insufficient paralegal work for Plaintiff to perform in the Office of Counsel after the FOIA backlog had been reduced, that Plaintiff's effort to compare her duties to those of an Agency Attorney must fail and that Plaintiff could not show that Defendant's actions were pretextual.

### Plaintiff Cannot Establish An Adverse Action

Defendant submits that Plaintiff's lateral transfer did not constitute an adverse action for the purposes of stating a prima facie case of discrimination. In Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999), the Court, at 457, announced its rule that:

> ...a plaintiff who is made to undertake or who is denied a lateral transfer -- that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. **Mere idiosyncracies of personal preference are not sufficient to state an injury.** (Emphasis added)

Here, the following facts clearly establish that Plaintiff's claims represent personal preferences which are insufficient to establish an injury. In late summer/early fall of 2004, Deputy Inspector General Patricia Black spoke with each of her subordinate office heads and requested that they determine which positions in their organizations were surplus to future needs as the agency would be required to downsize. Exhibit 10, Deputy IG Patricia Black's Affidavit at

2; Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 5. [1]

The Counsel to the Inspector General determined that the position of a full-time Paralegal was no longer required as there was not enough work to justify the position in his office. Plaintiff's ongoing assignments could be absorbed by the office's Legal Technician and the Associate Counsel responsible for information law issues, Christian Gieseler. Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 5; Exhibit 14, Legal Assistant Theresa Fewell's Affidavit, at 3.

At the same time, the OIG Human Resources Branch had been seeking a Human Resources specialist to perform the employee benefits duties. The OIG's former benefits specialist had transferred, and, despite advertisement, the OIG had been unable to find an acceptable candidate to fill this position. Exhibit 15, Assistant Inspector General for Management and Congressional Relations, Rex Simmons' Affidavit, at 1-2; Exhibit 16, Director of Human Resources Trina Petty's Affidavit, at 3.

Plaintiff had previously expressed an interest in doing personnel work, had taken government training in personnel law and was soon to be enrolled in a graduate degree program concentrating on human resources management. Exhibit 1, Plaintiff's Affidavit, at 2-3; Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 2; Exhibit 17, Plaintiff's Rebuttal Affidavit, at 4.

During the summer of 2004, the Counsel to the Inspector General spoke with Plaintiff on a number of occasions with regard to Plaintiff's transfer to the OIG Human Resources Branch to work in benefits. Exhibit 1, Plaintiff's Affidavit, at 2; Exhibit 2, OIG Counsel Fred Gibson's

---

[1] The Exhibits referenced herein are Defendant's Exhibits attached to Defendant's Motion To Dismiss or in the Alternative, for Summary Judgment, unless otherwise noted.

Affidavit, at 4. In these conversations, plaintiff indicated that she would be interested in transferring to the OIG Human Resources Branch if she could be assigned to work on employee relations matters. Exhibit 1, Plaintiff's Affidavit at 3, Exhibit 2, OIG Counsel Fred Gibson's Affidavit, at 4; Exhibit 17, Plaintiff's Rebuttal Affidavit, at 4. Plaintiff reiterated her interest in transferring to the OIG Human Resources Branch, if she could be assigned to work on employee relations matters in an e-mail message to the Counsel to the Inspector General and OIG Human Resources Director on August 24, 2004. Exhibit 18, Plaintiff's August 24, 2004 e-mail message to Mr. Gibson.

  Deputy IG Patricia Black spoke with the OIG Human Resources Director with regard to an involuntary transfer of plaintiff from a Paralegal position to the HR position in the OIG Human Resources Branch. Exhibit 10, Deputy IG Patricia Black's Affidavit, at 2 ; Exhibit 16, OIG Director of Human Resources Trina Petty's Affidavit, at 2. After a review of the United States Office of Personnel internal placement provisions, the Deputy IG prepared a letter to plaintiff transferring plaintiff from her grade 11 paralegal position to her grade 11 Human Resources specialist position in the OIG Human Resources Branch . Exhibit 19, Appendix III, FDIC Merit Promotion Plan's Inservice Placement Provisions; Exhibit 11, September 23, 2004 Letter from Deputy IG Black, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Position.

