# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STACEY K. SHARPE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1743 (RBW)** |
| | ) | |
| SHEILA C. BAIR, Chairman, | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORP., | ) | |
| Defendant. | ) | |
| | ) | |

## Memorandum Opinion

This matter is before the Court on the defendant's motion to dismiss pursuant to Rules

12(b)(1) and 12(b)(6) or, alternatively, for summary judgment pursuant to Rule 56(c) of the

Federal Rules of Civil Procedure (collectively, the "Def.'s Mot.").[1]  The plaintiff, Stacey K.

Sharpe, brought this lawsuit against the Chair of the Federal Deposit Insurance Corporation

("FDIC"), alleging discrimination based on her race in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-16(a) (2000), as a result of the defendant's decision to

involuntarily reassign her from a paralegal position to a position in the benefits department of the

FDIC's Office of the Inspector General ("OIG").  Upon consideration of the filings submitted by

---

[1] The following additional papers have been submitted in connection with this motion: (1) the defendant's
Memorandum of Points and Authorities in Support of the Defendant's Motion to Dismiss, or, in the
Alternative, for Summary Judgment ("Def.'s Mem."); (2) the Plaintiff's Opposition to Defendant's
Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pl.'s Opp'n"); (3) the Defendant's
Reply to Plaintiff's Opposition to the Defendant's Motion to Dismiss, or in the Alternative, for Summary
Judgment ("Def.'s Reply"); (4) the Defendant's Statement of Material Facts Not in Dispute ("Def.'s
Stmt."); and (5) the plaintiff's Statement of Genuine Issues ("Pl.'s Stmt.").

the parties and for the reasons set forth below, the Court will deny the defendant's motion to dismiss and grant the defendant's motion for summary judgment.

## I. Factual Background

The plaintiff, an African-American, "holds a Bachelor of Art's Degree in Journalism from the University of the District [of] Columbia and a second undergraduate degree in Paralegal Studies from the University of Maryland."  Complaint ("Compl.") ¶ 6.  The plaintiff "has also completed two semesters of law school at the University of the District of Columbia School of Law" and, at the time this lawsuit was brought, was "working on obtaining her Master's Degree in Management, with a concentration in Human Resources, from [the] University of Maryland University College."  Id.

In March of 1998, Patricia Black, then Counsel to the Inspector General, hired the plaintiff to work for the FDIC as a Paralegal Specialist in the Office of Counsel ("OC") to the OIG.  Id. ¶ 4; Defendant's Statement of Material Facts Not in Dispute ("Def.'s Stmt.") ¶ 1.  In this position, the plaintiff conducted legal research, drafted memoranda, maintained an opinions log, processed Freedom of Information Act and Privacy Act requests, prepared briefs on Equal Employment Opportunity related cases, commented on policies, and generally provided support to the Counsel to the Inspector General and other attorneys on the OIG's legal staff.  Def.'s Stmt. ¶ 3; Memorandum of Points and Authorities in Support of the Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Def.'s Mem."), Exhibit ("Ex.") 1 (Affidavit of Stacy K. Sharpe, Apr. 23, 2005 ) ("Sharpe Aff.") at 1, Ex. 2 (Affidavit of Frederick W. Gibson, May 13, 2005) ("Gibson Aff.") at 2.  When the plaintiff assumed the position, she was a Grade 7 employee, but she was promoted to the Grade 9 level in 1999 and ultimately reached the Grade 11 level.  Def.'s Stmt. ¶¶ 1-2.

In early 2000, Frederick Gibson, a Caucasian male, became the plaintiff's immediate supervisor. Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pl.'s Opp'n"), Ex. 3 (Deposition of Frederick W. Gibson, Feb. 7, 2006) ("Gibson Dep.") at 15:9-10, 118:10-119:22. Gibson was responsible for assigning the plaintiff work assignments and overseeing completion of those assignments. Id. at 118:10-119:22.

When the plaintiff was hired in 1998, approximately 230 employees worked in the OIG. Def.'s Stmt. ¶ 12; Def.'s Mem., Ex. 10 (Affidavit of Patricia Black, May 19, 2005) ("Black Aff.") at 2. By 2004, as a result of downsizing efforts and employee attrition, the OIG had only approximately 160 employees. Def.'s Stmt. ¶ 22; Def.'s Mem., Ex. 10 ("Black Aff.") at 2. Also in 2004, Black, the Deputy Inspector General, spoke with each of her four office heads and "requested that they determine which positions in their organizations were surplus to future needs," or what vacancies might exist. Def.'s Stmt. ¶ 25; Def.'s Mem., Ex. 10 ("Black Aff.") at 2; Pl.'s Opp'n, Ex. 4 (Deposition of Patricia Black, Feb. 7, 2006) ("Black Dep.") at 50:6-52:8. Black specifically asked Gibson to evaluate "the work [the OC] had and the work that [the OC] needed to be doing," determine whether the OC was "staffed at the appropriate levels," and whether Gibson had "the correct skill sets" and "the right people in the right jobs." Pl.'s Opp'n, Ex. 4 ("Black Dep.") at 65:9-66:1.