  The letter was delivered to the Plaintiff on September 23, 2004. Plaintiff accepted the involuntary transfer on October 1, 2004. Exhibit 11, September 23, 2004 Letter from Deputy IG Black, Subject: Reassignment of Plaintiff to Grade 11 Human Resources Position. On December 11, 2005, plaintiff was promoted to a grade 12 Human Resources Specialist due to accretion of

duties. Exhibit 25, SF-50 Reflecting Plaintiff's Promotion to Grade 12, Human Resources Specialist.

These facts, indeed show, that Plaintiff has not suffered an adverse personnel action and she cannot establish a prima facie case of discrimination based on race. Clearly, the source of Plaintiff's complaint is her annoyance that her personal preference for reassignment to the employee relations work rather than the employee benefits was not honored. Under these circumstances, Plaintiff cannot establish an adverse action in this case.

**Plaintiff, a Paralegal, is not a Comparable Employee to Attorney Adriana Vosburg**

Plaintiff argues, incorrectly, that it is the Defendant's position that she must identify a comparable employee in order to establish a prima facie case of disparate treatment discrimination. To the contrary, it is Defendant's contention that, inasmuch as Plaintiff insists on comparing herself to some other employee to establish her prima facie case of discrimination, that employee must be legally comparable, i.e., all relevant aspects of plaintiff's employment situation must be nearly identical to those of the comparative employee. Barbour v. Browner, 181 F.3d 1342 (D.C. Cir. 1999).

In her Opposition to Defendant's Motion, Plaintiff asserts that, rather than relying on a comparison with the treatment accorded to another employee, she has identified factual circumstances surrounding the decision to laterally transfer her from a full performance grade 11 paralegal position in the Office of Counsel to a full performance grade 11 Human Resources Specialist position in the Human Resources Branch from which a discriminatory intent can be inferred. Plaintiff's Opposition, at 26 - 27. The circumstances pointed to by the plaintiff, however, are either irrelevant to the question or consist of plaintiff's comparison of herself to a

more highly graded Hispanic Attorney, Adriana Rojas Vosburg, whom Plaintiff identifies as a "white employee.". Plaintiff's Opposition, at 6; 27.

In addition, in her Opposition, Plaintiff expands the allegations in her Complaint and alleges that the Counsel did not support her, a full performance level grade 11 paralegal, in her alleged quest for professional development as fully as he supported the professional development of Ms. Vosburg, then a grade 12 attorney. Plaintiff's Opposition, at 7; 37. Plaintiff further asserts that discrimination can be inferred from the Counsel "hiring" the same grade 12 attorney, because projections that work for attorneys would increase while laterally transferring Plaintiff because the work she was hired to do as a paralegal had decreased. Plaintiff's Opposition, at 28 - 33. Plaintiff alleges that the Office of Counsel had to get rid of her so as to make room for Ms. Vosburg. Plaintiff's Opposition, at 12; 34. Plaintiff also alleges that there are questions of material fact over whether there was enough work for her to do in the office of Counsel before her transfer. Plaintiff's Opposition, at 12 -14; 28.

Plaintiff's claim that these assertions support an inference of discrimination are based on Plaintiff's premise, that she, a grade 11 paralegal is factually and legally comparable to a grade 12 attorney. Plaintiff believes that she was entitled to be treated exactly the same as Ms. Vosburg, a grade 12 attorney, in any and all circumstances. Thus, any difference in treatment between Plaintiff, and Ms. Vosburg is illegitimate and discriminatory. Plaintiff's premise is legally invalid. For example, with regard to professional development, Plaintiff complains that the she was not assigned to work on personnel litigation while the white, grade 12 attorney was so assigned. Plaintiff's Opposition, at 7. This complaint assumes, without explanation, that the work which can be performed by a paralegal and an attorney in litigation are, in all cases, and

particulars, exactly the same.  This assertion ignores the fundamental fact that, while a paralegal may be able to perform tasks such as assisting in research and document compilation, only an Attorney can draft and sign pleadings, motions and briefs, prepare and examine witnesses, and perform any other of a myriad of tasks encompassed in the concept of legal representation of a party in litigation that fall outside the purview of a paralegal.