In July or August 2004, Gibson told the plaintiff that the Human Resources Branch of the OIG ("HRB") was going through reorganization, asked the plaintiff if she was interested in a position in the HRB, and recommended that she speak to an employee in that office named Trina Petty. Pl.'s Opp'n, Ex. 1 (Declaration of Stacey Sharpe, June 7, 2006) ("Pl.'s Decl.") ¶ 15. After speaking with Petty, the plaintiff told Gibson that she was not interested in the HRB position because she had no desire to do the type of work she would have to perform in the

position.  Id. ¶ 17, Pl.'s Opp'n, Ex. 3 ("Gibson Dep.") at 89:12-22.  Then, on August 24, 2004,

the plaintiff sent an e-mail to Gibson and Petty stating that she felt her "skills as well as [her]

interests [were] better suited for employee relations and/or classification" and she preferred not

to accept a transfer to the HRB.  Pl.'s Opp'n, Ex. 42 (E-Mail from Stacey K. Sharpe to Fred. W.

Gibson and Trina F. Petty, Sept. 26, 1999) at 1.

On September 23, 2004, Black informed the plaintiff that she was being reassigned to the

HRB effective October 17, 2004 due to the diminished volume of work she had been hired to

perform in the OC.  Pl.'s Opp'n, Ex. 44 (Letter from Patricia M. Black to Stacey Sharpe, Sept.

23, 2004) at 1.  To facilitate the plaintiff's reassignment, Petty used an "In-Service

Placement,"which, according to Petty, is typically used for voluntary transfers from one office to

another in situations where management modifies qualification standards for under-qualified

employees.  See Pl.'s Opp'n at 16, Ex. 5 (Deposition of Trina F. Petty, Mar. 14, 2006) ("Petty

Dep.") at 79:1-80:21.  Petty acknowledged that the plaintiff's reassignment was the only instance

when she had used an In-Service Placement for an involuntary transfer.[2]  Pl.'s Opp'n, Ex. 5

("Petty Dep.") at 79:13-19.

On October 1, 2004, faced with reassignment or termination if she refused to accept the

new position, the plaintiff accepted the reassignment as a Grade 11 Human Resources Specialist

(Benefits).  Def.'s Mem., Ex. 1 ("Sharpe Aff.") at 2; Pl.'s Opp'n at 10, Ex. 5 ("Petty Dep.") at

75:8-76:14.  To attain the skills necessary to perform the duties of the new position, the plaintiff

---

[2]  An In-Service Placement is a matter of agency discretion if the agency "determine[s] that an individual
can successfully perform the work of a position, even though the individual may not meet all the
requirements in the U.S. OPM [the United States Office of Personnel Management] qualification
standards."  Pl.'s Opp'n, Ex. 25 (Appendix III, Inservice Placement Provisions).  Accordingly, agencies
"may modify the U.S. OPM qualification standards for reassignments . . . when the applicant's
background includes related experience that provided the knowledge, skills, and abilities necessary for
successful job performance."  Id.

had to attend a structured training program for at least one year to "get up to speed in the

Benefits area while performing [her] duties."  Pl.'s Opp'n, Ex. 1 ("Pl.'s Decl.") ¶¶ 27-28.[3]

After accepting the new position, the plaintiff contacted an EEO Counselor on October

27, 2004, and filed a formal administrative complaint of discrimination in regards to her

reassignment with the FDIC on February 11, 2005.  Def.'s Stmt. ¶¶ 39, 42; see also Def.'s Mem.,

Ex. 22 (EEO Counselor's Report, Jan. 24, 2005) at 1, Ex. 25 (Plaintiff's Formal EEO Complaint,

Feb. 11, 2005) at 1-2.  The FDIC rendered a final decision rejecting the plaintiff's formal

complaint on July 14, 2006.  Pl.'s Opp'n at 18.  The plaintiff then brought this action on October

12, 2006, alleging that the defendant discriminated against her based on race in violation of Title

VII by reassigning her from the paralegal position in the OC to the human resources benefits

position and replacing her with a Caucasian attorney.[4]  Compl. ¶ 1; Pl.'s Opp'n at 18.

On October 15, 2007, the defendant filed a motion to dismiss this case, or in the

alternative moved for summary judgment, asserting the following: (1) the Court lacks subject

matter jurisdiction, (2) the plaintiff's reassignment was not an adverse employment action, (3)

the circumstances surrounding the plaintiff's reassignment do not create an inference of

discrimination, and (4) even if the plaintiff has established a prima facie case of discrimination,

the defendant has provided legitimate, non-discriminatory reasons for its actions and the plaintiff

has not established that those reasons were merely pretextual.  See generally Def.'s Mem.  In

response, the plaintiff challenges each of these assertions arguing that her "claim that she was

---

[3]  The total cost of this training exceeded six thousand dollars.  Pl.'s Opp'n, Ex. 5 ("Petty Dep.") at 84:8-85:20.