      Plaintiff also argues that an inference of discriminatory intent can be drawn from the Counsel's hiring of a white grade 12 attorney because work for an attorney was increasing at the same time that the work that Plaintiff had been hired to perform was decreasing. Plaintiff's Opposition, at 13 -14; 28 - 33.  To be clear, Ms. Vosberg, was first "hired," in November, 2001, as a term employee, some three years before the Plaintiff's lateral transfer in October 2004. Exhibit 8a, SF 50, November 4, 2001, Appointment of Ms. Vosberg.

      In the three years between Ms. Vosburg's hiring[2] and plaintiff's lateral reassignment, Plaintiff continued her work on an ever diminishing inventory of FOIA/Privacy Act matters. Exhibits 12a through 12 h, Extracts from the OIG's SemiAnnual Reports to Congress; Exhibit 31, OIG Counsel Workflow Report of the Plaintiff's Assignments for the period of January 1, 1990 through January 30, 2006.  In the first year of plaintiff's employment as a paralegal, April 1998 to March 1999, OIG Counsel responded to 48 FOIA Requests and/or appeals.  In the second year of

---

[2]Attorney Adrianna Vosberg's employment with the Office of Counsel progressed during the same three year period.  Ms. Vosberg was promoted to grade 12 attorney in February, 2003, some 19 months before plaintiff's lateral transfer, Exhibit 8c, SF 50, February 23, 2003, Promotion of Ms. Vosberg to grade 12; converted to an indefinite excepted service appointee in July, 2004, Exhibit 8d, SF50, July 2004, July 25, 2004, Conversion to Indefinite Excepted Service; and promoted to grade 13 attorney in November, 2004 about two months after plaintiff's lateral reassignment.  Exhibit 8e, SF 50, November 28, 2004, promotion grade 13.  Ms. Vosberg's promotion to grade 13 was the first step in a career ladder to the FDIC journeyman attorney grade 15.

her employment it dropped to 39. In the third year the number of FOIA matters declined to 31. Between April 2001 and March 2002 the number of FOIA matters processed dropped to 11. Although the next year saw a slight increase to 15, the overall downward trend continued the following year when ten FOIA matters were disposed of in the year from April 2003 through March 2004. Between April and September 2004, seven FOIA matters were concluded. Exhibits 12a - 12g, Extracts, Office of Inspector General Semiannual Reports to Congress, April 1998 through September 2004. This trend continued beyond plaintiff's transfer to HRB. During the 12 month period after her departure, OIG Counsel responded to 14 FOIA matters, compared to 48 during her first year of employment. Exhibit 12h, Extracts, Office of Inspector General Semiannual Reports to Congress, October 2004 through September 2005 . The same general decline affected other areas of work such as Reviews of Statutes, Regulations and Polices and Reviews/Issuance of Subpoenas. In general, only work in the areas of Advice and Counseling and Litigation increased. Defendant's Exhibits 12a through 12 h, Extracts for the OIG's Semiannual Reports to Congress; Defendant's Exhibit 31, OIG Counsel Workflow Report of the Plaintiff's Assignments for the period of January 1, 1990 through January 30, 2006. See also, Plaintiff's Exhibit 7, Deposition of Attorney Christian A, Gieseler, at 15-27. The import of these facts is clear, support work was declining and lawyer's work, advice and counseling, was increasing. There is nothing inherently peculiar, sinister or suggestive of discrimination in these circumstances.