[4]  In May 2000, Gibson hired Adriana Vosburg, a Caucasian female who was a law student at The George Washington University School of Law at the time, as a Student Intern (Law Clerk) in the OC.  Pl.'s Opp'n, Ex. 3 ("Gibson Dep.") at 20:10-21:15, Ex. 6 (Deposition of Adriana Vosburg, Feb. 8, 2006) ("Vosburg Dep.") at 8:21-9:6.  In September 2001, after graduating from law school, Vosburg returned to the OC as a Grade 9 law clerk contractor, and after passing the Maryland bar examination she was promoted to a Grade 11 attorney position.  Pl.'s Opp'n, Ex. 6 ("Vosburg Dep.") at 40:1-49:3; Def.'s Stmt. ¶ 6.

involuntarily transferred out of her field because of her race is actionable under Title VII and

there are significant issues of material fact surrounding the circumstances of [her] forced transfer

and the veracity of the [defendant's] justifications for its actions." Pl.'s Opp'n at 1.

## II. Standards of Review

### A.  Rule 12(b)(1)

The defendant requests that the Court dismiss the plaintiff's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents

a threshold challenge to the court's jurisdiction . . . ."  Haase v. Sessions, 835 F.2d 902, 906

(D.C. Cir. 1987) (citation omitted).  Specifically, Rule 12(b)(1) permits dismissal of a complaint

if the Court has a "lack of subject matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  Under this

rule, "the plaintiff bears the burden of establishing that the court has jurisdiction."  Fowler v.

District of Columbia, 122 F. Supp. 2d 37, 39 (D.D.C. 2000) (citation omitted).  To avoid

dismissal under Rule 12(b)(1), a plaintiff must establish the Court's jurisdiction by a

preponderance of the evidence.  Moore v. Bush, 535 F. Supp. 2d 46, 47 (D.D.C. 2008) (citations

omitted); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (noting

that jurisdictional facts must be supported by "competent proof" or justified by a "preponderance

of evidence").  When determining the question of jurisdiction, federal courts must accept the

factual allegations contained in the complaint as true.  Cf. Leatherman v. Tarrant County

Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993) (In reviewing a court's

decision to grant a motion to dismiss, a reviewing court "must accept as true all the factual

allegations in the complaint.").  However, the Court can consider material outside of the

pleadings when determining whether it has jurisdiction.  Hohri v. United States, 782 F.2d 227,

241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987) (Because "[t]he District

Court . . . is not limited to the allegations of the complaint in deciding a Rule 12(b)(1) motion[,] the District Court properly relied on extra-pleading material in deciding the motion.").; accord Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992) (citation omitted); Haase, 835 F.2d at 906 (citations omitted); Grand Lodge of Fraternal Order of the Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (citations omitted).

### B.  Rule 12(b)(6)

The defendant also seeks to dismiss the plaintiff's case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Under this rule, a plaintiff need not allege specific details that prove the veracity of a claim; rather, a properly pleaded complaint only need contain a clear and concise statement of the claim sufficient to place a defendant on "notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  However, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief [in her complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, ____ U.S. ____, ____, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks and brackets omitted).  In evaluating a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, ____ U.S. ____, ____, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citations omitted), and "grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged . . . ." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted).  On the other hand, the Court need not accept inferences that are unsupported by the facts set forth in the complaint or "legal conclusion[s] couched as . . . factual allegation[s] . . . ." Id. (internal quotation marks and citations omitted).  For the purposes of a Rule 12(b)(6) motion, the Court may consider only the

facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take judicial notice.  E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). (citation omitted).

### C.  Rule 56

Alternatively, the defendant argues that she is entitled to summary judgment.  Rule 56 provides that summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that is capable of affecting the outcome of the litigation, and a genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment may not rely solely on conclusory allegations, but must set forth facts that are significantly probative.  Id. at 249-50 (citations omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."  Id. at 255.  Thus, when considering a motion for summary judgment, a court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in [her] favor."  Galvin v. Eli Lilly & Co., 488 F.3d 1026, 1031 (D.C. Cir. 2007) (internal quotation and citation omitted); see also Greene v. Amritsar Auto Servs. Co., 206 F. Supp. 2d 4, 7 (D.D.C. 2002).

Entering summary judgment is appropriate after there has been "adequate time for discovery . . . [and the] party [against whom the motion has been filed] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To survive a motion for summary judgment in a case of this type, a plaintiff must show that a reasonable jury could conclude from all of the evidence that there was an adverse employment action and that the action was taken for a discriminatory reason.  See Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc)).

### III. Analysis

Title VII requires that "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race . . . ." 42 U.S.C. § 2000e-16(a) (2000).  Where a plaintiff's claim of discrimination is "principally supported by circumstantial evidence," the claim is analyzed under the three-step framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[5]  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).  Under McDonnell Douglas, a plaintiff has the initial burden of proving a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  Once the plaintiff has established a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [the defendant's actions]."  Id.  If such an explanation is provided, the plaintiff then shoulders the burden of showing that the legitimate, nondiscriminatory reason offered by the defendant was a mere pretext for discrimination.  See id. at 804.  Importantly, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

---

[5]  "Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference.  Such evidence includes any statement or written document showing a discriminatory motive on its face."  Royall v. Nat'l Ass'n of Letter Carriers, 507 F. Supp. 2d 93, 103 n.15 (D.D.C. 2007) (Walton, J.) (quotation omitted and emphases in original).  The plaintiff does not claim to have produced direct evidence of discrimination and the Court concludes that there is no such evidence in the record.  See generally Pl.'s Opp'n.