  Plaintiff further asserts that the conclusive proof that she was laterally reassigned to make way for Attorney Adriana Vosberg can be found in the fact that in March 2005, six months after her lateral reassignment, the Office of Counsel only had five authorized positions. Plaintiff's

9

Opposition, at 12; 35. Plaintiff's assertion does not contradict the Defendant's evidence that in 2001, when Ms. Vosburg was first "hired," the Office of Counsel consisted of seven authorized positions. After the 2003 lateral reassignment of the Counsel to be Deputy IG, the authorized staffing level in the Office of Counsel was reduced to six as the Counsel was replaced by her Deputy Counsel who was, in turn, not replaced. After Plaintiff's lateral reassignment to Human Resources in October 2004, the Office of Counsel's authorized staffing was further reduced to five because the Plaintiff's position in the Office of Counsel was abolished. Defendant's Exhibit 30, March 28, 2006 Affidavit of Trina F. Petty; PX 36, Plaintiff's grade 11 Paralegal Position Description, Block 16, noting the abolishment of a grade 11 paralegal position on October 17, 2004. In fact, Plaintiff's assertion is entirely consistent with Defendant's argument. There was an authorized place for each employee. Each employee was in an authorized place until such time as the plaintiff was laterally reassigned and her position in the Office of Counsel was abolished.

 Plaintiff then makes the incredulous, unsupported assertion that the Agency invoked statutory Reduction in Force procedures, approximately16 months prior to her reassignment, to eliminate all the secretaries employed in the Office of Inspector General, and since those adversely affected at the Headquarters office in Washington were African American, then the decision to reassign plaintiff to the Human resources position was discriminatory. Plaintiff's Opposition, at 17; 38.

 Plaintiff further asserts, quite incredulously, that another employee's personal feeling that a decision to reassign her from a support position in the Office of Investigations to a support position in the Office of Audits in December 2004 was tainted by discriminatory animus somehow serves to create an inference of discrimination with regard to plaintiff's lateral

reassignment. Plaintiff's Opposition, at 38. Similarly, Plaintiff assigns sinister meaning to the fact that the majority of employees in the Human Resources Branch were African American and thus an inference of discriminatory motive for her reassignment can be drawn. Plaintiff's Opposition, at 27. None of these circumstances have any demonstrable bearing on the lateral reassignment at issue. They are irrelevant and constitute proof of nothing more than plaintiff's dissatisfaction that her personal preference for employee relations was not honored.

### Defendant Complied With The Agency Procedures In Plaintiff's Reassignment

Plaintiff further claims that proof of a discriminatory intent can be inferred from the Agency's violating its own procedures in laterally reassigning Plaintiff. Plaintiff's Opposition, at 35 - 36. Plaintiff does not point to any Agency procedures governing Agency directed lateral reassignments which were violated. In the instant case, Defendant directed plaintiff's lateral reassignment, and utilized the in-service placement procedures to insure that Plaintiff was qualified, in the Government personnel sense of the word, for the grade 11 Human Resources position. In this regard, the Defendant determined that Plaintiff could perform the duties of her new position, despite not having served a year in the next lower grade as a Human Resource Specialist, and entered into a training program to insure her success. Plaintiff's subsequent promotion demonstrates that Defendant's judgments in its reassignment were correct. There was no violation of an Agency procedure from which a discriminatory intent might be inferred.