### A.  The Defendant's Rule 12(b)(1) Challenge

Beyond summarily discussing the standard of review for evaluating jurisdictional challenges under Rule 12(b)(1), the defendant has done nothing more in her papers filed with the Court to advance this challenge.  See generally Def.'s Mem.  The plaintiff, on the other hand, has demonstrated with specificity why the Court does have subject matter jurisdiction.  See Pl.'s Opp'n at 18.  The plaintiff contends that she has met the prerequisites for filing a claim in this Court because (1) she "exhausted her administrative remedies by filing a timely administrative complaint of discrimination" with the FDIC, (2) the FDIC rendered a final decision rejecting the merits of the plaintiff's administrative complaint, and (3) she timely filed her judicial complaint in this Court within ninety days of receiving notice of the FDIC's final decision in regards to her administrative complaint.  Id.

The Code of Federal Regulations, which delineates the procedures necessary for filing a claim of discrimination under Title VII, states that an aggrieved party who believes she has been discriminated against on the basis of race "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ."  29 C.F.R. § 1614.105(a) (2008). After the individual has filed a formal complaint, she must give the agency time to investigate her allegations.  See id. § 1614.106(e).  Once the investigation has occurred and the agency has rendered a final decision, the aggrieved party, if necessary, may then file either an administrative appeal with the agency, id. § 1614.407(a), or a civil action in federal district court.  Id. § 1614.407.  However, an individual who desires to initiate a civil action must do so "[w]ithin 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed."  Id. § 1614.407(a)

In this case, the plaintiff contacted a counselor on October 27, 2004, which was within forty-five days after she received notice that she was being involuntarily transferred.  Then, on February 11, 2005, the plaintiff filed a formal administrative complaint with the FDIC.  The plaintiff received notice on July 14, 2006, that her administrative complaint had been rejected, which constituted final agency action.  On October 12, 2006, the plaintiff initiated her civil action in this Court, which was within ninety days after receiving notification of the agency's final action.

Against this background, the plaintiff correctly states that the defendant has "failed to advance any legitimate reason why this Court lacks subject matter jurisdiction to hear [the] plaintiff's claims."  Pl.'s Opp'n at 18.  Furthermore, the defendant ignored the jurisdictional issue in her reply after the plaintiff rebutted the defendant's challenge to the Court's jurisdiction in the plaintiff's opposition.  Accordingly, the defendant's Rule 12(b)(1) challenge must be rejected.

### B.  The Defendant's Rule 12(b)(6) Motion

The defendant has also moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, as with her Rule 12(b)(1) motion, the defendant has neglected to advance any argument concerning why the plaintiff fails to state a claim for relief; therefore, this challenge must also be rejected and the Court will move on to address the defendant's motion for summary judgment.

### C.  The Defendant's Summary Judgment Motion

To prove a prima facie case of racial discrimination, "the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  Brown v. Brody, 199 F.3d 446,

452 (D.C. Cir. 1999) (citation omitted).  Here, it is undisputed that the plaintiff, an African-American, is a member of a protected class.  Thus, the merits of the plaintiff's prima facie case rest on whether the plaintiff's reassignment to the HRB constitutes an adverse employment action, and whether that reassignment gives rise to an inference of discrimination.

### 1. Adverse Employment Action

An adverse action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  A plaintiff who is involuntarily reassigned without a reduction in pay or benefits suffers an actionable adverse employment action only if "there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Brown, 199 F.3d at 457.  "The clear trend of authority . . . is to hold that a . . . transfer that does not involve a demotion in form or substance . . . cannot rise to the level of a materially adverse employment action."  Id. at 455-56 (internal quotation marks and citations omitted).  Similarly, "purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions . . . ."  Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006).

The defendant argues that the plaintiff has not suffered an adverse personnel action because there was no change in her pay, benefits, or grade as a result of her reassignment as a Grade 11 Paralegal Specialist to a Grade 11 Human Resources Specialist (Benefits).  Def.'s Mem. at 2, 10-11.  Although the defendant acknowledges that the reassignment involved a

change in duties, she nonetheless contends that the "plaintiff did not suffer materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." Id. at 13.  Furthermore, the defendant asserts that the plaintiff's expressed interest in the area of human resources, specifically employee relations, is evidence that the reassignment was not adverse.  Id. at 2, 14.

The plaintiff, on the other hand, contends that she has suffered an adverse employment action because her involuntary reassignment forced her to take on "significantly different responsibilities and duties, and that as a result . . . , her future employment opportunities were appreciably altered."  Pl.'s Opp'n at 24.  In addition, the plaintiff argues that the transfer was "devastating," "[l]earning the skills necessary for the HR position was extremely difficult," and she "was forced to become an expert in a highly specialized area of benefits that had no relation to her previous work experience or education," which was more difficult due to her pregnancy at the time.  Id. at 24-25.  Essentially, the plaintiff asserts that her reassignment "caused a major change in the terms and conditions of her employment" and that she was deprived "of any chance to advance in her chosen career path."  Id. at 25.