### Plaintiff Has Not Established Pretext

In an effort to demonstrate that the Defendant's explanations for its decision were a pretext for discrimination, the Plaintiff asserts that the Defendant has made inconsistent

11

statements regarding the plaintiff's workload. Plaintiff's Opposition, at 28 - 29.  To the contrary, the Defendant has consistently demonstrated that the FOIA/Privacy Act matters that plaintiff worked on during her assignment to the office of counsel were steadily declining in number and complexity.  In 1998, there was a significant amount of work for a Paralegal in the OIG Office of Counsel because the office was processing a large backlog of FOIA and discovery work remaining  from the banking crisis of the early 1990's. Exhibit 10 at 2, Exhibit 11, Exhibits 12a 12h.  In the first year of plaintiff's  employment as a paralegal, April 1998 to March 1999, OIG Counsel's Office responded to 48 FOIA Requests and/or appeals. Exhibit 12a, Extract from the OIG's Semi-annual Report to the Congress, at 1 to 4.  In the second year of Plaintiff's employment, April 1999 through March 2000, OIG Counsel's Office responded to 39 FOIA Requests and/or appeals. Exhibit 12b,  Extract from the OIG's Semi-annual Report to the Congress, at 5 to 9.  In the third year of Plaintiff's employment, April 2000 through March 2001, the number of FOIA requests and/or appeals declined to 31.  Exhibit 12c,  Extract from the OIG's Semi-annual Report to the Congress, at 11 to 17. Between April 2001 and March 2002, the number of FOIA matters processed by the OIG Counsel's Office dropped to 11. Exhibit 12d, Extract from the OIG's Semi-annual Report to the Congress, at 19 to 24. The next year of Plaintiff's employment, April 2002 to March 2003,  saw a slight increase, to 15, in the number of FOIA matters processed by the OIG Counsel's Office. Exhibit 12e, Extract from the OIG's Semiannual Report to the Congress, at 25 to 28.  The OIG Counsel's Office disposed of 10 FOIA matters in the year from April 2003 through March 2004.  Exhibit 12f, Extract from the OIG's Semi-annual Reports to the Congress, at 29 to 32.  Between April and September 2004, 7 FOIA matters were processed by the OIG Counsel's Office. Exhibit 12g, Extract from the OIG's

Semiannual Report to the Congress, at 29 to 30. Thus, the backlog of FOIA requests that existed at the time of Plaintiff's hiring had been resolved and the FOIA and litigation discovery requests had decreased. Exhibit 10 at 2.

During the 12 month period after plaintiff's transfer to Human Resources, OIG Counsel's Office responded to 14 FOIA matters, compared to 48 matters during plaintiff's first year of employment as a paralegal in the OIG Counsel's Office. Exhibit 12h, Extract from the OIG's Semi-annual Reports to the Congress.

Plaintiff does not dispute these figures but argues that an inference of discrimination can be drawn if the work of a paralegal decreases and work of attorneys increase. Plaintiff's argument does not take into account the nature of the work performed or the perceived growth in attorneys giving advice and counsel to the IG's auditors or investigators. Once again, the plaintiff fails to recognize that there is an explicit difference between the work performed by paralegals and attorneys.

Finally, there is no valid dispute over the role played by Mr. Gibson in the Deputy IG's decision to latterly reassign the plaintiff. Although Plaintiff suggests that it was Mr. Gibson, not the Deputy IG, who actually directed her reassignment, Plaintiff has presented no evidence into the record, beyond her own suspicions, to suggest that Mr. Gibson played a role beyond that which he has freely admitted in affidavits and depositions. Plaintiff's disbelief of the facts is not sufficient to create a dispute or to render that dispute material.

## Conclusion

Based on all the foregoing, and its previous Memoranda, plaintiff's Complaint should be dismissed, or alternatively, summary judgment granted for defendant.

.

        Respectfully submitted,

        _____
        JEFFREY A. TAYLOR, D.C. BAR # 498610
        United States Attorney


        __/s/_____
        RUDOLPH CONTRERAS, D.C. Bar # 434122
        Assistant United States Attorney


        __/s/_____
        WYNEVA JOHNSON, DC Bar #278515
        Assistant United States Attorney
        555 4th Street, N.W., E-4106
        Washington, D.C. 20530
        (202) 514-7224


OF COUNSEL:
Michael S. Cosgrove
Associate Counsel to the Inspector General
Federal Deposit Insurance Corporation