Viewing the evidence in the light most favorable to the plaintiff, the Court concludes that a reasonable trier of fact could determine that the plaintiff suffered an adverse employment action.  Immediately after her reassignment, the plaintiff was assigned tasks commensurate with a Grade 5/7 entry-level position in the HRB.  Pl.'s Opp'n, Ex. 5 ("Petty Dep.") at 40:17-41:17. She therefore certainly suffered a "demotion in . . . substance" that lasted for at least twelve months.  See Brown, 199 F.3d at 456.  Moreover, the plaintiff has offered uncontroverted testimony that after her reassignment she was unable to competently answer employees'

questions about employee benefits until she completed her training program.  Pl.'s Opp'n, Ex. 1 ("Pl.'s Decl.") ¶ 28.

The plaintiff's diminished responsibilities are similar to those of the plaintiff in Holcomb.  See 433 F.3d at 902.  Here, as in Holcomb, the plaintiff was "performing tasks commensurate with a Grade 5 position," six grades below her actual Grade 11 status for approximately one year.  Id.  "Whether a particular reassignment of duties constitutes an adverse action . . . is generally a jury question" and "[t]he court may not take that question away from the jury if a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities."  Czekalski, 475 F.3d at 365 (citations omitted).  And a reasonable juror could certainly conclude that performing tasks so far below the plaintiff's grade level constituted objectively tangible harm.  See Holcomb, 433 F.3d at 903.

The employment disadvantages proffered by the plaintiff, specifically the difficulty of being forced to learn a new highly specialized area of human relations and the fact that the new assignment failed to relate to the plaintiff's prior position and education in any way, further casts the plaintiff's reassignment as adverse.  The plaintiff's contention that the reassignment deprived her of any chance to advance in her chosen career path, however, is questionable because, as a paralegal specialist, she could not have risen any higher in the OC without acquiring the qualifications of an attorney.  See Def.'s Mem. at 16, Ex. 9 (Position Description for GS-13 Attorney).  On the other hand, the defendant's reliance on the fact that the plaintiff began a master's program in management with a concentration in human resources during the summer of 2004, is not sufficient to negate the putative harm the plaintiff contends she suffered due to the defendant's actions.  For personal reasons unrelated to her paralegal position at the OC, the plaintiff was in the initial stage of pursuing a master's program in management.  Pl.'s Opp'n, Ex.

2 (Deposition of Stacey K. Sharpe, Feb. 1, 2006) ("Pl.'s Dep.") at 7:8-22.  That her particular

educational program had some emphasis on human resources does not preclude the plaintiff

from experiencing the objectively tangible harm of being uprooted and forced to quickly learn a

specialized field in which she had no interest.  Thus, here, as in Holcomb, a reasonable trier of

fact could conclude that because the plaintiff's position description was temporarily rewritten as

a Grade 5/7 position after a desk audit of the duties she was initially performing was conducted,

Pl.'s Opp'n, Ex. 5 ("Petty Dep.") at 40:17-41:17, 95:2-6, coupled with her need for extensive

training for at least a year, she suffered an adverse employment action.  See 433 F.3d at 903.

### 2. Inference of Discrimination

To satisfy the third prong of a prima facie case of discrimination, a plaintiff must show

that the adverse employment action suffered "gives rise to an inference of discrimination," or, in

other words, raises an inference that her employer took the action because of her membership in

a protected class.  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005) (quoting Stella v.

Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002)); accord Forkkio v. Powell, 306 F.3d 1127, 1130

(D.C. Cir. 2002) (citation omitted).  One way a plaintiff can satisfy this component of her prima

facie case is by "demonstrating that she was treated differently from similarly situated

employees who are not part of the protected class."  George, 407 F.3d at 412 (citation omitted).

A plaintiff may also demonstrate an inference of discrimination by showing that a reassignment

was not attributable to "performance below the employer's legitimate expectations or the

elimination of the plaintiff's position altogether."  Czekalski, 475 F.3d at 366.  Finally, absent

either of these forms of evidence, a plaintiff may use other forms of indirect evidence that gives

rise to the inference.  Cf. Cox v. Vogel, No. CIV.A. 97-3906, 1998 WL 438492, at *4 (E.D. Pa.

July 29, 1998) (stating that a plaintiff may sustain a claim of age discrimination with direct or

indirect evidence and that "[i]ndirect evidence is evidence of actions or statements from which one may reasonably infer discrimination.").

Here, the defendant has established that the plaintiff's position was abolished after her involuntary reassignment in October 2004.  Def.'s Mem., Ex. 6 (Position Description, Paralegal Specialist, Grade 11) at 1.  Although the plaintiff contends that Vosburg replaced her, the Court agrees with the defendant that the plaintiff and Vosburg cannot be factually or legally compared as "similarly situated employees."  See George, 407 F.3d at 412.  In the most fundamental sense, paralegals provide support and assistance to attorneys, but are not substitutes for attorneys.  Thus, in no way can the two positions be considered comparable.  And, the plaintiff's attempts to raise an inference of discrimination by noting that Vosburg is a Caucasian fails because her race does not change the fact that as employees, they are differently situated.  Therefore, the defendant cannot establish an inference of discrimination by comparison to a similarly situated employee.

However, looking to indirect evidence in the record and the totality of the circumstances, a reasonable trier of fact could infer discrimination based on the following.  The plaintiff argues that the defendant discriminated against her when she was "forced from her paralegal position in the [OC] by claiming that there was insufficient work for her and then replacing her with a higher paid white employee."  Compl. ¶ 1.  As further proof of discrimination, the plaintiff presents anecdotal evidence that when the OIG was forced to reduce its work force between 2002 and 2005, "the only employees who were subject to [the reductions] were African American."  Pl.'s Opp'n at 17, Ex. 9 (Declaration of Lou A. Mitchell, Apr. 28, 2006) ("Mitchell Decl.") ¶ 3, Ex. 10 (Declaration of Annette L. Chandler, Apr. 17, 2006) ("Chandler Decl.") ¶ 6.  Furthermore, the plaintiff alleges that "[t]he entire directed reassignment of [the] plaintiff was a

ruse to make room for another white person in [the OC] at the expense of an African American." Compl. ¶ 14; <u>accord</u> Pl.'s Opp'n at 26-27.  As evidence of this assertion, the plaintiff points to the fact that she was kept "busy each day while she worked in the OC," and that after she left the OC, "Chris Geisler, the attorney she worked with on the FOIA requests, called seeking Ms. Sharpe's help on a new FOIA project . . . ."  Pl.'s Opp'n at 13.  In her reply, the defendant argues that the plaintiff's purported inference of discrimination based on a comparison of favorable treatment towards Vosburg is "legally invalid" because Vosburg was a Grade 12 attorney who performed work that the plaintiff, a Grade 11 paralegal, could not.  Defendant's Reply to Plaintiff's Opposition to the Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Reply") at 6-8.  To counter the plaintiff's claim that she was reassigned to make room for Vosburg, the defendant states that Vosburg occupied an authorized staff position since she was hired as a term appointment in 2001, and that "[e]ach employee was in an authorized place until such time as the plaintiff was laterally reassigned and her position in the [OC] was abolished."  <u>Id.</u> at 10.

Drawing all inferences in the light most favorable to the plaintiff, "[o]ne could reasonably find that [the] plaintiff could perform the essential functions of the [paralegal] position] . . . [and] [o]ne could reasonably find that many of the plaintiff's duties remained after her position was eliminated and that they were performed by" Ms. Vosburg, a woman of a different ethnic background than the plaintiff.  <u>Cox</u>, 1998 WL 438492, at *5.  While this may not present the strongest case of discrimination, "[t]he burden of establishing a <u>prima facie</u> case is not an onerous one."  <u>Id.</u> (emphasis added).  And, under this relaxed standard of proof, the plaintiff's evidence establishes an inference of discrimination which is sufficient to make out a <u>prima facie</u> case.  <u>See id.</u>  This is particularly true in light of the fact that the plaintiff has offered

evidence that only African Americans were adversely affected by the reductions in the OIG.  See

Medina v. District of Columbia, 517 F. Supp. 2d 272, 286-87 (D.D.C. 2007) (finding an

inference of discrimination where a Hispanic plaintiff "offered evidence that non-Hispanic

promotees were not transferred to street duty in 1994 although he was forced to transfer.").

Accordingly, the plaintiff has established the third and final prong of her prima facie case of

discrimination.

### 3. The Defendant's Nondiscriminatory Explanation and the Plaintiff's Allegations of Pretext

Once a plaintiff has established a prima facie case of discrimination under Title VII, the

burden shifts to the employer-defendant to offer a legitimate, non-discriminatory reason for its

actions.  Burdine, 450 U.S. at 253.  "If the defendant presents a legitimate, non-discriminatory

reason for the challenged employment decision, then the McDonnell Douglas framework . . .

disappear[s], and the sole remaining issue [is] discrimination vel non."  Brown v. Small, 437 F.

Supp. 2d 125, 131 (2006) (Walton, J.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133, 142-43 (2000)) (internal quotation marks omitted and bracketed changes in original).

Ultimately, it is the plaintiff's burden to show "that a reasonable jury could conclude from all of

the evidence that the adverse employment decision was made for a discriminatory reason" and

the reason proffered by the employer is merely pretextual.  Id.; accord Lathram, 336 F.3d at

1088-89 (citation omitted).

The plaintiff alleges that she was discriminated against based on race because the

defendant involuntarily reassigned her from her position as a paralegal in the OC to the human

resources benefits position in the HRB so she could be replaced with a Caucasian.  In opposition,

the defendant responds with a legitimate, non-discriminatory reason for the plaintiff's

reassignment.  Specifically, the defendant asserts that the reassignment was ordered because (1) the OIG had been downsizing since the plaintiff was hired in 1998–from 230 employees to 160 over a period of six years; (2) there was insufficient paralegal work to justify a full-time paralegal position in the OC after the FOIA backlog had been reduced; (3) the plaintiff's work load could be absorbed at the time of her reassignment by the OC's attorney, Christian Geiseler, and its Legal Assistant, Theresa Fewell; and (4) the HRB had been trying unsuccessfully to find an acceptable candidate for the benefits position.  Def.'s Stmt. ¶ 12; Def.'s Mem. at 18-19, Ex. 10 ("Black Aff.") at 2.

The defendant's explanation satisfies her burden of offering a legitimate, non-discriminatory reason for her action.  Accordingly, the burden now shifts back to the plaintiff to "demonstrate that the employer's stated reason was pretextual," Stella, 284 F.3d at 144 (citation omitted), and that "a reasonable jury could conclude . . . that the adverse employment decision was made for a discriminatory reason."  Holcomb, 433 F.3d at 897 (internal quotation marks omitted).

The plaintiff argues that she has "presented overwhelming evidence to show that each of the [d]efendant's asserted reasons for its action is false" and "[t]he record in this case abounds with inconsistencies and contradictions."  Pl.'s Opp'n at 28.  Specifically, the plaintiff contends that the following "facts" sufficiently contradict the defendant's proffered reasons:

> (1) between 2002 and 2004, only African-American employees in OIG headquarters were fired or forced to take directed reassignments; (2) [Gibson] treated white and black employees in the OC differently when he [did] not support [the plaintiff's] development in the legal field, but did support his white employee's [sic] development; (3) the OC permanently hired a white employee based on projections the work of the OC would increase but forced a black employee to transfer based on the allegation that there was not enough work in the same small office; (4) at the same time that [the plaintiff] was told that there was not

enough paralegal work . . . the Legal Assistant in the OC received approval to begin a paralegal certification program;[6] (5) [the plaintiff] was transferred from an office where the employees were mainly white to the only office in the OIG where African-American employees are the majority; (6) [the plaintiff] was not even minimally qualified for the position to which she was forced to transfer; (7) . . . another employee was hired to perform [the Benefits position] at the same time as [the plaintiff's] directed reassignment;[7] (8) [the involuntary reassignment] and the use of the "In-Service Placement" did not comport with [the defendant's] established policy;[8] and (9) there are significant questions of material fact about whether there was enough work for [the plaintiff] to do in the OC before she was transferred.

Id. at 26-27.

The plaintiff's extensive list of assertions concerning her involuntary reassignment fail to rebut the defendant's legitimate, non-discriminatory reasons proffered for her actions, and thus are insufficient to survive summary judgment.  First, the plaintiff's statements about the racial make-up of OIG and the HRB lack significance.  "In order to use statistics as evidence of pretext, specifically 'white-washing,' the plaintiff must establish that her 'statistical comparisons are meaningful.'"  Brown, 437 F. Supp. 2d at 136 (quoting Roberson v. Snow, 404 F. Supp. 2d

---

[6]  The defendant does not dispute that Ms. Fewell was given approval to engage in a paralegal certification program; however, the connection the plaintiff suggests between her reassignment and Fewell's paralegal certification is insufficient to overcome the defendant's proffered reason for her actions-that there was not enough work to justify maintaining a full time paralegal.

[7]  Evidence in the record shines light on the plaintiff's erroneous contention.  At the time of the plaintiff's reassignment the HRB was loosing two employees and thus was preparing to fill two vacancies.  Therefore, another employee (Gloria Hill) in the HRB was elevated to fill one of those vacanices around the same time the plaintiff was reassigned, thus the two filled two different openings.  Pl.'s Opp'n, Ex. 5 ("Petty Dep.") at 14:1-36:18 (stating that Hill applied and was hired for a vacant Human Resources Specialist (Benefits) position while already holding a position as an assistant in the HRB).

[8]  Although the plaintiff contends that use of an In-Service Placement was "contrary to the regulations of the FDIC," Pl.'s Opp'n at 16, In-Service Placement is a matter of agency discretion; therefore, its use to effect an involuntary reassignment, absent more, is insufficient to prove a claim of discrimination.  Pl.'s Opp'n, Ex. 25 (Appendix III, Inservice Placement Provisions).  Furthermore, contrary to the plaintiff's position, a "Solicitation of Interest," which is used only for placement into positions that do not have higher promotion potential than the employee previously had, was not the appropriate method of recruitment for an In-Service Placement.  See Pl.'s Opp'n at 16, Ex. 25 (Appendix III, Inservice Placement Provisions).

79, 91 (D.D.C. 2005)).  The plaintiff states, without any factual support, that the OIG is "nearly

an all-white institution."  Pl.'s Opp'n at 38.  Then, through the use of anecdotal evidence, <u>see</u>

Pl.'s Opp'n, Ex. 9 ("Mitchell Decl.") ¶¶ 1-3, Ex. 10 ("Chandler Decl.") ¶¶ 1-7, she alleges that

the four African American employees terminated or reassigned, including herself, comprised

100% of those negatively affected by the OIG Headquarters Office's downsizing efforts.

Statement of Genuine Issues ("Pl.'s Stmt.") at 14; Pl.'s Opp'n, Ex. 4 ("Black Dep.") at 44:14-

45:15, 60:20-63:7.  According to Lou Mitchell, a secretary in the OIG from 1989 to 2003, all

secretary positions in 2003 were held by African Americans and all of the positions were

abolished as part of a 2003 downsizing effort.  Pl.'s Opp'n, Ex. 9 ("Mitchell Decl.") ¶¶ 1-3,

which resulted in two of the secretaries, Mitchell being one of them, being terminated, and three

retiring.  <u>Id.</u> ¶ 3.  "To the best of [Mitchell's] knowledge, no one else in OIG Headquarters

Office except [those] African-American secretary positions were abolished and forced to leave"

in 2003.  <u>Id.</u>

     In prior Title VII cases, this Court has specifically rejected the use of purely anecdotal

evidence as a substitute for meaningful statistical data, <u>see</u> <u>Brown</u>, 437 F. Supp. 2d at 136

(Walton, J.) (holding that the the plaintiff's use of "anecdotal evidence concerning the reduction

in force in one small department" was insufficient to raise a genuine issue of material fact as to

whether the defendant had engaged in impermissible "whitewashing"), and does so again here.

In addition to the absence of comparable factual data, the plaintiff fails to account for the fact

that two of the African-American employees were terminated due to all secretarial positions

being  abolished, while one other employee was reassigned from the Office of Investigations to

the Office of Audits.  Pl.'s Stmt. at 14; Pl.'s Opp'n, Ex. 5 ("Petty Dep.") at 77:15-78:1.  Having

failed to present statistics comparing similarly situated employees, the plaintiff has not

established that her anecdotal evidence alone meaningfully demonstrates a pattern of

discrimination.  See Roberson, 404 F. Supp. 2d at 91 (holding that the plaintiff did not provide

sufficient statistical evidence to infer a pattern of discrimination when he failed to show the rates

of promotion between similarly situated black and white employees).

Furthermore, the plaintiff's claim that "Gibson treated white and black employees . . .

differently [because] he [did] not support [the plaintiff's] development in the legal field, but did

support his white employee's [sic] development," is insufficient to show disparate treatment

because the employee with whom she compares herself, in her attempt to make this point, was

not similarly situated.[9]  Pl.'s Opp'n at 27.  Specifically, the plaintiff contends that Gibson did not

support her interest in becoming a criminal investigator, denied her request for the FDIC to pay

for her to attend classes in legal studies at Marymount University, and "never tried to help [her]

with [her] career development in anyway [sic]." Pl.'s Opp'n at 5, Ex. 1 ("Pl.'s Decl.") ¶ 8, 11.

At the same time, the plaintiff argues, Gibson supported Ms. Vosburg in "continuing to learn in

the practice of law" and aided Ms. Vosburg in becoming a permanent employee in the OC.  Pl.'s

Opp'n, Ex. 3 ("Gibson Dep.") at 162:2-164:14, Ex. 6 ("Vosburg Dep.") at 31:13-32:6.  However,

while the plaintiff seeks to engender the inference that Gibson generally treated African-

American and Caucasian employees differently, she only presents evidence concerning Gibson's

treatment of herself and Vosburg and fails to put forth facts demonstrating how Gibson treated

any other employees in the OC.  As explained supra Part III(C)(2), the plaintiff's attempt to raise

an inference of discrimination by comparing herself with Vosburg (a Caucasian) does not change

---

[9]  The plaintiff takes a similar position with regard to her pretext argument when she states that "(3) the
OC permanently hired a white employee based on projections the work of the OC would increase but
forced a black employee to transfer based on the allegation that there was not enough work in the same
small office . . . ." Pl.'s Opp'n at 27.  Once again, as with her contention that Gibson treated the plaintiff
and Vosburg differently, the plaintiff improperly seeks to infer discrimination by comparing herself to
Vosburg, who is an attorney and is therefore qualified to perform tasks a paralegal cannot.

the fact that as <u>employees</u> they are differently situated.  As a paralegal, the plaintiff could not

advance any higher in the OC, absent becoming an attorney like Vosburg, a qualification which

she never obtained.  Def.'s Mem. at 16, Ex. 9 (Position Description for GS-13 Attorney) at 4.

Similarly, the plaintiff's assertion that she had uncompleted work assignments when she

was reassigned fails to support a claim of discrimination. Although the plaintiff states that

Christian Geiseler, the attorney with whom she worked on FOIA requests, called her seeking

assistance on a new FOIA request after her reassignment, that fact alone is insufficient to show

justification for employing a paralegal specialist full-time.  Pl.'s Opp'n at 8, Ex. 1 ("Pl.'s Decl.")

¶ 4.  The work the plaintiff had performed for Geiseler involved setting up a file folder for FOIA

requests, entering the requests into the "work flow tracking system," sending e-mails to target

groups in the OIG, reviewing responsive records, doing initial redactions, and drafting

memoranda concerning the OC's responses to FOIA requests.  Pl.'s Opp'n, Ex. 7 (Deposition of

Christian A. Geiseler, Mar. 14, 2006) ("Geiseler Dep.") at 13:2-10.  However, Geiseler estimated

that those requests amounted to only one to two percent of his annual workload.  <u>Id.</u> at 15:12-16.

Moreover, according to Geiseler, the need to review proposed legislation and FDIC regulations,

tasks that had also been performed by the plaintiff, had diminished.  <u>Id.</u> at 16:14-17:22.

In the final analysis, the Court is not persuaded that the plaintiff has provided sufficient

evidence to persuade a reasonable jury that "the defendant intentionally discriminated against

[her] . . . ." <u>Burdine</u>, 450 U.S. at 253.  Accordingly, the defendant is entitled to summary

judgment on the plaintiff's Title VII race discrimination claim.

### IV. Conclusion

For the foregoing reasons, the Court concludes that the plaintiff has failed to show that

the defendant's legitimate, non-discriminatory reason for her reassignment was a pretext for

discrimination and therefore the defendant's motion for summary judgment must be granted.

**SO ORDERED** on this 30th day of September, 2008.[10]

---

[10]  An Order consistent with this Court's ruling is being issued simultaneously with this opinion.